UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

ERIE MOORE, JR., ET AL.                    CIVIL ACTION NO. 3:16-CV-01007

VERSUS                                     JUDGE TERRY A. DOUGHTY

LASALLE CORRECTIONS, INC.,                 MAG. JUDGE KAREN L. HAYES
ET AL.

### RULING

Pending here is the Second Motion to Strike filed by Defendants Archie Altman; Sgt. Roy Brown; Reginald Curley; Jody Foster; Alton Hale; Warden Ray Hanson; Sgt. Gerald Hardwell; Sgt. Kenneth Hart; William Mitchell; Sgt. Duan Rosenthal; Jeremy Runner; Danielle Walker; Sgt. Reginald Williams; LaSalle Management Co., LLC; Richwood Correctional Center, LLC; Tommy Crowson; and City of Monroe (collectively "Defendants")[Doc. No. 333].  Plaintiffs Erie Moore, Jr., Tiffany Robinson, and Tamara Robinson (collectively "Plaintiffs") have filed an opposition. [Doc. No. 345].  Defendants have filed a reply to the opposition [Doc. No. 347].

For the following reasons, the Second Motion to Strike [Doc. No. 333] is GRANTED IN PART and DENIED IN PART.

### I.    FACTS AND PROCEDURAL HISTORY

This lawsuit follows the death of two detainees at the Richwood Correctional Center ("RCC"), a private detention center located in Ouachita Parish, Louisiana.  RCC is owned and operated by LaSalle Management Company, LLC ("LaSalle") and/or Richwood Correctional Center, LLC ("Richwood"), related private entities.

At the time of the incident, Moore was being detained at RCC after having been arrested by Monroe Police Department ("MPD") Lieutenant (then-Corporal) Tommy Crowson ("Officer

Crowson") for disturbing the peace on October 12, 2015.  The next day, October 13, 2015, Moore was involved in an altercation with another detainee, Vernon White ("White").  White died shortly after the altercation.  Moore was forcibly removed from the holding cell after the altercation occurred.  Soon thereafter, Moore became unconscious. He died on November 14, 2015, without ever having regained consciousness.

Plaintiffs are the children and heirs of Moore. In their original Complaint, filed July 8, 2016, Plaintiffs alleged that the death of their father was caused by multiple Defendants. [Doc. No. 1].  On December 5, 2017, an Amended Complaint was filed which added new Defendants and continued the previous allegations. [Doc. No. 63]. On April 11, 2019, the Third Amended Complaint was filed, which added more Defendants to the suit, repeated many of the original claims, and made new claims. [Doc. No. 140].

After Plaintiffs filed a Motion for Partial Summary Judgment [Doc. No. 230], Defendants filed a Motion to Strike [Doc. No. 282], directed toward several exhibits filed by Plaintiffs in support of their motion.  That Motion to Strike has been addressed in a separate Ruling.

Defendants, either together or in various combinations, have also filed several pending Motions for Summary Judgment, to which Plaintiffs filed Oppositions. Defendants then filed the pending Second Motion to Strike [Doc. No. 333], which is directed toward several of the same exhibits that their first motion to strike addressed, as well as several additional exhibits.  In the pending motion, Defendants seek to strike the following exhibits attached to Plaintiffs' Oppositions to Defendants' Motions for Summary Judgment [Doc. Nos. 299, 300, 301, 302 and 303]:

1.   Reports of Deputy Wells and Deputy Murphy, Exhibits 61 and 62;

2.      Exhibit 75 - Louisiana Administration Code, Title 22, Part III, Subpart 2. Minimum Jail Standards

3.      Exhibit 158 - Dr. John T. Owings' Report;

4.      Exhibit 163 - Kenny Sanders' Report;

5.      Exhibit 169 - DOC records on Erie Moore;

6.      Exhibit 180 - Hanser's Return;

7.      Exhibits 188 and 194 - Declarations of Willie Woodard and Yolanda Jackson dated April 27, 2020;

8.      Exhibit 189 - Declaration of Col. Rogers dated April 27, 2020;

9.      Exhibit KS – Deposition of Kenny Sanders; and

10.     Exhibit 190 - Declaration of Kenny Sanders with attachments dated April 27, 2020.

Defendants contend that the above listed exhibits, in whole or in part, are inadmissible under the dictates of Rules 26 and 56 of the Federal Rules of Civil Procedure, the Order of the Court, and/or numerous rules of the Federal Rules of Evidence. Defendants further contend that, in the event the report, declaration, and deposition testimony of Kenny Sanders and the declaration of Col. Rogers are not stricken in their entirety, then all of the opinions expressed therein should be stricken.   Plaintiffs respond that the exhibits are admissible under the above cited rules.

The issues are fully briefed, and the Court is prepared to rule.

## II.     LAW AND ANALYSIS

### A.     Legal Standards

Under FED. R. CIV. P. 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[1] Hearsay

---

[1] To the extent that the parties cite the Court to Federal Rule of Civil Procedure 12(f), governing motion to

evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

However, "it is not dispositive whether the [disputed materials] in their current form are admissible in evidence. At the summary judgment stage, materials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting FED. R. CIV. P. 56(c)(2) (emphasis added)).

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Generally, hearsay is not admissible unless stated otherwise by a federal statute, the Federal Rules of Evidence, or other rules of the Supreme Court. *See* FED. R. EVID. 802. "Hearsay" is a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c).

