UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **ERIE MOORE, JR., ET AL.** | **CIVIL ACTION NO. 3:16-01007** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LASALLE CORRECTIONS, INC., ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

<u>**MEMORANDUM RULING**</u>

Pending before the undersigned Magistrate Judge, on referral from the Court, are three related motions:  a Motion to Set Discovery and Other Deadlines in a Scheduling Order [doc. #400] filed by Plaintiffs;  a Motion Regarding Remaining Claims [doc. #415] filed by Defendant Roderick Douglas ("Douglas"); and a Motion For Clarification [doc. #416] filed by Defendants Reginald Curley ("Curley"),  Jody Foster ("Foster"), Gerald Hardwell ("Hardwell"), LaSalle Management Co.,  LLC ("LaSalle"), William Mitchell ("Nurse Mitchell"), City of Monroe ("the City"), Richwood Correctional Center,  LLC ("Richwood"), Duan Rosenthal ("Rosenthal"), Jeremy Runner ("Runner"), and Reginald Williams ("Williams").

For the following reasons, the Motion Regarding Remaining Claims is DENIED, and the Motion for Clarification is GRANTED IN PART AND DENIED IN PART.[1]

---

[1] As these motions are not excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court.  Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).  The undersigned notes that the ruling on the motion for clarification addresses what claims and Defendants remain after various rulings by the Court and the Fifth Circuit, but does not undertake to dispose of any remaining Defendants or claims.

I.        **FACTS AND PROCEDURAL BACKGROUNDS**

This lawsuit arises from the death of Erie Moore, Sr. ("Moore") at the Richwood

Correctional Center ("RCC"), a private detention center located in Ouachita Parish, Louisiana.

RCC is owned by Richwood and operated by LaSalle and related private entities.

Moore was arrested by Monroe Police Department ("MPD") Officer Tommy Crowson

("Crowson") for disturbing the peace at a local donut shop on October 12, 2015, and he was

subsequently detained at RCC.  As part of the booking process, staff brought Moore to Nurse

Mitchell for a medical screening.  As Moore was agitated and noncompliant, Nurse Mitchell

contends that he was unable to properly examine Moore, who was placed in a lockdown cell.

The next day, October 13, 2015, Moore was involved in an altercation with his cellmate,

Vernon White ("White").  Guards broke up the fight, but Moore and White remained in the same

cell.  Later that afternoon, a guard, Runner,  realized that he had seen only Moore on a monitor

for a long time.  When he went to the cell, he found White was "apparently seizing and had

blood around his mouth."  [doc. #393, p. 4].  After Runner obtained back up and a key,  guards

entered the cell to extract White.  Moore allegedly ignored verbal orders and was sprayed in the

face with pepper spray.   Runner struck him in the back of the head, knocking him to the ground.

Guards then removed White, who later died at a local hospital.

Moore was left alone in the cell until guards, including Runner, Hardwell, Williams, and

Curley, re-entered, sprayed him with pepper spray, and then forcibly removed him.  As he was

moved to an area known as the Four-Way, Moore's head hit the ground two different times.  He

remained in the Four-Way for approximately two hours.  At some point he became unresponsive

and remained so when Deputy Sheriffs Donald Murphy and Chase Well arrived to transport him

toOuachita Correctional Center ("OCC") in connection with White's death.[2]

When the sheriff's deputies realized that something was wrong with Moore, they brought him to the hospital.  He was comatose and had to be intubated.  Medical personnel determined that Moore suffered a fractured skull, and he died, having never regained consciousness, approximately one month later on November 14, 2015.

Plaintiffs Erie Moore, Jr., Tiffany Robinson, and Tamara Robinson (collectively "Plaintiffs") are the children and heirs of Moore. In their original Complaint, filed July 8, 2016, Plaintiffs alleged that the death of their father was caused by multiple Defendants [doc. #1].  On December 5, 2017, an Amended Complaint was filed, which added new Defendants and reasserted the previous allegations. [doc. #63]. On April 11, 2019, the controlling pleading, the Third Amended Complaint was filed, which added more Defendants to the suit, reasserted many of the original claims, and made some new claims. [doc. #140].  In all, Plaintiffs filed suit against twenty-two individual, municipal, and private-company Defendants, asserting at least seven separate claims arising out of the death of their father.  The Third Amended Complaint asserts claims against the following Defendants:  (1) Lasalle; (2) Richwood; (3) Hardwell, in his individual and official capacities; (4) Lt. Christopher Loring, in his individual and official capacities; (5)  Runner, in his individual and official capacities; (6) Williams, in his individual and official capacities;  (7) Curley, in his individual and official capacities; (8) Rosenthal, in his individual and official capacities;  (9) Douglas, in his individual and official capacities;  (10) Capt. Kenneth Hart, in his individual and official capacities; (11) C/O Danielle Walker, in her

---

[2] The events leading to Moore's death are factually disputed and have been recounted in the various summary judgment rulings, as well as the Fifth Circuit's Opinion.  The undersigned does not seek to recount every fact, but provide an overview of the events prior to his death and to give context to the ruling on the pending motions.  The Court defers to the Fifth Circuit's greater recounting of the disputed facts in this matter. *See* [doc. #393].

individual and official capacities; (12) Sgt. Roy Brown, in his individual and official capacities;
(13) C/O Alton Hale, in his individual and official capacities;  (14) Foster, in his individual and
official capacities;  (15) Nurse Mitchell, in his individual and official capacities; (16) Deputy
Wells, in his individual and official capacities;  (17) Deputy Lambright, in his individual and
official capacities;  (18) Deputy Murphy, in his individual and official capacities;  (19) Deputy
Holyfield, in his individual and official capacities; (20) Ouachita Parish Sheriff, in his official
capacity and as the employer of Holyfield, Wells, and Murphy, and "other like situated
deputies."; (21) MPD Officer Crowson, in his individual and official capacities;  (22)  the City;
and (23) The Princeton Excess and Surplus Lines Insurance Co. ("Princeton Insurance").
Plaintiffs asserted claims of (1) excessive force against Lasalle, Richwood, Hardwell, Loring,
Williams, Runner, Hale, Curley, Foster, Wells, Murphy, and Simons; (2) failure to intervene, 42
U.S.C. § 1985 conspiracy, and failure to supervise against Lasalle, Richwood, Rosenthal, Hart,
Runner, Foster, Aultman, Hale, Holyfield, Murphy, Wells, Lambright, Brown, and Loring; (3)
failure to monitor and classify, train, and implement policies and provide adequate medical
attention against the City, Lasalle, Richwood, Hansen, Aultman, Walker, Hale, Crowson,
Hardwell, Runner, Curley, Williams, Foster, Nurse Mitchell, Loring, and Rosenthal; (4) failure
to train and failure to implement adequate policies against Lasalle, Richwood, the City, Hansen,
and Aultman; (5) failure to protect and classify inmates against Lasalle, Richwood, The City,
Hansen, Hardwell, Loring, Aultman, and Douglas.; (6) state law claims under La. Civ. Code art.
2315 against the City, Ouachita Sheriff, Lasalle, and Richwood for negligence, excessive force,
and failure to train officers and others in classification, use of force, and proper monitoring of
known violent offenders; (7) state law claims against the City for failing to "implement
procedures to require notices concerning threats to officers or citizens made by law enforcement

to be broadcast to all of its patrol officers;" (8) state law claims of negligence and intentional acts against Ouachita Parish Sheriff, Lambright, Holyfield, Wells, Murphy, LaSalle, Richwood, Hardwell, Mitchell, Runner, Foster, Curley, Douglas, Loring, Aultman, and "other correctional officers, and deputies and employers."

