**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**ERIE MOORE, JR., ET AL.** — **CIVIL ACTION NO: 3:16-CV-01007**

**VERSUS** — **JUDGE TERRY A. DOUGHTY**

**LaSALLE CORRECTIONS, INC., ET AL.** — **MAG. JUDGE KAYLA D. MCCLUSKY**

## DEFENDANTS' PRETRIAL MEMORANDUM

NOW INTO COURT, through undersigned counsel, come Defendants, REGINALD CURLEY, JODY FOSTER, GERALD HARDWELL, CHRISTOPHER LORING, WILLIAM MITCHELL, JEREMY RUNNER, REGINALD WILLIAMS, LASALLE MANAGEMENT COMPANY, LLC, RICHWOOD CORRECTIONAL CENTER, LLC, and THE CITY OF MONROE, (hereinafter referred to as "Defendants"), which respectfully submit the following Pretrial Memorandum:

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. ........................ iii-v

1. REMAINING ISSUES OF LAW. ........................ 1-17

   A. Scope of Monell Claim. ........................ 1-6
      1. The only custom at issue is whether "a custom existed to use the Four-Way and chemical spray to punish prisoners.". ........................ 2-4
      2. Plaintiffs cannot expand the second prong beyond Warden Hanson's actual or constructive knowledge or premise their claims on ratification.. ........................ 4-5
      3. Plaintiffs are limited to showing that any use of force in the Four Way or by pepper spray were the moving force behind Moore's injuries. ........................ 5-6

   B. Individual Liability ........................ 6-12
      i. Liability May Not Be Predicated on Dismissed Individuals or Claims. . 7-8
      ii. Determination of Individual Liability is Necessary Here ........................ 8-9

iii. Failure to Disclose Alleged Tortfeasors.............................................. 9-11

iv. The Application of the "Team Doctrine" Is A Fact Issue for the Jury. ......................................................................... 11-12

v. The Plaintiffs' Reliance on the Third Restatement of Torts is Misplaced. ................................................................. 12

C. Qualified Immunity and the Good Faith Defense......................................... 12-13

D. Punitive Damages Against the Company Defendants. ....................................... 13

E. Single Enterprise Theory......................................................................... 13

F. Housley Presumption. ......................................................................... 13-15

G. Bonin Causation.......................................................................... 16-17

2. OUTSTANDING DISCOVERY ISSUES..................................................................... 17

3. OBJECTION TO TRIAL DEPOSITIONS. ..................................................................... 17

CERTIFICATE OF SERVICE. ......................................................................................... 19

## TABLE OF AUTHORITIES

**CASES:**


Benfer v. City of Baytown, Texas,
120 F.4th 1272, 1287 (5th Cir. 2024), *cert. denied,* 145 S. Ct. 1313 (2025). .................... 5

Bonin v. Ferrellgas, Inc.,
2003-3024 (La. 7/2/04), 877 So. 2d 89. ........................................................ 16-17

Connick v. Thompson,
563 U.S. 51, 61 (2011). ........................................................................................ 3

Detraz v. Lee,
2005-1263 (La. 1/17/07), 950 So. 2d 557, 560. .............................................. 14

Gober v. Walgreen Louisiana Co.,
46,730 (La. App. 2 Cir. 11/2/11), 80 So. 3d 9, 14, *writ denied*,
2011-2837 (La. 3/2/12), 84 So. 3d 531. .......................................................... 14

Graham v. Octapharma Plasma, Inc.,
2020 WL 1488747, at *4 (W.D. La. Mar. 24, 2020). ....................................... 14

Housley v. Cerise,
579 So.2d 973, 980 (La. 1991)................................................................... 13-15

Johnson v. Harris Cnty.,
83 F.4th 941, 946–47 (5th Cir. 2023). ............................................................... 1

Littell v. Houston Indep. Sch. Dist.,
894 F.3d 616, 624 (5th Cir. 2018). .................................................................... 3

Meadours v. Ermel,
483 F.3d 417 (5th Cir. 2007). ....................................................................... 9-11

Michalik v. Hermann,
422 F.3d 252, 260 n.7 (5th Cir. 2005). .......................................................... 9-12

Monell v. Department of Social Services, City of New York,
436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). ............................... *passim*

Moore v. LaSalle Corr., Inc.,
No. 3:16-CV-01007, 2020 WL 6382912, at *22–25 (W.D. La. Oct. 30, 2020). ............ 3,5

Moore v. LaSalle Corr., Inc.,
2020 WL 6382913, at *12 (W.D. La. Oct. 30, 2020). .............................................. 14-15

Moore v. LaSalle Mgmt. Co., L.L.C.,
41 F.4th 493, 509–12 (5th Cir. 2022). ................................................................. 1,5

Ogle v. Ohio Civ. Serv. Emps. Ass'n. AFSCME, Loc. 11,
397 F. Supp. 3d 1076 (S.D. Ohio 2019), *aff'd sub nom*. .............................................. 13

Ogle v. Ohio Civ. Serv. Emps. Ass'n, AFSCME Loc. 11, AFL0CIO,
951 F.3d 794 (6th Cir. 2020). ......................................................................... 13

Peterson v. City of Fort Worth, Tex.,
588 F.3d 838, 849 (5th Cir. 2009). ..................................................................... 3