---

strike pleadings, that rule is inapplicable. Rule 12(f) authorizes the Court to strike "from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Evidence submitted in support of a motion for summary judgment does not constitute a pleading, and, therefore, Rule 12(f) is inapplicable. *See Worldwide Subsidy Grp., LLC v. Worldwide Pants Inc.*, 729 F. App'x 625, 625-26 (9th Cir. 2018) ("WSG filed a Rule 12(f) motion to strike which is inapplicable to a motion for summary judgment."); *Pilgrim v. Trs. of Tufts College*, 118 F.3d 864, 868 (1st Cir. 1997), *abrogated on other grounds by Crowley v. L.L. Bean, Inc.*, 303 F.3d 387 (1st Cir. 2002); *Claridy v. The City of Lake City*, No. 3:13-CV-558-J-39PDB, 2014 WL 12656605, at *1 (M.D. Fla. Oct. 24, 2014) ("As a threshold matter, a motion to strike is not the appropriate vehicle for challenging the admissibility of evidence submitted in connection with a motion for summary judgment."); *Shah v. Chertoff*, 2007 WL 2948362 at *5 (N.D. Tex. Oct. 10, 2007) ("Rule 12(f) ... does not apply to the instant situation because evidence submitted in support of a Rule 56 motion for summary judgment is not considered a motion or pleading for purposes of Rule 12."); *Jackim v. City of Brooklyn*, No. 1:05 CV 1678, 2006 WL 8446885, at *1 (N.D. Ohio July 18, 2006). ("While some courts have employed Federal Rule of Civil Procedure 12(f) to strike non-pleading materials – e.g., affidavits, or portions thereof – there is no basis in the Federal Rules for doing so.") (citing *McLaughlin v. Copeland*, 435 F. Supp. 513 (D. Md. 1977)).

B.      Analysis

1.      Reports of Deputy Wells and Deputy Murphy, Exhibits 61 and 62

Defendants object to the reports prepared by Deputy Wells and Deputy Murphy on the basis they are hearsay, contain hearsay within hearsay, and are unsworn.

This objection has been addressed by the Court in the Ruling on the first Motion to Strike [Doc. No. 282].   Accordingly, for the same reasons set forth in that Ruling, to the extent that Defendants' Second Motion to Strike seeks the exclusion of those portions of the report that provide the time the deputies arrived at RCC, left RCC, arrived at OCC, and arrived at the hospital, the Motion is DENIED.  To all other extents, the Motion is GRANTED.

2.      Louisiana Administrative Code, Minimum Jail Standards, Exhibit 75

Defendants argue that the Louisiana Administration Code, Title 22, Part III, Subpart 2, Minimum Jail Standards, is not relevant or admissible and should be stricken from evidence. Defendants assert that the Minimum Jail Standards are nothing more than guidelines. Furthermore, they are guidelines for the planning, administration, and construction of parish jails; whereas RCC is not a parish jail.  Thus, whatever may be found in the Minimum Jail Standards is irrelevant to any issue before the Court. Defendants contend, accordingly, that Exhibit 75, as well as any reference to the Minimum Jail Standards by any witness or in any pleading should be stricken and not considered.

Plaintiffs argue that, while the Minimum Jail Standards apply to parish jails, RCC was acting as a city jail with the same responsibilities.  Plaintiffs further argue that the Minimum Jail Standards are relevant to establishing the prevailing practice at the time, if nothing else, for state negligence claims.

The introduction to 22 LA ADC Pt III, § 2503, states:

> The purpose of these standards is to provide a **reasonable guideline** for use by persons responsible for the planning, administration and construction of parish jails in Louisiana. They are intended to reflect the minimum requirements which comply with court orders and protect the guaranteed rights of inmates in custody. The criteria were derived from court decisions, Louisiana state statutes, codes and regulations, and standards developed by organizations in the criminal justice field. The items generally avoid specific numerical absolutes so as to be useful to jails of all sizes and populations.

(emphasis added)

Although the Minimum Jail Standards are nothing more than guidelines, the Court finds they are not inadmissible solely on that basis.  While it is clear that internal policies and advisory national or state standards are not determinative of fault and/or the applicable standard of care, the Court believes that such policies and standards may be probative as to the controlling standard of care in this case.  *See Schurman v. Panola-Harrison Electrical Coop., Inc*., No. 03-1467, 2006 WL 8456468, (W.D. La. June 6, 2006).

Accordingly, Defendants' Second Motion to Strike is DENIED as to the Minimum Jail Standards.

### 3.    Dr. John T. Owings' Report, Exhibit 158

Defendants object to Dr. Owings' Report as being hearsay, hearsay within hearsay, and as being unsworn. Also, the report makes reference to a telephone conversation about a video with Plaintiffs' counsel which is not evidence, is hearsay, and is hearsay within hearsay.

This objection has been addressed by the Court in the Ruling on the first Motion to Strike [Doc. No. 282].  Accordingly, for the same reasons set forth in that Ruling, to the extent Defendants' motion seeks to strike that portion of the report mentioning a conversation with Plaintiffs' counsel about a video, the motion is GRANTED.  To any other extent, the motion is

DENIED.  Defendants have not established a valid reason to exclude Dr. Owings' Report as summary judgment evidence.

### 4.    Kenny Sanders' Report, Exhibit 163

Defendants object to the Kenny Sanders' Report on the basis it is hearsay, hearsay within hearsay, and unsworn.  Plaintiffs respond that expert reports typically contain hearsay information and that Sanders has accepted and adopted his report in his sworn Declaration, Exhibit 190.

This objection has been addressed by the Court in the Ruling on the first Motion to Strike [Doc. No. 282].  Accordingly, for the same reasons set forth in that Ruling, the Court DENIES Defendants' Motion to strike with regard to the Sanders Report, Exhibit 163, on these grounds. The Court will address Defendants' other objections to Sanders's opinions below.