After an extensive period of discovery and a number of discovery disputes, on December 19, 2019,  Defendant Princeton Excess & Surplus Lines Insurance Co. filed a motion for summary judgment [doc. # 194], arguing that Plaintiffs were not entitled to maintain any direct action claims against it because the policy limits of the Retained Limit Policy issued to Defendant LaSalle had been exhausted.  After briefing was complete, Judge Doughty issued a Memorandum Ruling and Judgment [doc. #s 207 and 208] dismissing all claims against this Defendant.  Plaintiffs did not seek interlocutory appeal of this ruling, and no claims are currently pending against this former Defendant.

Additionally, on January 27, 2020, on joint motion of the parties, Judge Doughty issued a Judgment [doc. #211] granting a motion to dismiss with prejudice all claims against  Defendants Nathaniel Lambright ("Lambright") and Johnny Holyfield ("Holyfield") and any derivative claims against Sheriff Russell arising out of the alleged acts of Lambright and Holyfield.  No claims remain pending against Lambright and Holyfield and no derivative claims remain pending against Sheriff Russell.

 In March of 2020, dispositive motions were filed by Plaintiffs and remaining Defendants.  *See* [doc. #s 219, 222, 224, 230, 237, 241, 245, 247, and 256].  After briefing was complete, Judge Doughty issued Memorandum Rulings on the pending motions.  [doc. #s 348, 349, 350, 351, 352, 353, 356, 357, 358, 359, 360, 361, 362, 363, 364, and 365].  Among other rulings, Judge Doughty granted summary judgment as follows:

5

(1)     to individual Defendants Runner, Hardwell, Curley, Williams, and Mitchell (collectively "Individual Defendants") for deliberate indifference;

(2)     to the Individual Defendants for having caused Moore's death;

(3)     to Runner, Hardwell, Curley, and Williams for punitive damages;

(4)     to LaSalle and Richwood (collectively "Corporate Defendants") for vicarious liability based on any Individual Defendant violating federal law;

(5)     to the Corporate Defendants and the City for *Monell* liability; and

(6)     to the Corporate Defendants for punitive damages.

[doc. #393, p. 7].  According to the Fifth Circuit, "[o]ther state and federal claims remain pending in the district court." *Id.* at p. 7 n.2.   "For example, excessive-force claims against individual defendants, plus state-law claims [against] the Corporate Defendants" remained pending after the summary judgment rulings.  *Id.*

On motion, Judge Doughty deemed the Judgments designated as ECF Document Numbers 349, 351, 353, 357, 359, 361, 363, and 365 as final under Rule 54(b).  [doc. #371].  He further deemed that Judgments designated as ECF Document Numbers 355, 367, and 369 as either final under Rule 54(b), or, alternatively, certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  [doc. #371].

On November 24, 2020, Plaintiffs filed their Notice of Appeal to the United States Court of Appeals for the Fifth Circuit, identifying the following issues:

A.  ECF Document number 349 dismissing with prejudice Defendants Hart and Brown.

B.  ECF Document number 351 dismissing with prejudice Defendants Mitchell, Hale and Walker.

C.  ECF Document number 353 dismissing with prejudice Defendant Crowson.

6

D.  ECF Document number 355 denying Plaintiff's Motion for
    Partial Summary Judgment.

E.  ECF Document number 357 dismissing with prejudice Defendants LaSalle
    Management Company, Richwood Correctional Center, LLC, Warden
    Hanson, and Assistant Warden Aultman.

F.  ECF Document number 359 dismissing with prejudice Runner, Hardwell,
    Curley, Williams, and Rosenthal on conspiracy, official capacity, pepper
    spray claims; dismissing with prejudice Defendants Curley and Williams on
    claims of excessive force resulting in less than lethal injuries[.]

G.  ECF Document number 361 dismissing with prejudice nineteen Defendants
    for any wrongful death claims.

H.  ECF Document number 363 dismissing with prejudice City of Monroe[.]

I.  ECF Document number 365 dismissing with prejudice Defendants Ouachita
    Parish Sheriff, Deputy Murphy and Deputy Wells.

J.  ECF Document numbers 349-365 judgments dismissing with prejudice
    claims for punitive claims against all Defendants including those against
    LaSalle Management Company and Richwood Correctional Center, LLC.

K.  ECF Document numbers 367 and 369 which are Orders striking certain
    evidence filed by Plaintiffs in opposition to Defendants Motions for Summary
    Judgment.

L.  ECF Document number 354 denying Plaintiffs' Motion for Partial Summary
    Judgment.

[doc. #379].  Plaintiffs further sought "to appeal that Order ECF Document numbers 197-198

dated December 19, 2019, which granted a protective order and ruled that no punitive damage

claim may be asserted against a private company."  [doc. #379].

Once on appeal, however, Plaintiffs' opening brief to the Fifth Circuit limited the issues

presented as follows:

**Issues Concerning The Individual Defendants**

1. Where the medical evidence indicates that a pretrial detainee sustained a fatal blunt-force head injury during the same period of time in which guards punched him in the head, slammed his head into the floor, picked him up, and then dropped him head-first back onto the floor, could a reasonable jury find that the guards' actions were a substantial factor in his death?  . . .

2. Where the same guards participated in those uses of force, failed to intervene, failed to seek medical care for the resulting injuries, and then transported the pretrial detainee to a camera-free area where they proceeded to beat him and then left him to languish for nearly two hours, could a reasonable jury find that the guards were deliberately indifferent to the serious risk to his health? . . .

3. Where, following those injuries, a nurse observed the pretrial detainee lying unconscious, face-up, with his hands cuffed behind his back, and where that nurse conducted no examination—other than to confirm he was unconscious—and offered no medical care, could a reasonable jury find that the nurse was deliberately indifferent to the serious risk to his health?  . . .