Roberts v. City of Shreveport,
397 F.3d 287, 293 (5th Cir. 2005). ..................................................................... 9

Rogers v. Averitt Express, Inc.,
215 F. Supp. 3d 510, 515 (M.D. La. 2017)............................................................ 15

Salcido as Next Friend of K.L. v. Harris Cnty., Texas,
2018 WL 4690276, at *34 (S.D. Tex. Sept. 28, 2018). ................................................ 8-9

Simpson v. Hines,
903 F.2d 400 (5th Cir. 1990). ......................................................................... 11

Thompson v. GEO Grp., Inc.,
838 F. App'x 36, 37 (5th Cir. 2020).................................................................... 14

Watt v. New Orleans City,
647 F. Supp. 3d 496, 502 (E.D. La. 2022), *aff'd,* No. 23-30050, 2023 WL 6807033
(5th Cir. Oct. 16, 2023)................................................................................... 7

Wyatt v. Cole,
994 F.2d 1113 (5th Cir. 1993). ........................................................................ 13

York v. Welch,
No. 20-40580, 2024 WL 775179, at *6 (5th Cir. Feb. 26, 2024). ..................................... 5

**ARTICLES/RULES/STATUES/OTHER:**

42 U.S.C. §1983.......................................................................................... 3,8,12

La. C.C.P. art. 966(g). .......... 8

Federal Rule of Civil Procedure 26.......... 10

## 1. REMAINING ISSUES OF LAW

### A. Scope of Monell Claim

There appears to be a dispute regarding the scope of Plaintiffs' remaining Monell claim which will be put to the jury. *See* Monell v. Department of Social Services, City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

. The following is a discussion on the Defendants' understanding of the proper scope of that claim based on the pleadings and the Fifth Circuit's controlling opinion.

The Fifth Circuit held that Plaintiffs can prevail under Monell if they establish that 1) "a custom existed to use the Four-Way and chemical spray to punish prisoners," 2) Warden Hanson had actual or constructive knowledge of that custom, and 3) "Moore was beaten in the Four-Way and excessively pepper-sprayed" because of that custom. Moore v. LaSalle Mgmt. Co., L.L.C., 41 F.4th 493, 509–12 (5th Cir. 2022).[1] Plaintiffs, however, seek to expand the Fifth Circuit's ruling beyond recognition, threatening to mire this trial into a hodgepodge of mini trials concerning inapplicable theories and irrelevant evidence.

*First*, Plaintiffs attempt to collapse five separate Monell claims into one, insisting they are mere "elements" of a "custom of using excessive force." These new claims bear little resemblance to the Monell claim endorsed by the Fifth Circuit and are an attempt to smuggle in theories of liability that no court has approved (or have expressly disallowed). *Second*, Plaintiffs seek to leave the door open for them to identify *new* policymakers at trial (other than Warden Hanson), which risks trial by ambush, and attempt to assert a ratification theory that is no longer viable. This Court should police the limits of the Fifth Circuit's ruling and hold that Plaintiffs' only Monell claim is

[1] Liability is only imposed for a "custom" when a plaintiff proves there is "a persistent, widespread practice" that "fairly represents municipal policy." That usually requires showing a pattern of related misconduct. Johnson v. Harris Cnty., 83 F.4th 941, 946–47 (5th Cir. 2023). The Fifth Circuit's ruling surrounded only *that* issue.

the one endorsed by the Fifth Circuit – whether "a custom existed to use the Four-Way and chemical spray to punish prisoners."

**1. The only custom at issue is whether "a custom existed to use the Four-Way and chemical spray to punish prisoners."**

On the first Monell prong, the Fifth Circuit held that Plaintiffs raised a genuine issue of fact concerning whether "a custom existed to use the Four-Way and chemical spray to punish prisoners" based on four discrete pieces of evidence (viewed in the light most favorable to Plaintiffs): 1) Yolanda Jackson swore that guards openly talked about using the Four-Way to "teach prisoners a lesson"; 2) a Warden admitted the Four-Way used to "interrogate" prisoners; 3) defendant Foster confessed that guards went into "pepper spraying mode" against Moore; and 4) some guards were convicted of pepper spraying other inmates in the Four Way. Moore, 41 F. 4th at 509. The Fifth Circuit identified the factual crux of the dispute, and the evidence that, if admissible and the Plaintiffs could prove it, might allow them to prevail.

Plaintiffs, however, attempt to raise *five* separate customs by calling them "elements" of an overarching "custom of using excessive force." Plaintiffs claim that these "elements" include 1) using force to punish detainees; 2) using the Four-Way to punish inmates; 3) inadequate training in defensive tactics; 4) falsifying reports; and 5) failing to investigate or discipline uses of force or finding excessive force was within policy. [Pretrial Order, § E(49)]. The Fifth Circuit, however, *did not* identify a general "custom of using force to punish detainees," point to any uses of forces other than chemical spray or in the Four Way as evidence of the "custom" it *did* identify, or discuss methods of proving other alleged customs of using force on Moore or other prisoners. *See* Moore, 41 F.4th at 509–12. The Magistrate Judge also expressly told Plaintiffs that they *could not* rest any Monell theory on claims related to "altering reports." [Doc. 423, p. 23 at n. 7]. And Plaintiffs also

never asserted a Monell practice or custom related to failing to investigate or discipline uses of force. *See* [Doc. 140, pp. 20-24 (identifying causes of action)]. Plaintiffs cannot now raise these new Monell claims under the guise of using them as "evidence" or "elements" of another claim. Permitting Plaintiffs to expand their articulation of the custom to include other policies or customs is inconsistent with the Fifth Circuit's ruling and relieves them of the having to satisfy their Monell burden for each alleged custom.