### 5.    DOC Records on Erie Moore, Exhibit 169

The entirety of Defendants' argument is:

> Plaintiffs make argument based upon records that were apparently received from the Ouachita Parish District Attorney's Office and which include notations allegedly made by a DOC employee. According to the Plaintiffs, their interpretation of Hodges' report is that it conflicts with other, admissible, evidence. The report itself is hearsay and statements and information found in the report are nothing more than hearsay within hearsay. Furthermore, testimony or an affidavit from Hodges would not make the "facts" sought to be introduced through Hodges' report admissible. Accordingly, Exhibit 169, and in particular, page 106, must be stricken.

[Doc. No. 333-1, p. 17].

The entirety of Plaintiffs' response is:

> The Ouachita Parish D.A.'s records can be admitted at trial as a business record. The statements attributable to Linda Hodges can be admitted because Linda Hodges is expected to testify at trial. Hodges verifies the existence of false information being provided through administrative employees like Hodges that Moore was found unconscious at RCC around 7pm in his cell. He was found unconscious. But other officers like Runner, Hardwell, Williams and

> Curley contend Moore was conscious and talking around 7pm. That Moore was found in his cell unconscious contradicts other officers. The information provided to [the sentence ends here].

[Doc. No. 345, p. 30].

> The entirety of Defendants' reply is:

>> Plaintiffs argue that because Hodges, the purported recorder of someone else's statements in records secured from the D.A.'s office, can testify at trial about those statements, the documents filed are admissible. However, Hodge's recitation of heresay [sic] and/or double heresay statements found in a report would still be inadmissible at trial.

[Doc. No. 347, p. 8]

The parties have not made it clear who Linda Hodges is, what her position is, who her employer is, who gave the information to Hodges, who produced the alleged report, how the parties came into possession of it, how the District Attorney allegedly came into possession of it, where it was allegedly kept at the District Attorney's office, why it wouldn't be a DOC record, what its significance is, or how the report was produced. Accordingly, Defendants' Motion to Strike is DENIED at this time, although the report will have limited evidentiary value in view of the above.

### 6.      Hanser's Return, Exhibit 180

Defendants object to certain documents provided by Dr. Robert D. Hanser which he states are used by him in conducting Crisis Intervention Training ("CIT") for peace officers and jailers [Doc. No. 308-4, pp. 48-97]. Defendants contend these documents were apparently secured from Dr. Hanser and not through any Defendant. Defendants assert the documents have not been authenticated, no foundation has been laid, and they contain hearsay and hearsay within hearsay. Accordingly, these documents and any argument made that is based upon these documents should be stricken and excluded from consideration.

Plaintiffs respond that Dr. Hanser trained Monroe city police officers, including Defendant Officer Crowson, about suicide prevention during CIT and that Exhibit 180 is a subpoena return from Dr. Hanser containing many of his training materials. Plaintiffs state that Dr. Hanser is expected to testify, and the training materials are relevant to show that all officers, including dispatchers, are taught information about suicide prevention during CIT. Plaintiffs assert the training materials are not hearsay but are admissible as Dr. Hanser's business records under FED. R. EVID. 803(6)-(7). Plaintiffs conclude that proof of training standards are relevant to determine if Crowson or one of the police dispatchers had a duty to Moore to take him to a hospital instead of to jail.

The Court concludes these documents can be authenticated by Dr. Hanser and can fall under the business record exception to the hearsay rule.  Additionally, they are relevant in connection with Dr. Hanser's expected testimony.  Accordingly, Defendants' Motion to Strike is DENIED as to Dr. Hanser's documents.

### 7.     Declarations of Willie Woodard and Yolanda Jackson dated April 27, 2020, Exhibits 188 and 194

Defendants contend that Plaintiffs have submitted the Declarations of Willie Woodard ("Woodard") and Yolanda Jackson ("Jackson") without timely disclosure.  Defendants assert that, in more than four years of extensive written discovery, and in multiple witness lists, Plaintiffs never disclosed Woodard or Jackson as witnesses. Defendants argue that, pursuant to Rule 26 and the Court's Scheduling Order [Doc. 75], the declarations of Woodard and Jackson must be excluded from consideration in support or in opposition to any Motion for Summary Judgment.

Plaintiffs respond that these witnesses' potential testimony did not become known to them until after February 11, 2020.  Thus, their existence was unknown until after disclosure deadlines had expired.  Plaintiffs further contend that these witnesses were known to Defendants because

Jackson is a former employee of RCC and Woodard was a trusty at RCC the night of the incidents in question who was depicted in the cell and hall videos as cleaning LD-7. Plaintiffs state that they requested the name of the trusty who cleaned LD-7 and who was depicted in the video on August 17, 2018, and that, on October 18, 2018, Defendants indicated that they would provide the information once the trusty could be identified. However, Defendants never provided the trusty's name, without explanation.

Plaintiffs further respond that Jackson came to their attention on February 11, 2020, when she called Plaintiffs' attorney's office after seeing a media story on this case that aired on February 7, 2020, on a Dallas, Texas station. Jackson identified Woodard as the trusty but Plaintiff's counsel was unable to arrange a meeting to interview Woodard until around March 2020.

Plaintiffs state that the attestations of Woodard and Jackson have been presented to rebut and thereby impeach evidence presented by Defendants, who generally contend that no force at all was used in the Four-Way. Woodard's Declaration tends to dispute that, given that fresh pepper spray was on the walls of the Four-Way. Jackson provides testimony that RCC correctional officers routinely used pepper spray and used the Four-Way for the purpose of "teaching a lesson." Plaintiffs argue that their late awareness of Woodard and Jackson, and the rebuttal of Armbruster and RCC fact witnesses provides substantial justification. Thus, under these unique circumstances, the Declarations of Woodard and Jackson should not be stricken. Plaintiffs further submit there is no trial date pending and thus no undue prejudice.