4. May a nurse employed by a private detention facility assert the defense of qualified immunity, despite this Court's precedent that such a defense is categorically unavailable to such employees? . . .

5. In light of the uses of force and deliberate indifference just described, could a reasonable jury find that the guards and nurse acted with reckless or callous indifference to the pretrial detainee's rights—and thereby award punitive damages? . . .

**Issues Concerning The Corporate Defendants**

6. May private companies operating detention facilities be held vicariously liable for the actions of their employees under the doctrine of respondeat superior? . . .

7. Where there is evidence that a detention facility had ongoing customs of using chemical spray against restrained pretrial detainees and of using a camera-free area in order to inflict punishment on such detainees—and where that evidence includes federal convictions of some of the facility's guards for precisely these abuses against other detainees—could a reasonable jury hold the private companies operating the facility liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978)? . . .

8. Where the private companies operating a detention facility failed to train their guards on the use of defensive tactics, despite the obvious need for such tactics in their day-to-day employment, could a reasonable jury hold the companies liable under *Monell*? . . .

9. May punitive damages be imposed against private companies operating detention facilities? . . .

10. In light of the abusive customs and training failures just described, could a reasonable jury find that the private companies acted with reckless or callous indifference to the pretrial detainee's rights? . . .

**Issue Concerning The Municipal Defendant**

11. Where a city contracts with private companies to operate a detention facility for its pretrial detainees, and where the city delegates all policy-making authority to those companies, may the city be held liable under *Monell* for the abusive customs and training failures established by the companies? . . .

*Moore v. LaSalle Management*, Fifth Circuit Court of Appeals Docket No. 20-30739, #80

(citations to brief sections omitted).

On August 29, 2022, the Fifth Circuit issued an Opinion [doc. #393], 41 F.4th 493 (5th Cir. 2022), affirming in part, reversing in part, and remanding the case for further proceedings in this Court.  In its Opinion, the Fifth Circuit was clear that its review was limited to "only those issues [Plaintiffs] explicitly preserved for appeal **and adequately briefed**."  [doc. #393, p. 7, n.2 (emphasis added)].  The Fifth Circuit made clear that it would not "address other claims . . . that Plaintiffs appealed but did not raise in their opening brief. **Those claims were abandoned.**"  *Id.* (emphasis added) (citing *Akuna Matata Investments, Ltd. v. Tex. Nom Ltd. P'ship*, 814 F.3d 277, 282 n.6 (5th Cir. 2016)).

Though tedious, an accurate review of the parties' pending motions requires an in-depth review of the Fifth Circuit's August 29, 2022 Opinion.  Relevant to the pending motions, the Fifth Circuit stated the following:

(1) "A reasonable jury could find that the Individual Defendants acted deliberately indifferent toward Moore on this record."  [doc. #393, p. 10].

(2) "The district court dismissed all Plaintiffs' federal and state-law claims against the Individual Defendants 'for the death of Moore due to excessive force.' . . . [W]e think that was mostly premature. Save for claims against Mitchell, Plaintiffs have raised fact disputes on causation arising from their excessive-force claims."  *Id.*

(3) "According to their Third Amended Complaint, Plaintiffs brought their § 1983 claims against the Individual Defendants both as Moore's survivors and for wrongful death. Plaintiffs even partially mix the two actions together by arguing that the Individual Defendants' deliberate indifference is what caused Moore's death. **We don't have to review that mixed question today, though, since the**

**Individual Defendants didn't ask for summary judgment on it**." [doc. #393, pp. 11-12] (emphasis added).

(4) "Plaintiffs' excessive-force claims based on Moore's less-than-lethal injuries are still pending in the district court." *Id.* at p. 13.

(5) " . . . Did Plaintiffs raise a fact dispute over if the Individual Defendants' excessive force caused a lethal injury to Moore?  Except for Mitchell, Plaintiffs succeeded." *Id.*

(6) "On this record, then, Plaintiffs raised a fact dispute for their survivorship claims on whether the Individual Defendants caused Moore's death through excessive force. That is, with one exception—nurse Mitchell." *Id.* at p. 16.

(7) "[On] Plaintiffs' non-survivorship claims under Louisiana law.. . . Plaintiffs have raised fact disputes over whether each Individual Defendant's excessive force was a substantial factor in causing Moore's death." *Id.* at p. 17.

(8) "The district court also concluded that Mitchell was entitled to qualified immunity. We disagree . . . [because] employees of 'private firm[s] systematically organized to perform the major administrative task of delivering healthcare services to inmates, detainees, and juveniles,' like Mitchell, '[are] categorically ineligible to claim qualified immunity.'" *Id.* at p. 19 (quoting *Sanchez v. Oliver,* 995 F.3d 461, 475 (5th Cir. 2021)).

(9) "Plaintiffs haven't preserved their vicarious-liability argument [against the corporate Defendants] for appeal, so we do not decide it." [doc. #393, p. 20]. "Plaintiffs chose not to respond to [the Corporate Defendants'] argument [that they could not be held vicariously liable under § 1983] in their opposition.  . . Rather, they argued only that

11

they could hold the Corporate Defendants vicariously liable for their state-law claims for excessive force and failure to provide medical care. We do not consider arguments . . . raised for the first time on appeal. . . . Therefore, we leave for another day whether plaintiffs can hold private defendants vicariously liable under § 1983." [doc. #393, p. 21] (quotation marks and citation omitted).

(10)  "Still, Plaintiffs also contend that the Corporate Defendants and City are all directly liable under *Monell*. . . . The district court concluded that Plaintiffs could not raise a fact dispute . . .  We disagree." *Id.*

(11)  "In short, Plaintiffs win on most, but not all their contentions about the Corporate Defendants' and City's liability. We do not decide if Plaintiffs can or cannot hold the Corporate Defendants vicariously liable for the Individual Defendants' actions. But Plaintiffs have raised fact disputes on the Corporate Defendants' and City's direct liability under *Monell.* Therefore, we reserve the vicarious-liability question, but REVERSE on *Monell* liability."  *Id.* at p. 26.

(12)  "A reasonable jury could conclude on this record that Plaintiffs are entitled to punitive damages against Runner, Hardwell, Williams, and Curley." *Id.* at p. 29.

(13)  "A reasonable jury could also conclude on this record that Plaintiffs are entitled to punitive damages against the Corporate Defendants. We explained above how the record could support a jury finding that the Corporate Defendants' policymaker, Hanson, knew about widespread uses of excessive force in the prison—specifically, that guards used the Four-Way and pepper spray to physically punish prisoners. At a minimum, this raises a fact dispute over whether Hanson acted criminally indifferent toward illegal customs that exposed his prisoners to an unnecessary risk of injury."

12

*Id.* at p. 30.