On remand, the Magistrate Judge did permit Plaintiffs to "present evidence that the [Monell defendants'] failure to train resulted in a custom or practice of excessive force." [Doc. 423, p. 22]. A failure-to-train claim, however, is a distinct theory of Monell liability based on the theory that the inadequate training itself gives rise to an official policy. *See* Connick v. Thompson, 563 U.S. 51, 61 (2011) (a "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983"); *see also*, Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 849 (5th Cir. 2009) (explaining that "failure to train can amount to a policy"). Failure to train claims generally require a plaintiff to prove "deliberate indifference" through a pattern of unconstitutional acts or under the single-incident exception. *See* Littell v. Houston Indep. Sch. Dist., 894 F.3d 616, 624 (5th Cir. 2018) (describing burdens of proof in failure-to-train claims).[2] Permitting Plaintiffs to introduce "evidence" of failure-to-train as merely a component of some other Monell custom (rather than as its own independent policy) eschews the "deliberate indifference" standard, which is designed to be "stringent" and weed out "tenuous" claims. Connick, 563 U.S. at 61. That risk of confusion is heightened where the *only* alleged custom identified by the Fifth Circuit involved using "the Four-Way and chemical spray to

[2] This Court has already recognized that Plaintiffs' failure-to-train claims were insufficient as a matter of law. *See* Moore v. LaSalle Corr., Inc., No. 3:16-CV-01007, 2020 WL 6382912, at *22–25 (W.D. La. Oct. 30, 2020) (granting summary judgment on failure-to-train claim); Moore, 41 F.4th at 510, fn. 51 (declining to address failure-to-train claim).

punish prisoners," *not* a general custom of using excessive force throughout the prison. Plaintiffs should not be allowed to avoid the rigorous standards of liability for failure-to-train claims under the guise of using training as support for a different "custom of using excessive force." This Court should hold, as a matter of law, that the failure to train theory, as a stand-alone claim, is not viable on this record, and that failure to train is not relevant to the remaining disputes about chemical spray and whether the Four-Way is used to "punish" prisoners.

**2. Plaintiffs cannot expand the second prong beyond Warden Hanson's actual or constructive knowledge or premise their claims on ratification.**

The second Monell prong requires that policymaker have actual or constructive knowledge of the policy or custom. Moore, 41 F.4th at 510. The Fifth Circuit held that there were issues of fact concerning whether Warden Hanson had actual or constructive knowledge of the custom of using the Four Way and chemical spray to punish prisoners. Moore, 41 F.4th at 510–11. The Fifth Circuit inferred actual knowledge based on Warden Hanson's failure to discipline any of the guards for Moore's death. Id. at 410. The Fifth Circuit also found that Warden Hanson may have also had constructive knowledge based on Yolanda Jackson's testimony that there was a "widespread and persistent use of the Four-Way and pepper spray to punish prisoners" which was "subject to prolonged public discussion among prison staff." Id. at 511. Once again, although Fifth Circuit identified the concrete factual disputes that warranted trial, Plaintiffs seek to expand the ruling to include new policymakers and unavailable theories.

Plaintiffs first seek to expand the pool of potential policymakers to any conceivable official that worked for LMC or RCC, including "Warden Hanson, Assistant Warden Aultman, and LMC and RCC executives." Plaintiffs also open-endedly assert that "RCC, LMC, and the City's policymakers, including Warden Hanson" are the relevant policymakers. Plaintiffs cannot rest on

vague assertions and refuse to identify the relevant policymaker at this stage of these proceedings, especially considering their prior representations to this Court and the Fifth Circuit that Warden Hanson was the relevant policymaker. Plaintiffs should not be permitted to rest on these vague assertions, and they should be limited to asserting that Warden Hanson was the policymaker at trial.

Plaintiffs also implicitly argue that the Fifth Circuit's ruling permits them to proceed on a ratification theory of Monell liability, *see* [Pretrial Order, § E(55-56)]. The Fifth Circuit did not endorse a ratification theory in this case, but in any event, there is no evidence that Warden Hanson *approved* of the guards' actions. *See* Benfer v. City of Baytown, Texas, 120 F.4th 1272, 1287 (5th Cir. 2024), *cert. denied,* 145 S. Ct. 1313 (2025) (explaining that ratification requires "the approval of a policy maker, not their mere acquiescence"). And neither this Court nor the Fifth Circuit have found that this case "presents an extreme factual situation . . . such that a theory of ratification applies[.]" *See* York v. Welch, No. 20-40580, 2024 WL 775179, at *6 (5th Cir. Feb. 26, 2024) (whether ratification theory applies "is a question of law"). On the contrary, this Court expressly rejected the notation that Warden Hanson ratified or acquiesced in the misconduct, Moore, 2020 WL 6382912, at *20, and the Fifth Circuit never mentioned ratification as a separate basis for Monell liability. This Court should reiterate that no ratification theory of Monell liability exists in this case and that any evidence related to the failure to discipline is relevant only to whether Warden Hanson had actual knowledge that Moore force might have been used on Moore in the Four-Way.