Defendants reply that Plaintiffs have admitted that Jackson was known to be a witness on February 11, 2020, and Woodard was known to be a witness in March of 2020. Therefore, it was at those moments in time that Plaintiffs were obligated to supplement their discovery responses

and/or Rule 26 Disclosure and/or their Witness List. Instead, Plaintiffs waited until May 22, 2020 to ambush Defendants with new witnesses and new factual allegations.

Since its adoption, Rule 26(a)(1) has provided:

> [A] party must, without awaiting a discovery request, provide to the other parties ... the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

FED. R. CIV. P. 26(a)(1)(i); *Standley v. Edmonds–Leach*, 783 F.3d 1276, 1281 (D.C.Cir.2015) (citing *id.*); *cf.* John H. Beisner, *Discovering a Better Way: The Need for Effective Civil Litigation Reform*, 60 DUKE. L.J. 547, 577 (2010) (discussing the history behind this mandatory disclosure provision). Rule 26(a)(1)'s purpose is "to accelerate the exchange of basic information about the case and to eliminate the paperwork involved in requesting such information, and the rule should be applied in a manner to achieve those objectives." FED. R. CIV. P. 26 advisory committee's note (1993 amend.); *see also Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir.1993) ("The federal rules promote broad discovery so that **all** relevant evidence is disclosed as early as possible, making a trial less a game of blind man's bluff and more a fair contest." (emphasis in original) (internal quotation marks omitted)).

Another rule authorizes punishment for a party's failure to comply with Rule 26(a)(1). FED. R. CIV. P.37(c)(1). Rule 37(c)(1) reads:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> **(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

11

(**B**) may inform the jury of the party's failure; and

(**C**) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

*Id.*; *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir.2004) (quoting rule). In the making of this determination, courts consider numerous factors, including (1) "the surprise or prejudice to the blameless party," (2) "the ability of the offender to cure any resulting prejudice," (3) "the amount of disruption to the trial that would result from permitting the use of the evidence," and (4) "the bad faith involved in not producing the evidence at an earlier date." *Spearman Indus. v. St. Paul Fire & Marine Ins. Co.,* 138 F.Supp.2d 1088, 1094 (N.D.Ill.2001); *accord, e.g.*, *Lanard Toys, Ltd. v. Novelty, Inc.,* 375 Fed.App'x. 705, 713 (9th Cir. 2010) (citing to *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003)).

Many courts have deemed Rule 37(c)(1)'s exclusionary sanction as "mandatory." *Falconer v. Penn Mar., Inc.,* 421 F.Supp.2d 190, 207 (D. Me. 2006). In so doing, these courts have overlooked the safety valve written into Rule 37(c)(1). Its second sentence explicitly allows a court to substitute its exclusory sanction with any "other appropriate" punishments. FED. R. CIV. P. 37(c)(1) (referencing the sanctions listed in Rule 37(2)(A) as nonexclusive possibilities); *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001) (describing Rule 37(c) as affording "wide latitude"). Generally, courts should "carefully consider Rule 37(c), including the alternate sanctions available, when imposing exclusionary sanctions that are outcome determinative." *Musser*, 356 F.3d at 760 (affirming judgment but urging cautious application of Rule 37(c)(1)).

Even an unquestioned violation of Rule 26(a)(1), therefore, "does not compel the district judge to exclude testimony in its entirety" pursuant to Rule 37(c)(1). *Roberts ex rel. Johnson v.*

*Galen of Va., Inc.*, 325 F.3d 776, 783–84 (6th Cir.2003); *see also, e.g.*, *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F.Supp.2d 205, 225 (E.D.N.Y.2010) (observing that preclusion under Rule 37(c) should follow only once a court has determined that a party has failed to make a timely disclosure, this failure was without substantial justification or excuse, sanctions are warranted, and preclusion is appropriate); *Allstate Ins. Co. v. Nassiri*, No. 2:08–cv–00369–JCM–GWF, 2010 U.S. Dist. LEXIS 138220, at *14, 2010 WL 5248111, at *5 (D. Nev. Dec. 16, 2010)("Rule 37(c)(1) does not, however, require the district court in all instances to exclude evidence as a sanction for late disclosure that is neither justified or harmless.").

Here, the Court finds that the late disclosure was justified in that Plaintiffs learned of the existence and/or identities of these witnesses after the deadlines.  With specific reference to Woodard, Defendants failed to furnish the identity of the trusty who was seen on the video despite a request from Plaintiffs to identify him.  Defendants have not established that Plaintiffs were in bad faith.

Accordingly, Defendants' Motion to Strike on these grounds is DENIED as to Jackson and Woodard.

### 8.    Declaration of Col. Bradney Rogers dated April 27, 2020, Exhibit 189

Defendants object to the Declaration of Col. Bradney Rogers ("Rogers") on the grounds that he was not listed as either a lay witness or an expert witness, and that Rogers has not produced an expert report.  Defendants further object that Rogers is not qualified as an expert.  Finally, Defendants object that Rogers' opinions are inadmissible because they contain a mixture of legal conclusions and factual findings.