(14)   "In sum, Plaintiffs' claims for punitive damages should have survived summary judgment. The Corporate Defendants are not immune, and Plaintiffs have raised fact disputes over whether the Individual Defendants—save for Mitchell—and the Corporate Defendants—through their policymaker, Hanson—acted with reckless or callous indifference." *Id.*

On December 14, 2022, after the mandate issued, the parties filed a joint motion to reopen or reinstate the case.   A status and scheduling conference was conducted by the undersigned on January 4, 2023.  During the conference it became clear that certain issues had to be resolved prior to the setting of a new trial date.  The parties disagreed as to the remaining deadlines to be set and which claims remain pending after appeal.  In light of these disagreements, the undersigned set deadlines for the attorneys to confer and to file certain motions if the issues could not be resolved.

In compliance, on January 25, 2023, Plaintiffs filed the instant  Motion to Set Discovery and Other Deadlines in a Scheduling Order [doc. #400].

On March 14, 2023, Defendant Douglas filed a Motion Regarding Remaining Claims [doc. #415].  On the same date, Defendants Curley, Foster, Hardwell, Lasalle, Nurse Mitchell, the City, Richwood, Rosenthal, Runner, and Williams filed a Motion for Clarification [doc. #416].

All motions are fully briefed and ripe for consideration.

## II.    Pending Motions

The motions in this matter overlap to some extent in that the parties do not agree as to which claims remain for trial and, consequently, the discovery to be conducted and the

appropriate deadlines to be set in an abbreviated scheduling order.  While the Court would normally address the parties' motions in the order filed, in this case, the better method is to first determine what claims and Defendants remain and then determine the path forward with regard to discovery and scheduling.

    A.    **Motions Regarding Remaining Claims [doc. #415] and for Clarification [doc. #416]**

First, as noted, all claims against Princeton Insurance, Lambright, Holyfield, and all claims against the Ouachita Parish Sheriff  Jay Russell for the actions of Lambright and Holyfield have been dismissed with prejudice.[3]  Those dismissals have not been appealed, and these Defendants are no longer parties to the action.    Second, the parties agree that the following persons are no longer Defendants in their individual capacities:  Warden Hanson; Assistant Warden Aultman; Roy Brown ("Brown"); Kenneth Hart ("Hart"); Alton Hale ("Hale"); Danielle Walker ("Walker"); and Crowson.   Third, the parties agree that all claims against Rosenthal have been dismissed.  Fourth, although not addressed by the present parties, Plaintiffs appealed the judgment dismissing Sheriff Jay Russell and Deputies Murphy and Wells, but those claims were abandoned on appeal, and thus there are no claims against these Defendants pending.

Remaining Defendants further contend that all claims against Warden Hanson, Assistant Warden Aultman, Brown, Hart, Hale, Walker, and Crowson have been dismissed.  They further contend that these claims have been dismissed:  conspiracy, failure to provide medical care under state law as to all Defendants, bystander liability (failure to intervene) under federal law as to all

---

[3] To the extent that there were any other claims against Sheriff Russell, the parties apparently do not dispute that those claims are no longer pending, and he is not a party to this action.  Although Plaintiff were granted leave to appeal his dismissal, no claims were made to the Fifth Circuit regarding any individual wrongdoing by Sheriff Russell.  Thus, any appeal was abandoned.

Defendants, failure to classify as to all Defendants, and all claims against the City except for the limited *Monell* claim based on the customs of the using the Four-Way and chemical spray to punish prisoners.

Plaintiffs oppose Defendants' motions, contending that there is a remaining claim against Runner for the "drop" of the decedent on his head in the hallway, either as excessive force, deliberate indifference to medial needs, fault, or wrongful death or survival action.  They argue that Judge Doughty never granted summary judgment on Plaintiffs' claims against Runner for these actions as being actionable under § 1983 or state negligence law, granting summary judgment only on causation, which was reversed.  Plaintiffs further contend that Douglas remains in this case with pending claims against him for medical care, bystander liability, and conspiracy and that Loring, as another supervisor, has the same claims against him, particularly when he is subject to potential punitive damages.  They further contend that the *Monell* claim is not as limited as Defendants argue, but the judgment on that claim was reversed, and they "need not reach" the alternative failure to train argument because the entire claim was reopened as against LaSalle, Richwood, and the City.  Plaintiffs also contend that the Fifth Circuit left open claims against individual Defendants for the use of chemical spray.

Finally, the parties dispute whether Defendants may assert qualified immunity and good faith defenses at trial.  Defendants contend that Judge Doughty's denial of summary judgment on the basis of qualified immunity does not prevent them from raising that defense at trial, and they further argue that they can raise a good faith defense.  Plaintiffs contend that the qualified immunity defense is foreclosed, and that good faith is not a defense separate and apart from qualified immunity.

**1. No claims remain against Warden Hanson, Assistant Warden Aultman, Brown, Hart, Hale, Walker, and Crowson.**

The undersigned first addresses any remaining claims against Warden Hanson, Assistant Warden Aultman, Brown, Hart, Hale, Walker, and Crowson.  In briefing before Judge Doughty, Plaintiffs previously conceded that **all** claims against Hart and Brown should be dismissed.  [doc. #330, p. 2].  Therefore, there are no remaining claims against Hart and Brown.  Although the summary judgment [doc. #349] by Judge Doughty was appealed, once Plaintiffs failed to brief those issues, they were abandoned.  Therefore, there are no remaining claims of any kind against Hart and Brown.

Likewise, with regard to Hale and Walker, Plaintiffs previously conceded that all claims against them should be dismissed. [doc. #350, p. 1].  Therefore, no claims of any kind remain against Hale and Walker.

Next, Judge Doughty also granted summary judgment to Crowson on all claims against him under federal or state law.  Therefore, although Plaintiffs ostensibly appealed that summary judgment, those claims were also abandoned.  Finally, to the extent that Plaintiffs are not conceding "official" capacity claims against Crowson, those claims would merge with the claims against the City and thus be redundant.[4]  Therefore, no claims of any kind remain against Crowson.

With regard to Warden Hanson and Assistant Warden Aultman,  in the Third Amended Complaint, Plaintiffs asserted claims against them under Section 1983 for failure to monitor and classify, train, and implement policies and provide adequate medical attention; and for failure to

---

[4] To ensure the record is clear, it is recommended that, if there is no appeal of this specific finding, Judge Doughty issue a judgment dismissing the official capacity claims against Crowson once the time period for an appeal of this order has passed.