### 3. Plaintiffs are limited to showing that any use of force in the Four Way or by pepper spray were the moving force behind Moore's injuries.

On the third element, the Fifth Circuit again reiterated the narrowness of the purported custom it identified, holding only that "there's a fact dispute over whether Moore was beaten in the Four-Way and excessively pepper-sprayed." Moore, 41 F.4th 493, 511–12. To hold the City and

Company Defendants liable, Plaintiffs must prove that "the moving force of the deprivation that Moore endured was the policy or custom of using the Four-Way and pepper spray to punish prisoners." Id. at 511. Plaintiffs seek to expand their Monell claim to include *all* force used on Moore as part of some broader, ill-defined "custom of using excessive force against detainees at the Richwood Correctional Center." That expansion of the Monell claim – to include all uses of force, rather than chemical spray and within the Four-Way – is unsupported by the Fifth Circuit's holding or any rulings in this Court. This Court should reaffirm that the Monell claim is limited to precisely what the Fifth Circuit found: whether "a custom existed to use the Four-Way and chemical spray to punish prisoners." Moore, 41 F.4th at 509–12.

### B. Individual Liability

The parties do not appear to agree on the importance of proof of individual liability to their various claims. The Plaintiffs' Contested Issues of Law set forth in the Pretrial Order suggest that Monell liability may be predicated on the allegedly unconstitutional actions of individuals who have been dismissed herein, including Warden Hanson, or who have not been named as Defendants. They further contend that it is not necessary to determine which individual violated Moore's rights for Monell liability to apply, as long as some individual violated his rights. They similarly contend that state law vicarious liability may attach to the Company Defendants[3] based on the actions of employees who have not been found individually liable or who have not been named Defendants (as long as those individuals have not been previously dismissed). They also contend that vicarious liability under state law does not require a determination of which employee caused Moore's death, as long as one employee is found to have caused Moore's death. They finally contend that if they can show that only a single employee (not even a named party, but any employee of a Company

[3] There are no state-law claims against the City.

Defendant) engaged in tortious conduct that exposed Moore to harm, they need not show causation, but rather the burden shifts to each such individual to prove that they *did not* cause the death.

The Defendants aver that (1) no liability for the Company Defendants or City, under either federal or state law, may be predicated on the actions of dismissed individuals, (2) individualized proof is required, at the very least, because no Monell or vicarious liability may be predicated on the actions of dismissed individuals, (3) to the extent the Plaintiffs envision predicating Monell or vicarious liability on an unnamed third party, they should not be allowed to do so if the identity of said third party has not been disclosed previously, (4) the team doctrine is a jury question, and (5) no burden shifting occurs. These arguments will be discussed in turn.

**i. Liability May Not Be Predicated on Dismissed Individuals or Claims**

Plaintiffs have correctly determined that vicarious liability may not be predicated on the allegedly tortious actions of dismissed individuals but have forgone a similar concession on the Monell claim. In its ruling on the Defendants' Motion for Partial Summary Judgment, the Court noted that, "It is not that the *policymaker* must have violated Moore's constitutional rights, but rather that *someone* acting pursuant to the policy violated Moore's constitutional rights." [Doc. 478 (emphasis in original)]. To prevail on the Monell claim, Plaintiffs must show that someone, acting pursuant to official policy or custom, violated Moore's constitutional rights. Based on prior rulings in this case (or the lack of appeal on certain issues and individuals), several individuals have been found to have *not violated Moore's constitutional rights*. Every dismissed party here was dismissed with prejudice and on the merits. Those dismissals are legal findings that *those individuals' actions cannot be predicates for Monell liability, because those individuals did not violate any constitutional rights. See* Watt v. New Orleans City, 647 F. Supp. 3d 496, 502 (E.D. La. 2022), *aff'd,* No. 23-30050, 2023 WL 6807033 (5th Cir. Oct. 16, 2023) ("in the absence of any underlying

constitutional violation, there can be no municipal liability under *Monell*") (citing cases). Louisiana law also explicitly forbids consideration of dismissed parties, which is perhaps why the Plaintiffs were willing to concede as much on the vicarious liability claims. *See* La. C.C.P. art. 966(g). The Defendants have already proven that the dismissed individuals did not violate Moore's constitutional rights, and allowing the Plaintiffs to use alleged violations of Moore's rights by those parties to establish Monell liability is inconsistent with those rulings. Similarly, allowing the Plaintiffs to use *actions which were the basis for dismissed claims* to serve as predicate violations should not be permitted. Just like the dismissed individuals, the dismissed claims were premised on the notion that no constitutional violation or negligence occurred. Under either scenario, Plaintiffs are trying a classic second bite at the apple and should prevented from doing so.

**ii. Determination of Individual Liability is Necessary Here**

Plaintiffs contend that they do not need to show which individual violated Moore's constitutional rights or acted negligently for Monell or vicarious liability to apply. This is incorrect because, as just addressed, there are certain individuals whose actions *cannot form the predicate* for either Monell or vicarious liability. Thus, to prove their Monell and vicarious liability claims, Plaintiffs must at the very least prove that *some other individuals' actions* either violated Moore's constitutional rights or negligently caused his death.