### a.    Failure to Disclose Rogers as a Witness

Defendants contend that Plaintiffs never disclosed Rogers as a witness.  Defendants contend, furthermore, that to the extent Rogers is sought to be used as an expert witness, no designation of Rogers as an expert has ever been made and no report has ever been provided. Defendants assert that it was not until after all of the Defendants had filed their Motions for Summary Judgment, which detailed Plaintiffs' failures of proof, that Plaintiffs provided the carefully tailored opinions and conclusions of Rogers in his April 27, 2020 Declaration. Defendants conclude that, pursuant to Rule 26 and the Court's Scheduling Order [Doc. 75], the declaration of Rogers must be excluded from consideration in support or in opposition to any Motion for Summary Judgment.

Plaintiffs respond that they only became aware of Rogers' potential as a witness once John Badger ("Badger") told Plaintiffs that Rogers allegedly left RCC due in part to the kind of prisoner treatment Badger had allegedly observed. In July 2019 Plaintiffs propounded an Interrogatory to Defendants to obtain location information on Rogers [Doc. No. 345-3]. Defendants provided Rogers' phone number and address to Plaintiffs on December 3, 2019. [*Id.*]. Plaintiffs state they were first able to contact Rogers during late March 2020 although earlier attempts were made. Rogers met with Plaintiff's counsel on April 22, 2020. [Doc. No. 345-4]. After several extensions agreed to by the parties, oppositions were filed May 22, 2020.  Plaintiffs conclude the above establishes substantial justification for the untimely disclosure.  Plaintiffs further argue that Defendants have not been prejudiced because there is no trial date and they will not object to Defendants taking Rogers' deposition.

The Court finds that, unlike the situation with Woodard and Jackson, Plaintiffs have failed to show there was justification for the delay in disclosing Rogers as a witness.  Plaintiffs admit

that they received Rogers' telephone number and address on December 3, 2019, from Defendants. Plaintiffs also admit that they were given Rogers' name by Badger, but Plaintiffs fail to provide a date for that disclosure. Plaintiffs claim that Rodgers was not contacted until late March 2020 and that Rodgers met with Plaintiff's counsel on April 22, 2020. However, there is no explanation given as to why Plaintiffs waited until May 20, 2020, through the filing of his Declaration, to disclose Rogers.

The Court further finds that Defendants have been prejudiced by the delay. Plaintiffs had the luxury of learning all of the problems with Sanders' testimony that had been asserted by Defendants and were thus able to unfairly craft Rodgers' Declaration to buttress their claims. Allowing Plaintiffs this avenue to unfairly and untimely attack the motions for summary judgment, after four years of discovery, defeats the purpose of discovery, disclosure deadlines, deposition deadlines, expert deadlines, and dispositive motion deadlines.

Plaintiffs also contend that Rogers should not be treated as an expert retained for purposes of providing expert opinions under Rule 26 because he was not retained, nor was he specially employed, by Plaintiffs.

Federal Rule of Civil Procedure 26 requires a party to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A). In addition to disclosing the identity, if the witness is retained or specially employed to provide expert testimony in the case, the disclosure must include a written report complying with certain requirements. FED R. CIV. P. 26(a)(2)(B). If the witness does not fall into that category and is not required to provide a written report, the disclosure need only state 'the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence

702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C).

The Court finds that Plaintiffs' argument is of no avail. Plaintiffs failed to satisfy even the less stringent requirement for witnesses in general, including experts who are not retained. They did not file a disclosure showing the subject matter and a summary of facts and opinions prior to filing Rogers' Declaration. Further, Defendants were prejudiced by this delay. Defendants have never had the opportunity to cross-examine Rogers on his claimed expertise or his opinions.

The Court finds that there is no justification for Plaintiffs' delay in disclosing Rogers as a witness or in failing to provide either an expert report or a summary of the facts and opinions to which he is expected to testify prior to the filing of Rogers' Declaration. Furthermore, Defendants have been prejudiced by the delay. Accordingly, for this reason alone, Rodgers' Declaration should be stricken.

However, assuming *arguendo* that Rodgers' Declaration should not be stricken on this basis, the Court will nevertheless consider the other grounds asserted by Defendants for the exclusion of Rodgers' Declaration.

### b.       Rogers is not Qualified as an Expert

Plaintiffs assert that Rogers has a great deal of experience in training corrections officers, has more than thirty years of experience in the Louisiana Department of Corrections ("DOC"), has a work history at RCC, and currently does contract work with DOC.

Defendants respond that Rogers does not provide any information on whether he has ever been qualified as an expert in anything. Defendants further assert that a search for "Bradney Rogers" in Westlaw reveals no case where that name has ever appeared. Finally, as indicated

above, the Defendants were never notified that Rogers was a witness and therefore have never had the opportunity to cross-examine Rogers on his claimed expertise or his opinions.

In their first Motion to Strike, Defendants argued that Kenny Sanders' opinions on liability had to be excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc*. 509 U.S. 579 (1993) and *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999) and Fifth Circuit jurisprudence. [Doc. 282-1, pg. 10-14]. Here, they incorporate those arguments by reference to exclude Rogers' opinions, testimony, or evidence.

Under Rule 702, the Court must determine whether the proposed expert witness has training or experience, and will offer opinions, sufficiently related to the issues and evidence before the court for the expert's testimony to assist the trier of fact. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562–63 (5th Cir. 2004). The district court must also make a "preliminary assessment of whether that reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology can be applied to the facts at issue." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993) ). The court "must ensure the expert uses reliable methods to reach his opinions." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

Plaintiffs have failed to offer evidence to show Rodgers is qualified to offer expert testimony. They offer nothing to show he has ever been qualified as an expert in any field. They offer nothing to assist the Court in ensuring Rogers uses reliable methods to reach his opinions.