16

train and failure to implement adequate policies.  Plaintiffs further asserted state law claims for negligence and intentional acts against Aultman (but not Hanson) for observing "Moore in the Four-Way when he was unresponsive and obviously suffering from a serious medical condition but failing to provide transport to a hospital. Plaintiffs allege violations of Louisiana Civil Code Article 2315 for negligence and intentional acts. Officers named . . . in the course and scope of their employment with [LsSalle] and [Richwood] committed fault and that fault should be evaluated under La. C.C. art. 2323 and 2324. Officers failed to provide adequate medical care, monitoring and failed to adequately inform superiors and Richwood of Mr. Moore's mental health condition."  [doc. #140, ¶¶ 45-49].   Plaintiffs concede that the § 1983 individual capacity claims are no longer pending against Warden Hanson and Assistant Warden Aultman.  Further, it appears that any claims against Warden Hanson and Assistant Warden Aultman in their official capacity claims are redundant of the *Monell* claims against LaSalle and Richwood, and, thus, no longer appear pending.[5]  Finally, in his summary judgment ruling, Judge Doughty was clear that "all claims" against Hanson and Aultman for inadequate training or supervision" and claims that "that they were deliberately indifferent" were dismissed with prejudice.  [doc. #356, p. 31]. Specifically to Aultman, Judge Doughty found that "there is no proof of deliberate indifference to a substantial risk of serious harm, that Aultman drew that inference, and that Aultman then disregarded it," and, thus, he dismissed the medical care claim against Aultman.  [doc. #356, pp. 32-33].  Neither the Fifth Circuit nor any party appears to address the state law claims against Hanson and Aultman as individuals.  Thus, Judge Doughty's ruling stands, and there are no

---

[5] To ensure the record is clear, it is recommended that, if there is no appeal of this specific finding, Judge Doughty issue a judgment dismissing the official capacity claims against Warden Hansen and Assistant Warden Aultman once the time period for an appeal of this order has passed.

claims against Hanson or Aultman, only against the Corporate Defendants for whom they acted. This finding is consistent with the Fifth Circuit's conclusion that state law claims against the Corporate Defendants remain pending.

### 2. The parties agree that certain claims remain pending.

The parties agree that the following claims against the following Defendants remain pending. The parties agree that excessive force claims remain pending under state and federal law against Runner (but not for pepper spray in LD7); Hardwell (but not for pepper spray in LD7); Curley (but not for pepper spray in LD7); Williams; and Foster. The parties also agree that medical-deliberate indifference under federal law only remain pending against Runner; Hardwell; Curley; Mitchell; and Foster. The parties also agree that punitive damages claims remained pending against Lasalle; Richwood; Runner; Hardwell; Williams; Curley; and Foster. The parties agree that wrongful death and survival actions remain pending against all Defendants. Finally, the parties agree that Plaintiffs continue to have claims against LaSalle and Richwood for vicarious liability under state and federal law.

### 3. Claims remain pending against Douglas and Loring.

Douglas contends that the only remaining claims against him are (1) an excessive force claim arising out of his alleged knowledge of an altercation between the inmates in LD7, and his failure to separate them, (2) wrongful death and survivorship actions from observing Moore as unresponsive and failing to have him transported to the hospital, and (3) punitive damages under § 1983. [doc. #415-1]. Plaintiffs argue that Douglas has remaining claims, in addition to these, for bystander liability (failure to intervene), medical care, and conspiracy.

Plaintiffs contend that he also has these claims against another supervisor, Loring, particularly where the parties admit that Loring has a remaining claim for punitive damages

18

against him.  Loring does not appear to have briefed the claims against him.

After review, it appears that the Fifth Circuit did not specifically address any claims against Douglas or Loring.  Further, Judge Doughty's ruling on their motion for summary judgment addressed only causation, which has now been reversed by the Fifth Circuit. Accordingly, it appears that the claims identified by Douglas, as well as those additional claims identified by Plaintiffs, remain pending against both Douglas and Loring, subject to these Defendants' rights to file a second motion for summary judgment under the deadlines to be set in a new scheduling order.  Defendant Douglas' motion is DENIED.

### 4.  No claims remain pending against Mitchell and Foster in their official capacities

It does not appear to the undersigned that Plaintiffs continue to pursue any claims against Mitchell or Foster in their official capacities.  If they do, however, the undersigned agrees with Defendants that no such claims remain pending.  Plaintiffs conceded in their opposition to the motion for summary judgment filed by Foster that the official capacity claims against him should be dismissed.  [doc. #300, p. 13; doc. #348, p.1; doc. #349, p. 1]. Although Plaintiffs originally asserted an official capacity claim against Mitchell, Judge Doughty dismissed "all claims" against Mitchell.  On appeal, it does not appear that Plaintiffs pursued that claim against Mitchell.[6]  Accordingly, Defendants' motion is GRANTED to the extent it establishes Mitchell and Foster are not subject to liability in their official capacities.

### 5.  The claims against Runner for the "drop" remain pending.

In his ruling on Runner's motion for summary judgment, Judge Doughty found that

---

[6] To ensure the record is clear, it is recommended that, if there is no appeal of this specific finding, Judge Doughty issue a judgment dismissing all claims against Mitchell and Foster in their official capacities once the time period for an appeal of this order has passed.

there was a claim against Runner for less-than-lethal injuries incured when Runner dropped Moore while moving him to the Four-Way.  [doc. #358, p. 39].  In the Fifth Circuit's opinion, that Court did not consider Runner's action separately, but did find that, as part of the entire conduct by the individual guards, a jury could find that Runner was deliberately indifferent to Moore's constitutional rights and that he contributed to Moore's death.  Accordingly, Defendants concede that the drop remains a "live issue," subject to their right to urge such conduct occurred through inadvertence or mistake.  [doc. #416-1, p. 6].

6.  **The only claims remaining against the City are for direct liability under *Monell*.**

The City contends that the only claims against it are for direct liability under *Monell*. Other than contesting the scope of the *Monell* claim, Plaintiffs do not appear to seriously dispute the City's position.  Thus, the undersigned finds only a direct liability claim under *Monell* remains pending, and Defendants' motion is GRANTED to that extent.  The scope of that claim will be considered separately.

7.  **The scope of the *Monell* claim against the Corporate Defendants and the City includes failure to train, but only as it relates to Plaintiffs' assertion that these Defendants had a custom of using excessive force.**

In its Opinion, the Fifth Circuit found that, concerning the *Monell* claim, Plaintiffs had raised a genuine dispute whether "a custom existed to use the Four-Way and chemical spray to punish prisoners."  [doc. #393, p. 22].  Following the Fifth Circuit's opinion, Plaintiffs argue that they may pursue a *Monell* claim for both this alleged custom and under an alternative failure to train theory because the Fifth Circuit determined that it "need not reach" that alternative *Monell* theory.  [doc. #393, p. 22 n.51].

Defendants contend that the Fifth Circuit's disposition of the *Monell* claims eliminated the failure to train theory.  Defendants' motions in this regard are GRANTED IN PART and

20

DENIED IN PART.