As detailed above, the Monell claim has a defined scope and actions outside of that scope also cannot form the predicate for Monell liability. Further, as will be detailed completely below, the "team doctrine" as espoused by the Plaintiffs does not concern liability, which the Fifth Circuit has continuously maintained must be determined individually in 42 U.S.C. §1983 matters, but instead concerns imputation of causation (which was the issue the Fifth Circuit ruled upon when discussing the "team doctrine") and the application of qualified immunity. See Salcido as Next

Friend of K.L. v. Harris Cnty., Texas, 2018 WL 4690276, at *34 (S.D. Tex. Sept. 28, 2018) ("The court is mindful that personal liability for constitutional torts is based solely on individual conduct and requires separate consideration of defendants' individual actions.") (internal citations omitted). Whatever considerations may be made when determining which individual Defendants potentially caused an injury (such as through application of the team doctrine, as the Plaintiffs suggest), it is black letter law that liability for civil rights actions may not be imputed between individual Defendants. *See* Id.; Meadours v. Ermel, 483 F.3d 417 (5th Cir. 2007), Michalik v. Hermann, 422 F.3d 252, 260 n.7 (5th Cir. 2005) ("The district court correctly noted 'that the foundation upon which personal civil liability for constitutional torts and the doctrine of qualified immunity are based is individual conduct not imputed acts.'"). Accordingly, Plaintiffs will be required to show individual liability to recover against the individual Defendants, regardless of the Monell and vicarious liability claims.

**iii. Failure to Disclose Alleged Tortfeasors**

To the extent that Plaintiffs argue that they may base their Monell and vicarious liability claims on unnamed individuals who have not been named here as Defendants or at all, that argument should be rejected for two reasons: it deprives the defendants of the opportunity to defend against certain claims, and it runs afoul of the parties discovery obligations.

First, allowing unnamed individuals' conduct to be attributable to the Company Defendants or City under Monell deprives them of the ability to defend against the claims. Take Plaintiffs' failure-to-train claim, which (as noted previously) requires Plaintiffs to show that an officer was inadequately trained. The Company Defendants and City cannot properly defend against an assertion that an unnamed officer was untrained or improperly trained, which is a routine defense to such claims. Roberts v. City of Shreveport, 397 F.3d 287, 293 (5th Cir. 2005) (dismissing failure-to-train

claim where officer was extensively trained). And take Plaintiffs claims that Moore was beaten in the Four-Way. If Plaintiffs are permitted to argue that unnamed officers beat Moore in the Four-Way, the defendants are now defending against three levels of speculation for that claim: 1) the policy supposedly existed because Yolanda Jackson heard a custom existed; 2) Moore must have been beaten because Willie Woodard purportedly smelled chemical spray in the Four-Way and Foster purportedly confessed; 3) and *now*, unnamed and unidentified officers must have gone into the Four-Way and beat Moore. That pure conjecture is not evidence, invites the jury to speculate based on fantasy, and would only permit the defense to rebut it by simply continuing to deny that anything occurred (without getting to cross-examine or call any of these unidentified perpetrators). That is impermissible and should not be allowed.

Second, relying on unnamed and unidentified employees runs afoul of the parties' discovery obligations. Throughout this litigation, all parties have had continuing obligations under Rule 26 to disclose the identities of all individuals believed to have discoverable information. The Defendants cannot fathom an individual whose actions might be the basis for Monell or vicarious liability, but who would possess no discoverable information. Nor can the Defendants imagine an individual whose actions might be the basis for Monell or vicarious liability, but whose identity would not have been responsive to any of the discovery propounded on the Plaintiffs at any point. Because the Plaintiffs have not disclosed the identities of any potential such individuals even now, the Defendants are unable to make specific arguments on any given individual and reserve the right to do so if the Plaintiffs maintain their legal position and do eventually disclose. It is sufficient for now to state that Defendants strenuously object to the suggestion that any individual who has never been disclosed pursuant to Federal Rule of Civil Procedure 26 or through written discovery responses may be argued to form the basis for Monell or vicarious liability. Such disclosure, in violation of

discovery rules and at this late stage, would be extremely prejudicial to the Defendants' ability to defend the Plaintiffs' claims.