Accordingly, the Court finds that Rogers's Declaration is also inadmissible on the basis that he has not been qualified as an expert. However, assuming *arguendo* that Rogers is qualified

as an expert, the Court will consider Defendants' final argument for excluding Rogers' Declaration.

### c.   Rogers' Declaration is a Mixture of Legal Conclusions and Factual Findings and, therefore Inadmissible.

Defendants assert that Rogers' Declaration is inadmissible because it contains a mixture of legal conclusions and factual findings. They reference the arguments made in their first Motion to Strike with regard to Sanders' and Turner's opinions.

More specifically, Defendants object to the following opinions, conclusions, and statements in Rogers' Declaration:

1. Runner's strike to Mr. Moore hit the right rear of his head. (Paragraph 5);

2. The suddenness and quickness of Moore's movement to the floor shows that Runner did not use a simple push. (Paragraph 5);

3. Moore did not attempt to brace himself against the fall or strike. (Paragraph 5);

4. Moore was not actively resisting but was at most passively resisting. (Paragraph 5);

5. Officers are trained not to use a closed fist strike in that situation, particularly to the head. (Paragraph 5);

6. The strike sent Moore head first into the cell floor, which is extremely dangerous considering the risk of significant injury to the head. (Paragraph 5);

7. The fist strike was of significant force as shown by the length of time Moore was on the floor and that he staggered and seemed dizzy. (Paragraph 5);

8. Runner's description in his report of pushing Moore to the floor does not match what the video shows. (Paragraph 5);

9. Several things done by Hardwell were not consistent with correctional training. (Paragraph 6);

18

10.  Moore was not resisting. (Paragraph 6);

11.  Moore may have been passively resisting by not following direct orders. (Paragraph 6);

12.  Hardwell and other C.O.s should have handcuffed Moore inside LD 7. (Paragraph 6);

13.  The C.O.s should have secured Moore by holding him by the arm and legs giving Hardwell the opportunity to safely handcuff Moore. (Paragraph 6);

14.  There is no training offered to C.O.s to grab an inmate from behind in a "bearhug" style and carry the inmate out of the cell. (Paragraph 6);

15.  C.O.s are not trained to approach inmates from behind. (Paragraph 6);

16. The "slam" onto the floor in the hallway is extremely dangerous and should be considered deadly force because eof the high degree of risk of significant injury to the head. (Paragraph 6);

17. The "slam" by Hardwell is not a recognized tactic. (Paragraph 6);

18. Moore was not actively resisting inside LD 7. (Paragraph 6);

19. Moore did not actively resist while being carried out of LD 7 or while being slammed down. (Paragraph 6);

20. While on the floor after being slammed, it was evident that Moore was injured and was not actively moving. (Paragraph 6);

21. Moore was not kicking. (Paragraph 6);

22. Hardwell's report does not match what is shown in the video. (Paragraph 6);

23. Moore was not simply placed on the floor but rather Hardwell used dangerous and significant force on Moore. (Paragraph 6);

24. When Moore was slammed into the floor or onto the floor, he should not have been hand carried. (Paragraph 7);

25. The training provided to these officers is that if a stretcher or some other equipment is not available to carry an inmate, you are to use a blanket. (Paragraph 7);

26. The drop by Runner was not the fault of Moore. (Paragraph 7);

27. It is evident from the video that Moore was not struggling against being carried as he was not moving his legs or feet in a manner to resist being carried. (Paragraph 7);

28. While being carried, Moore appears to be incapacitated. (Paragraph 7);

29. The drop by Runner amounts to corporal punishment. (Paragraph 7);

30. Several acts of the C.O.s were below standards. (Paragraph 8);

31. C.O.s who were standing in the hallway when Moore was slammed had first aid training. (Paragraph 8);

32. The C.O.s should have examined Moore and/or called a nurse for an examination. (Paragraph 8);

33. Each C.O. should have informed the nurse of the head strike. (Paragraph 8);

34. Each C.O. should have immediately called for medical assistance. (Paragraph 8);

35. Moore should have been transported to a hospital. (Paragraph 8);

36. While Moore was in the four way he should have been taken to a hospital. (Paragraph 8);

37. No reasonable C.O. would have believed after what had happened in the hallway that Moore would simply be asleep. (Paragraph 8);

38. The C.O.s should have assumed Moore was unconscious or in capacitated. (Paragraph 8);

39. Moore never should have been on his back. (Paragraph 8);

40. Laying on ones back while handcuffed is extremely painful, too painful to sleep and presents a risk of choking by aspiration. (Paragraph 8);

41. The nurse should have done a complete examination. (Paragraph8);

42. C.O.s who do not receive regular refresher training in defensive tactics can be expected to use excessive force. (Paragraph 9);

43. Use of defensive tactics is a diminishing skill which C.O.s, if not retrained in regular, will revert to street fighting methods and place inmates and themselves in dangerous serious bodily injury. (Paragraph 9);

44. The failure to regularly conduct in-service training is deliberately indifferent to an inmate's right to be free of excessive force. (Paragraph 9);

45. Creed and Hanson were required to know the material aspects of the contract between RCC and the City of Monroe. (Paragraph 10);

46. The lack of knowledge of the contract reflects deliberate indifference to how a jail was operated at RCC. (Paragraph 10);

47. LaSalle did not provide any in-service training to the RCC C.O.s while Rogers was employed at RCC from July2017to April 2018. (Paragraph 11);

48. LaSalle would not authorize payment to the C.O.s to attend in-service training. (Paragraph 11);

49. Typically, C.O.s from 2000 to the present are taught the PPCT curriculum in defensive tactics. (Paragraph 11);

50. PPCT requires twenty-four hours of academy instruction and sixteen hours in-service training, annually. (Paragraph 11);

51. All DOC officers are taught PPCT. (Paragraph 11); and

52. As a BJG auditor, Rogers is familiar with training standards used in North Louisiana training academies, and based upon his experience, PPCT is taught. (Paragraph 9).