A close reading of the appellate court's decision shows that the failure-to-train theory remains untouched, but only **insofar as** Plaintiffs may use evidence of insufficient training at trial to prove a custom of excessive force promulgated by Corporate Defendants and also attributable to the City.

The Fifth Circuit determined that, "[b]ecause there's a fact dispute underlying an unconstitutional custom, we do not need to reach Plaintiffs' alternative, failure-to-train argument." [doc. #393, p. 22 n.51].  Put another way, Plaintiffs' contentions regarding (a) Corporate Defendants' failure-to-train and (b) the use of chemical sprays and beatings in the Four-Way are alternative arguments in support of the same, single custom or practice of excessive force promulgated by Corporate Defendants.  The Fifth Circuit reversed the trial court's holding on *Monell* liability based on a finding of an unconstitutional custom.  That custom was evidenced by Plaintiffs' argument regarding chemical sprays and beatings in the Four-Way.  Finding that argument sufficient to demonstrate an unconstitutional custom, the Court determined it did not need to assess the failure-to-train argument.  The contingency of the Fifth Circuit's analysis of the failure-to-train argument shows that argument to be merely one side of the same coin as the chemical spray and beatings argument.  That is, the appellate court determined that both arguments were sufficient in the abstract to analyze the *Monell* claim but did not need to reach the former having made a finding the latter was sufficient to reverse the trial court.

Accordingly, at trial, Plaintiffs may present evidence that the Corporate Defendants'

failure to train resulted in a custom or practice of excessive force.[7]

### 8. Certain claims remain for medical care, bystander liability, or conspiracy, but no claims remain for failure to classify.

Defendants also argue that the following claims are no longer pending:  all claims for conspiracy, failure to provide medical care under state law, bystander liability (failure to intervene) claim under federal law as to all Defendants, and failure to classify as to all Defendants.

Plaintiffs do not appear to contest Defendants' position with regard to failure to classify at all.  They did, however, specifically contest the claims for conspiracy, failure to provide medical care under state law, and bystander liability as to Defendants Douglas and Loring.

In ruling on the motion for summary judgment filed by Aultman, Brown, Curley, Foster, Hale,  Warden Hanson, Hardwell, Hart, Nurse Mitchell, Rosenthal, Runner, Walker, Williams, LaSalle,  Richwood, Douglas, Loring, Crowson, and the City, Judge Doughty explained that "Plaintiffs have brought several claims under 42 USC § 1983 as well as Louisiana state law concerning the alleged tortious acts of Defendants which they argue caused the death of their father, . . . Moore. . . . While each of those causes of action is different, they all share a common element: medical causation."  [doc. #360, p. 1].  Judge Doughty then determined that Plaintiffs failed to raise a genuine issue of material fact on causation for the fatal injuries to Moore.

---

[7] In their memorandum in opposition to the motion for clarification, Plaintiffs seemingly attempt to introduce novel arguments in support of their § 1983 claim.  For instance, they assert that Corporate Defendants had a "practice of covering up civil rights violations by cleaning areas where an [sic] violation took place and altering reports."  [doc. #421, p. 4 n.1].  These allegations are untimely and improperly asserted, and this new theory of liability will not be entertained. To be clear, on remand, the record is not re-opened for Plaintiffs to present evidence of any theory of *Monell* liability, but is limited to the theories identified here unless or until they have obtained leave to do so by Judge Doughty.

For the reasons previously stated, the undersigned has resolved the claims against Warden Hanson, Assistant Warden Aultman, Brown, Hart, Hale, Walker, and Crowson. Additionally, the undersigned has found that only a *Monell* claim remains pending against the City.   Finally, as explained above, the undersigned has found that the identified claims remain pending against Douglas and Loring.  However,  that leaves the identified claims pending against Curley, Foster, Hardwell, Nurse Mitchell, Runner, and Williams.  As Judge Doughty ruled only on causation, he has made no ruling on these additional claims, and they could not have been addressed on appeal.  Therefore, the undersigned finds that the motions should be GRANTED IN PART and DENIED IN PART.  Claims of conspiracy, failure to provide medical care under state law, and bystander liability remain pending against Curley, Foster, Hardwell, Nurse Mitchell, Runner, Williams, Douglas, and Loring, subject to their right to file a second motion for summary judgment under the new scheduling order.  However, claims of failure to classify do not remain.

### 9.  Remaining Defenses

Defendants contend that they are permitted to raise the defenses of qualified immunity and good faith.  Plaintiffs respond that the Fifth Circuit rejected the qualified immunity defense, and, therefore, it is not available.  Further, Plaintiffs argue that good faith is not a standalone defense, but part of a qualified immunity defense.

First, the Fifth Circuit's opinion ruled only that Nurse Mitchell is not entitled to claim qualified immunity.  The Fifth Circuit further found factual disputes for trial.  However, there has been no definitive ruling on the availability of the qualified immunity defense and none at all with regard to good faith.  The posture of the motion before the undersigned is for "clarification"

of the claims that remain after the Fifth Circuit's disposition of their appeal, not for a determination in the first instance as to which defenses may be asserted at trial.

Further, it would not be appropriate for the undersigned to address potential defenses when the parties have not filed any motions concerning these claims, and Judge Doughty has not yet had the opportunity to consider whether qualified immunity and good faith defenses apply after the mandate in this matter.  Accordingly, the Motion is DENIED to this extent.

### B.     Motion to Set Discovery and Other Deadlines in a Scheduling Order [doc. #400]

The Court last issued a Scheduling Order in February 2019, and all discovery deadlines expired in February 2020.  It cannot seriously be disputed that much has occurred in this case in the ensuring three and one-half years.  However, the parties do dispute what discovery should be conducted.

In their motion, Plaintiffs make two requests:

First, because the Fifth Circuit reversed this Court's ruling denying discovery from punitive damages on immunity grounds, that discovery should now be permitted to proceed. Second, because it has been nearly three years since the parties moved for summary judgment, and considering the passage of time and the availability of witnesses, the Court should allow a limited reopening of discovery on the merits.

[doc. #400-1, p. 7].  The remaining Defendants oppose the requests, at least in part.

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." "To show good cause, the party seeking to modify the scheduling order has the burden of showing 'that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) (quoting *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir.2013) (per curiam)). "There are four relevant factors to

consider when determining whether there is good cause under Rule 16(b)(4): '(1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the [modification]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice.'" *Squyres*, 782 F.3d at 237 (quoting *Meaux Surface Protection, Inc. v. Fogleman,* 607 F.3d 161, 167 (5th Cir.2010) (alterations in original). Whether to modify a scheduling order is within the discretion of the trial court. *Squyres*, 782 F.3d at 237 (citations omitted).