### iv. The Application of the "Team Doctrine" Is A Fact Issue for the Jury

Plaintiffs contend that "the team concept doctrine applies to make the officers as a group liable for injuries caused to Erie Moore, Sr." This argument appears to be based on a misunderstanding of the Fifth Circuit's ruling. Moore, 41 F.4th at 505 (citing Simpson v. Hines, 903 F.2d 400 (5th Cir. 1990) for the proposition that the "functioned as unit" argument may apply in a *causation* analysis – not liability). First, it is black letter law that liability for civil rights actions may not be imputed between individual defendants. Meadours v. Ermel, 483 F.3d 417 (5th Cir. 2007); Michalik v. Hermann, 422 F.3d 252, 260 n.7 (5th Cir. 2005) ("The district court correctly noted 'that the foundation upon which personal civil liability for constitutional torts and the doctrine of qualified immunity are based is individual conduct not imputed acts.'"). If the Fifth Circuit intended the team doctrine to impute liability, it could have found as much in either Meadours or Michalik, as both were decided more than a decade after Simpson, yet discussion of the doctrine is entirely absent from either. Second, the Fifth Circuit, in its applicable ruling in this matter, did not find that (1) the team doctrine applied, or that (2) if it did, liability need only be proven against one member of the "team" in order to impose civil rights liability against all members. Instead, it found that under the facts of record, that "a reasonable jury could find on this record that the Individual Defendants (save for Mitchell) all had the same 'identity' of 'purpose' and 'action' in dragging Moore from his cell to the Four-Way to finish him." The Fifth Circuit's ruling allows the jury to hear the facts and potentially, if it believes the facts it finds fit into the parameters of the "team doctrine," find that individual Defendants acted as a team. Nothing about that conclusion precludes the requirement that the jury find each individual Defendants liable (that is, that each individual

Defendants used excessive force and/or was deliberately indifferent to Moore's medical needs). The law requiring individual determinations for 42 U.S.C. §1983 claims remains in effect and the jury will still have to determine whether each individual Defendant violated Moore's constitutional rights.

**v. The Plaintiffs' Reliance on the Third Restatement of Torts is Misplaced**

The Plaintiffs contend that under the Third Restatement of Torts, they need only show that an individual tortiously exposed Moore to a risk of harm in order to shift the burden of disputing causation of his death to that individual. Such general tort principles are not controlling here and this contention merely restates the "team doctrine" discussed above. Defendants once again highlight that no party may be found vicariously liability for the federal claims. Again, "the foundation upon which personal civil liability for constitutional torts . . .is individual conduct not imputed acts" and the general tort principle which suggests that the burden of causation may be shifted is anathema to that foundation. Michalik v. Hermann, 422 F.3d 252, 260 n.7 (5th Cir. 2005). Further, Defendants note that the Fifth Circuit did not endorse this new theory of causation in their opinion but rather found a fact issue on the "team doctrine" for the survivorship claims and a fact issue on "substantial factor" causation under Louisiana law on the wrongful death claims. These are distinct causation theories from those found in the Restatement and accordingly, Plaintiffs may not move forward with this new causation theory.

**C. Qualified Immunity and the Good Faith Defense**

Defendants acknowledge that qualified immunity is not available here. However, they maintain that they are entitled to argue their good faith to the jury as a defense. While the good faith defense is similar to the doctrine of qualified immunity, such immunity is not available to private actors. The good faith defense is rooted in equality and fairness and where qualified immunity

would typically protect a state actor, equality and fairness demand some protection be afforded to private actors. Under the good faith defense liability may not attach to a private actor who reasonably relied upon statues or standing case law to guide their actions. *See* Wyatt v. Cole, 994 F.2d 1113 (5th Cir. 1993). *See also,* Ogle v. Ohio Civ. Serv. Emps. Ass'n. AFSCME, Loc. 11, 397 F. Supp. 3d 1076 (S.D. Ohio 2019), *aff'd sub nom*. Ogle v. Ohio Civ. Serv. Emps. Ass'n, AFSCME Loc. 11, AFL0CIO, 951 F.3d 794 (6th Cir. 2020). Accordingly, the individual Defendants aver that they may argue to the jury that they reasonably relied upon what they believed to be applicable statutes, standards, or case law in their interactions with the decedent, entitling them to an application of the good faith defense and a finding of no liability against them.

**D. Punitive Damages Against the Company Defendants**

Defendants acknowledge that the Fifth Circuit has held that punitive damages are available in this matter against the Company Defendants. However, out of an abundance of caution, so as not to waive any potential future appeal of that issue, the Company Defendants maintain that no such damages are available against them for the reasons previously set forth.

**E. Single Enterprise Theory**

The Plaintiffs now argue that LMC and RCC are a single, integrated enterprise and the joint employers of all individual Defendants and officers at Richwood Correctional Center. This argument was not pleaded as a review of the operable Complaint (the Third Amended Complaint) shows. [Doc. 140]. Arguing it now is an impermissible expansion of the pleading and should not be allowed.

**F. Housley Presumption**

Plaintiffs argue that the jury should be instructed on the Housley presumption, which allows a jury to presume that an accident caused an injury if the "plaintiff was in good health, but shortly

after the accident, the disabling condition manifested itself." Detraz v. Lee, 2005-1263 (La. 1/17/07), 950 So. 2d 557, 560. To obtain the benefit of the presumption, a plaintiff must show that "(1) he was in good health prior to the accident; (2) commencing with the accident, the symptoms of the disabling condition appeared and continuously manifested themselves afterwards; and (3) there is a reasonable probability of a causal connection between the accident and the disabling condition. Thompson v. GEO Grp., Inc., 838 F. App'x 36, 37 (5th Cir. 2020) (citing Housley v. Cerise, 579 So.2d 973, 980 (La. 1991)). If the plaintiff cannot show he was in good health prior to the accident, the presumption does not apply. Graham v. Octapharma Plasma, Inc., 2020 WL 1488747, at *4 (W.D. La. Mar. 24, 2020) And when there is "conflicting evidence regarding causation" of injury, a Housley instruction is inappropriate. Gober v. Walgreen Louisiana Co., 46,730 (La. App. 2 Cir. 11/2/11), 80 So. 3d 9, 14, *writ denied*, 2011-2837 (La. 3/2/12), 84 So. 3d 531. A Housley instruction is not warranted in this case.