Plaintiffs respond that all of the above facts or opinions are admissible. They assert that Items 1-13 are fact-based opinions of Rogers based upon his training, experience, and examination of the cell and hall video; Items 14 and 17 are a combination of his training coupled with his

examination of the video; Items 15 and 16 are facts based upon Roger's training and experience; Items 18-14 and 27-32 and 35-38 are opinions as well; Item 25 is a fact of training concerning the use of a stretcher; Items 33 and 34 are a comment on training as to when to inform the nurse about certain force strikes; Items 39-52 are generally facts based on training; Item No. 41 is an opinion, as are Items 44 and 46, concerning acts constituting deliberate indifference; AND Items Nos. 44 and 46 are likely opinions which provide a conclusion as to the ultimate issue of deliberate indifference which are not themselves excluded under FED R. EVID 704, as he provides no opinion that any constitutional provision is violated or that defendants are at fault.

Plaintiffs further argue that they are offering Rogers' Declaration to rebut George Armbruster's (Defendants' expert's) opinions and conclusions. Defendants respond that this last argument establishes that Plaintiffs' real goal is to add another expert for the jury to consider because the Plaintiffs recognize that Sanders' opinions are not adequate to support their case-in-chief. Defendants state, further, that Rogers' Declaration is offered to directly support Plaintiffs' case-in-chief, that the training afforded the C.O.s at RCC was inadequate and that the RCC Defendants used excessive force on Moore, and is, therefore not rebuttal.

Defendants further respond that Rodgers claims to have been employed at RCC from July 20, 2017, until around April 2018, and purports to have knowledge of training and practices at RCC during that period of time. However, the incident at issue here occurred in October of 2015 and any training would have taken place prior to that date. This shows that, contrary to Plaintiffs' arguments, Rodgers has no personal knowledge of any facts relevant to this suit and can only be an "expert" witness.

Citing *Wellman v. Evans*, 2003-1720 (La. App. 3 Cir. 6/16/04), 876 So. 2d 954, and *James v. Iberia Parish Sheriff's Office*, 2019-286 (La. App. 3 Cir. 12/18/19), 286 So. 3d 629, Defendants

22

additionally argue that Rogers' opinion on what is a good correctional practice, including a reference to guidelines or policies, is not relevant or admissible evidence to establish a Constitutional violation, or liability under state law. Defendants argue that any other writing, such as a contract, policy, guideline or standard can have no role in determining whether there is liability under federal or state law.

While it is clear that internal policies and advisory national standards are not determinative of fault and/or the applicable standard of care, the Court believes that such policies and standards are probative as to the controlling standard of care in this case. *See Schurman v. Panola-Harrison Electrical Coop., Inc*., No. 03-1467, 2006 WL 8456468, (W.D. La. June 6, 2006). Therefore, Rogers' opinion is not inadmissible on that basis.

Nevertheless, as the Court stated in its Ruling on the first Motion to Strike, although expert testimony is not objectionable simply "because it embraces an ultimate issue," an expert's opinion on ultimate issues can be excluded if it is otherwise inadmissible under the Federal Rules of Evidence. FED. R. EVID. 704. When opinion testimony combines law and fact, the question is "whether the opinion will 'help the trier of fact to understand the evidence or to determine a fact in issue.'" 29 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 6284 (2d ed.) (quoting FED. R. EVID. 702). Expert opinions as to whether a defendant violated the law are inadmissible. FED. R. EVID. 702; See *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009).

In *Toomer v. Florida Parishes Juvenile Justice Commission*, No. 03-0734, 2005 WL5974570 (E.D. La. Mar. 3, 2005), the district judge stated:

> The Court finds that [the expert's] opinion is a mixture of legal conclusions and cumulative factual assertions that would unduly infringe upon the fact-finding functions of the jury and, worse, likely lead to jury confusion. Further, this witness' opinions, to the extent

23

> they might have factual support, are nothing more than logical
> common-sense conclusions, unnecessary to aid the jury.

*Id.* at * 1.

Similar issues were decided in *N.S. v. City of Alexandria,* 919 F. Supp. 2d 773 (W.D. La. 2013), where a motion to strike was filed by the defendants seeking to exclude the opinions of the plaintiff's police liability expert. After reviewing the law and the opinions at issue the district court held:

> Dr. Kelly's opinions, as expressed in his deposition, are inadmissible based on authority from the United States Fifth Circuit excluding expert testimony in a § 1983 case consisting of nothing more than "credentials and a subjective opinion." (citing Benavides). Dr. Kelly provides simply his credentials and his subjective opinion that he would have acted differently than Fairbanks based on the facts presented. Under the Fourth Amendment, an opinion that one would have acted differently does not negate the officer's reasonableness at the time of the act. (citations omitted). Therefore, Dr. Kelly's opinions about alternative methods he believes Fairbanks should have used are irrelevant and inadmissible.
>
> Dr. Kelly's opinions are also inadmissible to the extent they contain legal conclusions or factual findings. Expert opinions cannot unduly infringe on the factfinding functions of the jury and are inadmissible to the extent that such opinions assert factual findings. (Citations omitted). Dr. Kelly's deposition contains nothing more than his legal conclusions based on factual findings presented to him before and during the deposition. Any conclusions made by Dr. Kelly cannot be the subject of expert testimony because these fall within the province of the fact finder, who is charged with hearing the facts, weighing the reliability and credibility of witnesses and evidence, and deciding the outcome of the case at issue.