### 1. Punitive Damages Discovery

First, Plaintiffs seek discovery to support their claim for punitive damages.  They argue that, prior to the Fifth Circuit's decision, this Court had refused to allow discovery on financial information regarding LaSalle and Richwood on the basis that they were immune from punitive damages.  As the Fifth Circuit's decision effectively reverses this Court's prior decision to grant a protective order to the Corporate Defendants, they contend that they should be allowed to obtain requested financial information.  They further contend that they will now need to obtain an expert opinion regarding the use of the Four-Way to support a jury finding of reckless or callous indifference to Moore's federally protected rights.  Likewise, they contend that they need to depose several witnesses on this issue.  They explain that they did not do so previously because the Court had ruled that punitive damages were not available.

The City takes no position on whether Plaintiffs should be allowed discovery on LaSalle's and Richwood's financial information, but does contest "broad, open-ended discovery" on punitive damages.  [doc. #402, p. 3].  The City contends that Plaintiffs did not seek discovery into reckless and callous indifference or other use of force incidents prior to a little over 30 days before the discovery deadline, although they did obtain use of force incidents for a one-year

period prior to the instant incident.

Defendants Curley, Foster, Hardwell, Nurse Mitchell, Runner, Williams, LaSalle, and Richwood admit that Plaintiffs "are entitled to discovery on the issue of Defendants' liability for punitive damages," but contend that this discovery should be limited to "those issues specifically foreclosed by previous Rulings of this Court." [doc. #408]. They agree that Plaintiffs were prevented from pursuing documents as set forth in their Requests for Production # and #4 [doc. #400-3, Exh. A]. However, they contend that discovery should be limited by time and note that Magistrate Judge Hayes had previously limited the inquiry to the years 2015-2016, *see* [doc. #179]. They also contend that discovery into the Corporate Defendants' financial condition is barred by the Court's Ruling on December 19, 2019. [doc. #408, p. 3]. Defendants further argue that there have been significant changes to the Corporate Defendants' operations in Louisiana since the initiation of this matter. *Id.* They also indicate that motion practice on an appropriate protective order may be necessary if the parties cannot agree. *Id.* at p. 4.

Otherwise, these Defendants argue that Plaintiffs' motion overreaches when the Fifth Circuit did not direct further discovery, and they were not prevented from seeking such prior to the end of the discovery period. Indeed, they note that the Fifth Circuit's ruling finds that Plaintiffs have sufficiently produced evidence to support a punitive damages award against the individual Defendants and the Corporate Defendants. They point specifically to the corporate deposition of LaSalle, the deposition of Hanson (both individually and as a 30(b)(6) designee), and the questions asked about the Four-Way during the depositions of Aultman, Brown, Rodney Cooper, Johnny Creed, Curley, Foster, Hale, Hardwell, Loring,[8] Al McCarthy, Mitchell,

---

[8] Defendants also note that some witnesses refer to the Four-Way as the "lobby" or the "interlock." [doc. #408, p. 6].

Rosenthal, Runner, Kevin Sumrall, Antonio Turner, Walker, and Williams.  They do not oppose re-inquiry of those deponents, including Loring, Rosenthal, and Douglas, who invoked their Fifth Amendment rights, but do oppose the reopening of discovery on punitive damages generally when Plaintiffs could and did seek that testimony and evidence prior to the close of discovery.

Plaintiffs reply that Defendants admit that they should be able to obtain some information, but contend that they are entitled to inquire into LaSalle and Richwood's current financial condition, not into stale information from 2015-2016.  They request to be allowed to propound five interrogatories and five requests for production on the current financial condition of the Corporate Defendants and that they further be allowed to take two depositions to address the current finances and changes to corporate structure.

The undersigned agrees with Plaintiffs that they should be allowed to inquire into the current financial condition of LaSalle and Richwood. While the undersigned understands that financial conditions have changed from what they were at the time of this now-years-ago incident, when assessing punitive damages, the trier of fact must consider the current ability of these Defendants to pay a punitive damages award.  Further, Magistrate Judge Hayes' previous ruling did not so limit the financial information, but rather the other topics for the depositions to be conducted at that time.  Indeed, even though ultimately reversing Magistrate Judge Hayes and granting the Corporate Defendants a protective order from disclosing their financial information, Judge Doughty acknowledged:  "Under federal law, evidence of a defendant's financial worth and ability to pay may be admissible for the purpose of evaluating the amount of punitive damages that should be awarded."  [doc #197-1, p. 12] (citations omitted).

Accordingly, IT IS ORDERED that Plaintiffs' Motion to Set Discovery is GRANTED to the extent that they seek leave to propound five interrogatories and five requests for production

on the current financial condition of the Corporate Defendants and that they further be allowed to take up to two depositions to address the current finances and changes to corporate structure.

### 2.   Other Discovery and the Re-Setting of Deadlines

Plaintiffs also seek other discovery and the re-setting of certain deadlines, arguing that Defendants "ignore the changed landscape following the Fifth Circuit's reversal in this case" and "refuse even to update their preexisting discovery responses after three years of appellate litigation, breaching their ongoing duty to 'supplement or correct' discovery responses already given." [doc. #400-1, pp. 7-8].  Specifically, Plaintiffs seek the following:

(1) A new witness list deadline to update addresses, places of employment, and telephone numbers; to substitute witnesses who have become unavailable over the years this case has been pending; and to locate witnesses whose declarations were permitted in opposition to summary judgment;

(2) A new expert witness identification and report deadline because one treating physician witness, John Owings, now has a federal felony conviction and cannot testify; another treating physician, Eduardo Gonzalez-Toledo, has returned to his native Argentina; and the Fifth Circuit's ruling now permits an expert on punitive damages;

(3) Supplementation of existing interrogatories and request for production of documents, particularly responses to prior interrogatories and requests for production regarding Defendants' financial condition (interrogatory no. 2 and requests for production nos. 3 & 4), personnel information of individual Defendants (requests for production nos. 9, 14, and 15), use of force policy and training (same), and information on shift change on the day of the events (request for production no. 11);

28

(4)  Depositions of Bradney Rogers, Yolanda Jackson, Willie Woodard, Linda Hodges, and Karen T. Wilson; and

(5)  Depositions of Loring, Rosenthal, and Douglas.

In their opposition memoranda, the City and other Defendants agree that deadlines should be set for several items of discovery:  for the updating and supplementation of all existing written discovery responses; to update witness lists for changes in biographical information; for the depositions of Yolanda Jackson, Willie Woodard, Linda Hodges, and Karen Wilson; for the depositions of Rosenthal, Loring, and Douglas, limited to the areas in which they asserted a Fifth Amendment privilege.