First, Plaintiffs cannot show that Moore was in "good health" prior to the incident or that the symptoms manifested themselves only after some encounter with a correctional officer. The medical evidence shows that Moore's hematoma could have begun forming up to forty-eight hours prior to his death. See Moore v. LaSalle Corr., Inc., 2020 WL 6382913, at *12 (W.D. La. Oct. 30, 2020) ("Taken as a whole, the medical evidence allows for a 48-hour window for a potential injury to have occurred prior to Moore's arrival at E.A. Conway). The evidence plainly shows that Moore was acting abnormally and erratically prior to and during his time at RCC, before he encountered any guards. See Id. at *12; [Doc. 140, ¶¶ 7, 8, 10]. While Moore was housed in the cell with White, he instigated an altercation with White, disappeared off camera, and then after returning, passed out or fell asleep on the floor of the cell, and then later defecated on the floor prior to the guards entering. All this shows that, consistent with the medical evidence, Moore may have been suffering

from trauma (and its attendant symptoms) that occurred prior to his first physical interaction with correctional officers. The evidence does not conclusively show that Moore "was in good health" prior to his interaction with correctional officers.

Second, there is ample conflicting evidence of causation. As this Court recognized when considering the evidence on medical causation, the evidence in this case lends itself to many possible causes of Moore's injuries. The injury could have been "inflicted during [a] physical altercation between Moore and White[.]" Moore, 2020 WL 6382913, at *12. Plaintiffs themselves raised the prospect that "OPSO officers later allegedly dropped Moore while moving him to their patrol car." Id. at *13; [Doc. 304]. And there is nothing ruling out an injury occurring prior to Moore arriving at RCC from some other, unknown source. Plaintiffs cannot overcome the "conflicting evidence of causation" sufficient to invoke the Housley presumption.

Third, and finally, the Housley presumption is not applicable to Plaintiffs' federal claims; it is a state-law evidentiary presumption. Rogers v. Averitt Express, Inc., 215 F. Supp. 3d 510, 515 (M.D. La. 2017) (explaining that "federal law governs the use of evidentiary presumptions"). There is no presumption of causation under federal law, and it would be highly prejudicial to inform the jury of a state-law evidentiary presumption – which has a questionable, at best, application to this case – when they are deliberating claims that do not bear that same presumption. The jury likely would be inclined to apply the presumption to all claims, when it is not applicable to any federal cause of action.

This Court should not issue a Housley instruction. Plaintiffs have not (and cannot) meet the elements to receive a Housley instruction, and even if they could, the risk of prejudice to the Defendants on the remaining claims is far too high. Plaintiffs request should be denied.

### G. Bonin Causation

Plaintiffs further contend that the Fifth Circuit's ruling allows them to show causation for the wrongful death claims by merely showing that an act "could have caused" the death. This is an oversimplification of the Fifth Circuit's opinion. As noted above, the Fifth Circuit found that causation for the wrongful death claim may be shown through a "substantial factor" analysis as set forth in the case of Bonin v. Ferrellgas, Inc., 2003-3024 (La. 7/2/04), 877 So. 2d 89. In that case the Louisiana Supreme Court did not hold that causation may be shown by merely proving that an act "could have caused" a harm. Instead, in situations with concurrent causes, liability may only attach if the factfinder determines that an individual action is a substantial factor in bringing about the harm. Specifically, the Louisiana Supreme Court stated:

> Cause-in-fact is generally a "but for" inquiry, which tests whether the accident would or would not have occurred but for the defendant's substandard conduct. Id. However, where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident. In this case, more than one party's conduct allegedly caused the fire, i.e., Ferrellgas, Empiregas, and Lanclos. In considering the substantial factor test, this Court has stated that cause-in-fact clearly exists when the plaintiff's harm would not have occurred absent the specific defendant's conduct. Perkins, supra at 612 (citing Graves v. Page, 96–2201 (La.11/7/97), 703 So. 566, 570). This Court has considered "whether each of the multiple causes played so important a role in producing the result that responsibility should be imposed upon each item of conduct, even if it cannot be said definitively that the harm would not have occurred 'but for' each individual cause." Perkins, supra at 612 (citing Graves, supra ). Also considered is "whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm." Id. (Quoting LeJeune v. Allstate Ins. Co., 365 So.2d 471, 475 (La.1978)). Whether the defendant's conduct was a substantial factor in bringing about the harm, and thus, a cause-in-fact of the injuries, is a factual question to be determined by the fact finder. Perkins, supra at 612; Theriot v. Lasseigne, 93–2661 (La.7/5/94), 640 So.2d 1305, 1310.
> Id. at 94.

The Fifth Circuit did not purport to change or alter the Louisiana Supreme Court's interpretation of Louisiana law, nor did the panel suggest that it intended to make substantial factor causation

substantially easier to prove. As such, the Plaintiffs are incorrect when they state that they must merely show that an act "could have caused" Moore's death. They still must prove that each alleged violative action was a "substantial factor" in that death.