*Id.* at 786.

Here, Plaintiffs argue that Rogers' conclusions would aid a jury and/or the Court to decide that all of the force used by anyone was wrong. However, Defendants argue that Rogers cannot see from the video what Runner saw. Defendants contend that Rogers does not consider the threats

being made by Moore to White or the C.O.s.  The threats described by the C.O.s could be construed as a "pre-assault" indicator.  In addition, Defendants assert that Runner interposed himself between Moore, the other C.O.s, and Moore's victim, White, who subsequently died from his injuries, to protect them from Moore.  Finally, Defendants assert that Rogers also does not consider the equally valid interpretation of the video, that the shove from Runner caused Moore to lose his balance, which served to stop Moore's impending attack on the C.O.s and/or White.

In considering the pending dispositive motions, the Court will view the video and determine what is indisputably shown therein.  If there are genuine issues of material fact for trial, a jury will view the video and reach its own conclusions on what is shown.  Therefore, the Court finds that the expert opinions at issue here unduly infringe on the factfinding functions of the jury and are inadmissible.

Although Rogers' opinions on whether the officers' conduct conformed to professional standards of care is relevant to determining whether the force used was excessive, these opinions do not show whether a reasonable officer in the same circumstances would have believed that his or her conduct was reasonable.  *See, e.g.*, *City & Cty. of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1777 (2015) ("[S]o long as a reasonable officer could have believed that his conduct was justified, a plaintiff cannot avoi[d] summary judgment by simply producing an expert's report than an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless" (alteration and internal quotation marks omitted).

As indicated above, where the expert opinions at issue combine law and fact, the question is whether the opinion will help the trier of fact to understand the evidence or to determine a fact in issue.  These expert opinions do not meet that test.  Whether Runner's or Hardwell's use of force was excessive or deadly is a legal question that is not proper subject matter

for expert testimony. To the extent that Rogers offers legal conclusions, the Court will not consider their expert opinions or reports.

Accordingly, for the above reasons, Defendants' Motion to Strike Rogers' Declaration is GRANTED.

### 9.    Deposition of Kenny Sanders, Exhibit KS

The Defendants object to the admissibility of the Deposition of Kenny Sanders.  This objection has been addressed by the Court in the Ruling on the first Motion to Strike [Doc. No. 282]. Accordingly, for the same reasons set forth in that Ruling, the Court GRANTS Defendants' Motion to Strike.

### 10.    Declaration of Kenny Sanders with attachments dated April 27, 2020, Exhibit 190

Defendants object to Sanders' new opinions found in his April 27, 2020 Declaration as being untimely and in violation of the Court's Order.  Defendants contend that Sanders' Declaration contains new opinions and new conclusions not previously disclosed. They also assert that the new Declaration makes statements that are contradicted by his deposition testimony. They state the new Declaration is an apparent attempt to supplement his original report and to close the gaps and failings found in Sanders' opinions, as exposed in Sanders' deposition.

Defendants contend that it is apparent that Sanders' new Declaration is nothing more than an attempt to skirt the requirement that experts prepare reports by the deadlines set by order of the Court, which reports must contain their full opinions and the basis for their opinion.

Defendants further argue that Sanders' new Declaration and all new opinions therein should be stricken for the reasons set out in their initial Memorandum on Motion to Strike. Defendants assert that all of Sanders' opinions, whether found in his deposition, declaration, or report, should be found to be inadmissible.

26

Plaintiffs respond that Sanders' Declaration contains no new opinions; rather, it clarifies his prior opinions, and that his Declaration is subject to being stricken only to the extent that it inserts new opinions that are not mere elaboration or supplementation. *See In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016). They argue that Sanders' Declaration merely explains his opinions in more detail.

More specifically, Plaintiffs assert that Sanders should be allowed to explain that the typical training used by correctional officers in defensive tactics is PPCT, which requires, as a part of its curriculum, refresher training annually. Plaintiffs argue that PPCT is a "manufacturer" of training curriculum and that the PPCT's requirements apply and lead to the conclusion that the C.O.s at RCC were improperly trained.

Defendants reply that, whether a "manufacturer" has a line in a manual about training is not relevant or admissible evidence as to whether the Constitution was violated.

Rule 26(e)(1)(A) allows a party to supplement when it "learns that in some material respect the disclosure or response is incomplete or incorrect." "The purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc*., 73 F.3d 546, 571 (5th Cir. 1996). Further, the rule is not a basis to make "material additions" to an initial report. *Harmon v. Ga. Gulf Lake Charles LLC*, 476 Fed. App'x. 31, 38 (5th Cir. 2012) cited with approval in *Cole v. Hunter*, 68 F. Supp. 3d 628, 639 (N.D. Tex. 2014) (holding that "[s]upplemental opinions must not include material changes or corrections to the expert opinions.")

The Court finds that Plaintiffs have not established that Sanders' Declaration merely rebuts and supplements his original opinions and does not make material additions. His Declaration does

contradict some of his earlier statements. Further, the Court's Ruling on Defendant's original Motion to Strike [Doc. No. 282] was that, to the extent that Sanders unduly infringes on the factfinding functions of the Court or offers legal conclusions, the Court will not consider his expert opinions or report. For the same reasons, the Court GRANTS Defendants' Motion to Strike Sanders' Declaration.   To the extent that Sanders unduly infringes on the factfinding functions of the Court or offers legal conclusions, the Court will not consider his Declaration.

## III.    CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART the pending Motion to Strike [Doc. No. 333].

MONROE, LOUISIANA, this 30th day of October, 2020.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**