Both the City and the other Defendants oppose Plaintiffs' filing of an entirely new witness list, adding and replacing witnesses, although they do not oppose the additions of Yolanda Jackson or Willie Woodard.  The City and other Defendants specifically object to the deposition of Bradney Rogers because he was previously disallowed by Judge Doughty, pointing that Judge Doughty did not strike his declaration solely because of late disclosure, but also because his testimony was not likely to help the trier of fact.  The City also opposes a new expert deadline, arguing that Plaintiffs have no excuse for failing to obtain an expert on the Four-Way procedures previously, that Dr. Owings is not actually "unavailable" and that Plaintiffs were aware that he was facing criminal conviction and used him as an expert anyway, that it is not entirely clear that Dr. Gonzalez-Toledo is unavailable, if he is, a limited substitution addresses the issue.     The other Defendants agree with the City's arguments, but add that Dr. Owings and Dr. Gonzalez-Toledo were treating physicians, and, thus, to "substitute" another expert is to actually engage an expert outside the deadlines.  Finally, the other Defendants contend that if the Court were to allow Plaintiffs to engage new experts, they, too, should be allowed to engage new

experts.

First, the parties agree, and IT IS ORDERED that the Plaintiffs' Motion to Set Discovery and Other Deadlines in a Scheduling Order [doc. #400]  is GRANTED to the extent that Plaintiffs seek to have a deadline set for a new witness list, **solely** to update addresses, places of employment, and telephone numbers and to locate witnesses whose declarations were permitted in opposition to summary judgment.  The motion is further GRANTED to the extent that Plaintiffs seek to re-open discovery and set a deadline for supplementation of existing interrogatories and requests for production of documents.  The motion is further GRANTED, as agreed by all the parties, to the extent that Plaintiffs seek to re-open discovery and set a deadline to allow the taking of the depositions of Yolanda Jackson, Willie Woodard, Linda Hodges, and Karen T. Wilson, and the taking of the supplemental or reconvened depositions of Loring, Rosenthal, and Douglas on any topics for which they invoked their Fifth Amendment rights.

With regard to the deposition of Bradney Rogers, Plaintiffs' motion is DENIED.  While the undersigned understands their arguments, as of this date, Judge Doughty's prior ruling on Bradney Rogers remains the law of the case, and Plaintiffs would need to seek relief from him.

With regard to new expert witness identification and report deadline, Federal Rule of Evidence 804(a) provides that

A declarant is considered to be unavailable as a witness if the declarant:

**(1)** is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;

**(2)** refuses to testify about the subject matter despite a court order to do so;

**(3)** testifies to not remembering the subject matter;

**(4)** cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or

**(5)** is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

(A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or

(B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

First, as Defendants argue, Dr. John T. Owings' criminal conviction[9] does not result in his being deemed "unavailable" under Rule 804.  He does not meet any of the exceptions for being "unavailable," and Plaintiffs are not allowed leave to identify a new "expert" to substitute for this treating physician.  While they may choose not to call him, that is a tactical decision to be made by them.  To this extent, Plaintiffs' motion is DENIED.

Second, the undersigned finds that Plaintiffs' other treating physician, Eduardo Gonzalez-Toledo, is, in fact, unavailable when physically located in Argentina without any information as to when or if he will return.  Accordingly, while there is no "substitution" for his testimony as a treating physician, Plaintiffs can seek to substitute another physician for the limited purpose of providing any expert opinions that were offered by Dr. Gonzalez-Toledo.  Moreover, to the extent that Plaintiffs wish to use his testimony as a fact witness, they may attempt to reach agreement with Defendants and, if no agreement is reached, they may subsequently move the Court to allow the deposition testimony to be offered into evidence.  If Plaintiff engages a new expert to replace Dr. Gonzalez-Toledo, Defendants will be allowed to engage one additional

---

[9]As Defendants point out, Dr. Owings disclosed as Plaintiffs' expert **after** he was indicted on charges of theft of government funds and a concealing event affecting the right to Social Security benefits.  *United States v. Owings*, Crim. Action No. 5:18-00120.  He was found guilty of twenty counts of theft of government funds and one count of a concealing event.  Judgment was entered on May 18, 2021.  *Id.*  Although he was sentenced to serve 21 months imprisonment, he was released on November 3, 2022, by the Bureau of Prisons.  *See* https://www.bop.gov/inmateloc/ (Last visited on 09/28/2023).

expert[10] to respond to any testimony raised by the new expert.

Finally, Plaintiffs also seek to add a new expert on the Four-Way.  However, the Fifth Circuit has not identified some new theory of liability or otherwise changed the landscape of the case in this regard.  While the undersigned recognizes the need to update discovery and even to substitute or identify new witnesses, given the long passage of time, Plaintiffs now seek to re-open the expert deadline to address a claim of which they were fully aware.

When determining whether "evidence that was not properly designated" should be admitted, the court should look to, "the following four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman v. MacDonald,* 893 F.2d 787, 791 (5th Cir. 1990).

As Defendants point out, Plaintiffs already have a liability expert, Capt. Kenny Sanders, and were fully aware of their claims prior to the Fifth Circuit's opinion.  When Capt. Sanders first rendered his opinion, the claims about the Four-Way had not yet been made.  However, Defendants point out that there was an 8-month period during which time Capt. Sanders could have amended to address these claims (though he did try to address other claims).[11]  The undersigned does not believe Plaintiffs will suffer prejudice by disallowing a new expert in this area.  Indeed, the factual issues, rather than any expert testimony, are at the heart of the *Monell* claim.  Having applied the four-factor test and finding that at least three of the four factors weigh against allowing the retention of a new expert, Plaintiffs' motion is DENIED in this regard.

---

[10] While the undersigned assumes that Defendants and the City would jointly retain one additional expert, they can request separate experts if necessary to fairly defend the claims against them.

[11] Judge Doughty struck Capt. Sanders' declaration.  [doc. #s 368 & 369].

### III.     CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Motion Regarding Remaining Claims [doc. #415] is DENIED and Motion For Clarification [doc. #416] is GRANTED IN PART AND DENIED IN PART, as set forth in the body of this Memorandum Order.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Set Discovery and Other Deadlines in a Scheduling Order [doc. #400] is also GRANTED IN PART AND DENIED IN PART.  Discovery will be allowed as set forth in the body of this Memorandum Order.  The motion is further GRANTED to the extent that Plaintiff seeks the setting of deadlines in a new scheduling order. Consistent with the findings in this Memorandum Order, a new scheduling order will issue in due course.  If appeal is made to Judge Doughty, the new scheduling order will issue after his ruling on that appeal.  Once either the appeal deadline has passed or Judge Doughty has ruled on any appeal, either a new, abbreviated scheduling order will issue or a scheduling conference will be set.

Monroe, Louisiana, this 29th day of September, 2023.


_____
Kayla Dye McClusky
United States Magistrate Judge