That matters in this case. The City, for example, can only be liable if an unconstitutional act caused Moore's injuries. If the jury determines that the only "substantial factor" in Moore's death was Runner's drop under a negligence theory, then the City cannot be held liable under that theory. Or if the jury only determines that Runner's purported head strike or the drop were the only "substantial factors' in Moore's death, then that matters to the numerous other defendants who were not party to those acts. The Plaintiffs cannot rest on a "could have caused" theory when they seek to hold numerous Defendants liability for different acts, at different times, under different laws.

## 2. OUTSTANDING DISCOVERY ISSUES

Defendants identified their outstanding discovery issues in their pending discovery motions and in their Objections to Plaintiffs' Exhibits, which will be submitted with the Pretrial Order. Further, though not necessarily a discovery issue, the Defendants have objected, in the Pretrial Order, to the Plaintiffs suggestion that they may attempt to introduce discovery deposition testimony or testimony over Zoom, in lieu of live testimony from certain witnesses. Defendants once again state their strenuous objection to the presentation of any testimony other than through previously agreed upon and taken video trial depositions (none have been taken) or live testimony.

Finally, Defendants object to the testimony of Kayla Blossom, Earl Kerry, Allen Lee, David Parker, and Demario Shaffer. These witnesses were identified untimely and should not be allowed to testify at the trial of this matter.

## 3. OBJECTION TO TRIAL DEPOSITIONS

Defendants aver that no trial depositions have been taken in this matter.

**Respectfully submitted:**

| | |
|---|---|
| PROVOSTY, SADLER & deLAUNAY, APC.<br><br>By: /s/ H. Bradford Calvit<br>H. BRADFORD CALVIT (#18158)<br>bcalvit@provosty.com<br>JOHN D. RYLAND (#20355)<br>jryland@provosty.com<br>ELI J. MEAUX (#33981)<br>emeaux@provosty.com<br>4615 Parliament Drive, Suite 200 (71303)<br>P.O. Box 13530<br>Alexandria, LA 71315-3530<br>P: 318/767-3133 F: 318/767-9588<br>ATTORNEYS FOR DEFENDANTS, REGINALD CURLEY, JODY FOSTER, GERALD HARDWELL, WILLIAM MITCHELL, JEREMY RUNNER, REGINALD WILLIAMS, LASALLE MANAGEMENT COMPANY, LLC, RICHWOOD CORRECTIONAL CENTER, LLC | By: /s/ Lavalle Bernard Salomon<br>Lavalle Bernard Salomon (#8599)<br>P O Box 14596<br>Monroe, LA 71207<br>318-387-1222 Fax: 318-387-1273<br>Email: val@valsalomon.com<br>ATTORNEYS FOR DEFENDANT, CHRISTOPHER LORING |
| By: /s/ Brandon W. Creekbaum<br>Brandon Wade Creekbaum (#33791)<br>City of Monroe<br>P O Box 123<br>Monroe, LA 71210-0123<br>318-329-2240<br>Fax: 318-329-3427<br>Email: brandon.creekbaum@ci.monroe.la.us<br>ATTORNEYS FOR DEFENDANT, CITY OF MONROE | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of June, 2025, I electronically filed the foregoing DEFENDANTS' PRETRIAL MEMORANDUM with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to the following:

Nelson Welch Cameron
675 Jordan St
Shreveport, LA 71101
318-226-0111 Fax: 318-226-0760
Email: eganspk@gmail.com

Max A Schoening
Qureshi Law
700 Flower St Ste 1000
Los Angeles, CA 90017
213-645-4743 Fax: 213-277-8989
Email: max@qureshi.law
*PRO HAC VICE*

Omar G Qureshi
Qureshi Law
700 Flower St Ste 1000
Los Angeles, CA 90017
213-786-3478 Fax: 213-277-8989
Email: omar@qureshi.law
*PRO HAC VICE*

*ATTORNEYS FOR PLAINTIFFS*

Deirdre C McGlinchey
McGlinchey Stafford (NO)
601 Poydras Ste 1200
New Orleans, LA 70130
504-596-2733 Fax: 504-596-0336
Email: dmcglinchey@mcglinchey.com

Gillian Miculek McCarroll
McGlinchey Stafford (NO)
601 Poydras Ste 1200
New Orleans, LA 70130
504-596-2768
Email: gmiculek@mcglinchey.com

Robert Kenton Denny
McGlinchey Stafford (NO)
601 Poydras Ste 1200
New Orleans, LA 70130
504-596-2757 Fax: 504-910-8834
Email: rdenny@mcglinchey.com
*ATTORNEYS FOR DEFENDANTS, LASALLE ET AL*

Brandon Wade Creekbaum
City of Monroe
P O Box 123
Monroe, LA 71210-0123
318-329-2240 Fax: 318-329-3427
Email: brandon.creekbaum@ci.monroe.la.us
*ATTORNEYS FOR DEFENDANT, CITY OF MONROE*

Lavalle Bernard Salomon
P O Box 14596
Monroe, LA 71207
318-387-1222 Fax: 318-387-1273
Email: val@valsalomon.com
*ATTORNEYS FOR DEFENDANT, CHRISTOPHER LORING*

I further certify that I have forwarded the foregoing document via facsimile and/or first-class mail to the following non-CM/ECF participants: NONE

/s/ H. Bradford Calvit
OF COUNSEL