UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

ERIE MOORE, JR., ET AL.                    CIVIL ACTION NO: 3:16-CV-01007

VERSUS                                      JUDGE TERRY A. DOUGHTY

LaSALLE CORRECTIONS, INC.,                 MAG. JUDGE KAYLA MCCLUSKY
ET AL.

## PRE-TRIAL ORDER

### A.

### Nature of Action

This lawsuit alleges that Defendants subjected decedent Erie Moore, Sr. to excessive force, negligence, and deliberately indifferent medical attention at the Richwood Correctional Center on October 13, 2015, which resulted in Moore Sr.'s pain, suffering, and death. Plaintiffs are the children of Mr. Moore, seeking survival and wrongful death damages for claims of excessive force and deliberate indifference to serious medical needs under 42 U.S.C. § 1983, as well as battery and negligence claims under Louisiana law. Plaintiffs seek compensatory and punitive damages (as against all Defendants, except for the City of Monroe) for the state and federal claims and reasonable attorney fees for the federal claims.

### B.

### Parties and Their Legal Relationships

1.  Plaintiffs are the children of the deceased Erie Moore, Sr.: Erie Moore, Jr., Tamara Green

1

and Tiffany Robinson.

2.    Defendants Gerald Hardwell, Jeremy Runner, Reginald Curley, Reginald Williams, William Mitchell, Jody Foster, and Christopher Loring are current or former correctional officers employed by both Defendants Richwood Correctional Center, L.L.C. ("RCC") and LaSalle Management Company, L.L.C ("LMC"). Defendants LMC and RCC are private corporations domiciled in the State of Louisiana.

3.    Defendant City of Monroe is a municipality and political subdivision of the State of Louisiana.

4.    Plaintiffs' specific claims against each defendant are as follows:

A.    For a custom of using excessive force under 42 U.S.C. § 1983 and the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against LMC, RCC, and the City of Monroe.

B.    For excessive force under § 1983 against Runner, Hardwell, Curley, Williams, Loring, and Foster.

C.    For deliberate medical indifference under § 1983 against Runner, Hardwell, Curley, Williams, Mitchell, Loring, and Foster.

D.    For conspiracy under § 1985 against Loring and Foster.

E.    For bystander liability under § 1983 against Loring and Foster.

F.    For negligence under Louisiana state law against Runner, Hardwell, Curley, Williams, Foster, Loring, Mitchell, LMC, and RCC.

2

G.   For battery under Louisiana state law against Runner, Hardwell, Curley, Williams, Foster, Loring, LMC, and RCC.

H.   Plaintiffs seek compensatory wrongful death and survival damages against all Defendants, as well as punitive damages against all Defendants except for the City. Plaintiffs also seek reasonable attorney's fees for the federal claims.

## C.

### Statement of Jurisdiction

The jurisdiction of this Court is based upon its federal question jurisdiction. 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367.

## D.

### Stipulated Facts

The following facts are stipulated by the parties and require no proof:

1.   Erie Moore, Sr. is the biological father of Erie Moore, Jr., Tamara Green, and Tiffany Robinson.

2.   Moore, Sr. was 57 years of age on October 12, 2015.

3.   On October 12, 2015, Monroe Police Department Officer Tommy Crowson arrested Moore, Sr., for the misdemeanor offense of disturbing the peace in violation of Monroe City Code § 12-153.

4.   Officer Crowson transported Moore Sr. to Richwood Correctional Center, in Richwood,

Louisiana, for booking.

5.  Moore Sr. arrived for booking at Richwood Correctional Center on October 12, 2015, at 7:45 a.m.

6.  Defendant Hardwell placed Moore Sr. in Lock Down Cell No. 7 ("LD#7").

7.  Vernon White was booked into the Richwood Correctional Center on October 10, 2015.

8.  White was initially housed at the Richwood Holding Cell at Richwood Correctional Center.

9.  On October 12, 2015, guards placed White into LD#7 with Moore Sr.

10. At 6:08 p.m. on October 13, 2015, Defendants Hardwell, Runner, Williams, and Loring extracted White from LD#7 to Hallway B.

11. At 7:06 p.m. on October 13, 2015, Defendants Hardwell, Runner, Williams, and Curley extracted Moore Sr. from LD#7 to Hallway B.

12. At 7:07 p.m., Defendants Williams and Runner used their hands to carry Moore Sr. by his arms and legs from the area of Hallway B outside of LD#7 to the Four Way.

13. There were no surveillance cameras or audio recording devices in the Four Way on October 13, 2015.

14. No Defendants or any staff at Richwood Correctional Center ever called for emergency medical services for Moore Sr. while he was at Richwood Correctional Center.

15. Moore Sr. was driven to the Ouachita Correctional Center, where he arrived at 9:27p.m.

16. Ouachita Parish Sherriff's Office Emergency Medical Technician Webb J. Crecink, IV examined Moore Sr. at the Ouachita Correctional Center.

4

17. EMT Crecink instructed Deputies Murphy and Wells to transport Moore Sr. to LSU University Health – Monroe ("UH – Monroe").

18. Deputies Wells and Murphy arrived with Moore at UH – Monroe at 9:35 p.m.

19. At UH– Monroe, Moore Sr. received a CT scan that showed a subdural hematoma.

20. On October 14, 2015 at 12:31 a.m., Moore Sr. was transported by helicopter ambulance to LSU University Health – Shreveport ("UH- Shreveport").

21. Moore Sr. remained at UH – Shreveport until he passed away on November 14, 2015.

22. No Defendant or staff member at Richwood Correctional Center observed, as it was occurring, any physical altercation between Moore Sr. and White on October 13, 2015.

23. Ray Hanson was the Warden at Richwood Correctional Center from January 1, 2014 until at least 2021, including on October 13, 2015.

## E.

### Contested Issues of Fact

1.  Defendants Curley, Williams, Runner, Hardwell, Mitchell, Loring, and Foster as well as Warden Ray Hanson, Assistant Warden Archie Aultman, Roderick Douglas, and Duan Rosenthal, and all other personnel working at Richwood Correctional Center, acted under color of state law at all relevant times.  Defendants contend that the actions actually taken by the individual Defendants named here, rather than those alleged by the Plaintiffs, were taken under color of state law.

2.  Defendants Curley, Williams, Runner, Hardwell, Mitchell, Loring, and Foster, as well as

5

Warden Ray Hanson, Assistant Warden Archie Aultman, Roderick Douglas, and Duan Rosenthal, and all other personnel working at Richwood Correctional Center on October 13, 2015, were employees of both LMC and RCC on that date.   Defendants contend that the individual Defendants named here were payroll employees of Richwood Correctional Center, LLC.

3.   Defendant City of Monroe had policymaking authority over the treatment of detainees at Richwood Correctional Center. The City of Monroe delegated this final policymaking authority to RCC and LMC. LMC and RCC then delegated the final policymaking authority to the Warden at Richwood Correctional Center. Warden Hanson was thus a policymaker for Defendants City, RCC, and LMC. Defendants (the City) contends that it did not have any policymaking authority over Richwood Correctional Center; the City entered into an agreement for the housing of detainees and inmates and the contract between the parties governed the legal relationship.

4. Plaintiffs contend that Moore Sr. should have been seen by a mental health care provider at Richwood Correctional Center prior to the uses of force against him by staff starting at 6:08p.m. on October 13. Defendants contend that this statement is irrelevant as Plaintiffs made and maintain no claim related to this issue. Defendants further contend that Moore disrupted the booking process through his actions and prevented the completion of the booking process, including preventing any medical assessments.

5.   Plaintiffs contend that at 6:08pm, on October 13, Defendant Runner used excessive force when he struck Moore Sr. in the head with a closed fist. Defendants contend that Runner did not strike Moore with a closed fist, or in the head, and that the use of force was justified under the

totality of the circumstances.

6.   Plaintiffs contend that at 6:08 p.m., on October 13, Defendant Loring used excessive force when he used chemical spray on Moore Sr. Defendants contend that Loring's use of chemical spray was not excessive.

7.   Plaintiffs contend that up until officers went to extract Moore Sr. from the LD#7 around 7:06pm, he had been conscious, standing, walking, and talking. Defendants contend that Moore was acting erratically, aggressive, and combative prior to 7:06 p.m. and during his interactions with others at RCC.

8.   Plaintiffs contend that at about 7:06pm, when Defendants Hardwell and Williams began to extract Moore Sr. from LD#7, they should have handcuffed him inside the cell. Defendants contend that Hardwell and Williams reasonably extracted Moore from the cell and that it is speculative to consider the outcome if handcuffing were attempted inside the cell.

9.   Plaintiffs contend that it is against established training to handcuff a detainee outside of the cell when there was a fair and safe opportunity to do so inside the cell. Defendants contend that: Hardwell and Williams reasonably extracted Moore from the cell; it was not contrary to any establishing training; Hardwell and Williams did not have a fair and safe opportunity to handcuff Moore inside the cell and that it is speculative to consider the outcome if handcuffing were attempted inside the cell.

10. Plaintiffs contend that Defendant Hardwell used deadly excessive force against Moore Sr. when he bear hugged him from behind, lifted him in the air, and then body slammed him head first

7

onto the hard floor of Hallway B, hitting the right side of Moore Sr.'s head against the floor and injuring it. Defendants contend that Moore was never "body slammed," but rather extracted from his cell while actively resisting. Defendants further contend that Hardwell's use of force was reasonable under the totality of the circumstances and dispute that Moore's head struck the floor during any use of force.

11. Plaintiffs contend that Defendants Runner, Williams, and Curley assisted Hardwell when he carried out this deadly excessive force. Defendants contend that Runner, Williams, and Curley did not "assist" in the use of force and that any force used was reasonable and necessary under the totality of the circumstances.

12. Plaintiffs contend that Moore Sr. never made aggressive moves toward correctional officers. Defendants contend that Moore acted aggressively and threatened the correctional officers and that the correctional officers believed at various points in time that Moore had murdered his cellmate.

13. Plaintiffs contend that at no point after 6:00 p.m. on October 13 did Moore Sr. make aggressive moves towards or resist staff at Richwood Correctional Center.  Defendants contend that Moore acted aggressively and threatened the correctional officers throughout his incarceration and that the correctional officers believed at various points in time that Moore had murdered his fellow inmate.

14. Plaintiffs contend that Moore Sr. lost consciousness after the body slam by Hardwell. Defendants contend that Moore was never "body slammed"; he was extracted from his cell while

actively resisting. Defendants further contend that Plaintiffs' speculation about Moore's consciousness is unsupported by any evidence.

15. Plaintiffs contend that after the body slam by Defendant Hardwell, Moore Sr. never stood or walked again in his life. Defendants contend that Moore was never "body slammed"; he was extracted from his cell while actively resisting. Defendants further contend that Plaintiffs' speculation about Moore's physical abilities is unsupported by any evidence.

16. Plaintiffs contend that Defendants Runner and Williams negligently carried Moore Sr. from Hallway B to the Four Way, instead of using other safer means of transport. Defendants contend that the Runner and Williams' decision to carry Moore was reasonable under the circumstances and that whether their actions were negligent is a legal conclusion.

17. Plaintiffs contend that Defendants Runner and Williams used excessive force against Moore Sr. by hand-carrying him to the Four Way and dropping him, resulting in blows to Moore Sr.'s head. Defendants contend that neither Runner nor Williams used excessive force in carrying Moore.

18. Plaintiffs contend that Defendants kept Moore Sr. in the Four Way for approximately two hours, without providing or calling for appropriate medical care. Defendants contend that Moore was checked by medical staff while in the Four Way, and there was no indication that Moore needed immediate or further medical treatment.

19. Plaintiffs contend that Defendants took Moore Sr. to the Four Way because they knew there was no video surveillance of the room.   Defendants contend that Moore was taken to the

Four Way to remove Moore from LD#7 and to facilitate Moore's transfer to Ouachita Parish Sheriff's custody, not because of the lack of cameras in the Four Way.

20. Plaintiffs contend that staff at Richwood Correctional Center, including but not limited to Defendants Hardwell, Runner, Curley, Foster, and Williams, used deadly excessive force when they struck, kicked, piled on top of, used body weight against, chemical sprayed, and otherwise used physical force against Moore Sr.—including to his head—while he was in the Four Way. Defendants contend that no force was used on Moore in the Four Way and that Plaintiffs cannot rely on unidentified and unnamed staff to support their claims.

21. Plaintiffs contend that Moore Sr. was restrained at all times in the Four Way and posed no threat of harm to anyone.   Defendants contend that Moore resisted while on the way to and during his time in the Four Way, and that correctional officers believed that Moore was a threat because of their reasonable belief that Moore had gravely injured and/or murdered White.

22. Plaintiffs contend that on October 13, Defendants Runner, Hardwell, Curley, Williams, Loring, Foster and other RCC and LMC employees at Richwood Correctional Center purposely and knowingly used force against Moore Sr. that was objectively unreasonable. Defendants contend that no excessive force was used on Moore.

23. Plaintiffs contend that as a result of this objectively unreasonable use of force, Moore Sr. suffered physical and emotional injuries, and died. Defendants contend Moore was not subjected to excessive force and that Moore's death was not caused by any defendant.   Defendants further contend that Moore did not suffer any physical pain, or emotional injury prior to his death, and

that Plaintiffs contention that Moore was unconscious bars any such assertion.

24. Plaintiffs contend that the objectively unreasonable force by Defendants Runner, Hardwell, Curley, Williams, Loring, Foster and other RCC and LMC employees at Richwood Correctional Center were substantial factors in causing Moore's death. Defendants contend that no excessive force was used against Moore and no action taken by any Defendant was a substantial factor or cause of Moore's death.

25. Plaintiffs contend that Defendants Runner, Hardwell, Curley, Williams, Loring, Foster and other RCC and LMC employees at Richwood Correctional Center functioned as a unit, in that they had the same identity of purpose and action in extracting Moore from his cell to the Four Way to punish and harm him. Defendants contend that Runner, Hardwell, Curley, Williams, Loring and Foster did not and that no force was used on Moore in the Four Way

26. Plaintiffs contend that Moore Sr. was in and out of consciousness in the Four Way and eventually lost consciousness in the Four Way and never regained it. Defendants contend that no evidence will show that Moore was unconscious and non-responsive in the Four Way.

27. Plaintiffs contend that Defendants were aware that Moore Sr. was in and out of consciousness in the Four Way and eventually never regained consciousness in the Four Way. Defendants contend that no evidence will show that Moore was unconscious and non-responsive in the Four Way. Defendants would note that this is contradictory to Plaintiffs' previous Contested Issue of Fact No. 11.

28. Plaintiffs contend that it was open and obvious to Defendants that Moore Sr. was

11

unconscious and non-responsive at different times when he was in the Four Way. Defendants contend that no evidence will show that Moore was unconscious and non-responsive in the Four Way.

29. Plaintiffs contend that Defendant Mitchell performed a painful sternum rub on Moore Sr. in the Four Way which did not rouse him. Defendants contend that Moore reacted to Mitchell's ministrations.

30. Plaintiffs contend that from the moment Defendant Hardwell body-slammed Moore Sr. to the floor until Moore Sr. left Richwood Correctional Center, Defendants Hardwell, Curley, Runner, Williams, Mitchell, Loring, and Foster, as well as Assistant Warden Aultman and other staff at Richwood Correctional Center knew and should have known, based on the blows to his head and symptoms, that he had a head injury that posed a substantial risk of serious harm. A reasonable person in Defendants shoes would have viewed Moore Sr.'s head traumas and symptoms as exposing him to a substantial risk of serious harm.   Defendants contend that Moore was never "body slammed"; he was extracted from his cell while actively resisting. Defendants contend that after Hardwell's extraction of Moore, which was in conformity with his training, applicable case law, and the need for reasonable force under the circumstances, Moore's condition and actions (resisting) would not lead anyone to suspect, let alone know, of a substantial risk of serious harm to Moore.

31. Plaintiffs contend that Defendants displayed deliberate indifference to that risk. Defendants contend that no individual Defendant knew facts from which an inference that Moore

was under risk of seriously bodily harm could be drawn, or that any individual Defendant drew such an inference. Defendants further contend that whether a Defendant was deliberately indifferent is a legal conclusion.

32. Plaintiffs contend that this deliberate indifference harmed Moore, in that it caused him conscious pain and suffering, and resulted in his death. Defendants contend that no individual or Company Defendant acted with deliberate indifference to Moore, that Moore did not experience conscious pain and suffering, and that no individual or Company Defendant caused Moore's death. Defendants further contend that whether a Defendant was deliberately indifferent is a legal conclusion.

33. Plaintiffs contend that staff at Richwood Correctional Center had the opportunity but failed to intervene to prevent the use of excessive force against Moore Sr., including by using verbal commands to stop.   Defendants contend that no excessive force was used on Moore at any time and that Plaintiffs' contention does not specify any named defendant or "staff" that had an opportunity but failed to intervene.

34. Plaintiffs contend that around 7:10pm on October 13, Assistant Warden Aultman ordered LD#7 to be cleaned.   Defendants contend that, to the extent any area of RCC was cleaned, the cleaning was done due to the presence of feces, blood, food and pepper spray in the area at issue.

35. Plaintiffs contend that under Assistant Warden Aultman's orders, Trusty Willie Woodard cleaned LD#7. Defendants contend that, to the extent Willie Woodard cleaned any area of RCC, the cleaning was done due to the presence of feces, blood, food and pepper spray in the area at

issue.

36. Plaintiffs contend that Moore Sr. remained in the Four Way from about 7:07 p.m. until around 9:00 p.m. on October 13, when Ouachita Parish Sheriff's Office deputies arrived to pick him up. Defendants contend that the precise timing is not concretely established.   Further, Defendants contend that the first Deputies to arrive at RCC, arrived as early as 7:46 p.m.

37. Plaintiffs contend that when Ouachita Parish Sheriff's Office Deputy Murphy encountered Moore Sr. in the Four Way, he found him lying on his back and unresponsive. Defendants contend that Moore was believed to be sleeping when first encountered by Ouachita Parish Sheriff's Office deputies and that Deputy Murphy did not describe Moore's condition as unresponsive.

38. Plaintiffs contend that when Ouachita Parish Sheriff's Office deputies and investigators arrived at Richwood Correctional Center around 9:00 p.m., they found Moore Sr. unconscious and unresponsive. Defendants contend that Moore was believed to be sleeping when first encountered by Ouachita Parish Sheriff's Office deputies and was never unconscious and unresponsive. Further, the first Deputies to arrive at RCC, arrived as early as 7:46 p.m.

39. Plaintiffs contend that an Ouachita Parish Sheriff's Office deputy and Richwood Correctional Center officers hand-carried Moore Sr. to a Sheriff's Office vehicle, for transport to Ouachita Parish Correctional Center.  Defendants contend that the transportation of Moore to Ouachite Parish Correctional Center will be detailed in testimony at trial of this matter and that the Plaintiffs description is not complete.

40. Plaintiffs contend that when Moore Sr. arrived at Ouachita Parish Correctional Center,

Deputy EMT Crecink and other deputies and staff observed Moore Sr. to be unconscious and unresponsive, have multiple wounds to his head, and to have non-reactive pupils. Defendants contend that the timing of and substance of Crecink's observations of Moore, as well as their import, are in dispute.   Defendants further contend that Plaintiffs' contention is vague, because it fails to specify the "other deputies and staff" who purportedly observed Moore's condition.

41. Plaintiffs contend that Defendants and other staff from Richwood Correctional Center provided Ouachita Parish Sheriff's Office deputies with a false and misleading information about Moore Sr.'s injuries and symptoms and their causes, including that Moore Sr. was found down in his cell and/or that he was faking being asleep.   Defendants contend that no individual Defendant or RCC officer provided OPSO deputies with any false or misleading information; the individual Defendants believed, at different points in time, that Moore was malingering and/or pretending to sleep. Defendants further contend that Plaintiffs' contention is vague, because it fails to specify the "other staff from Richwood Correctional Center" who purportedly observed Moore's condition.   Finally, as noted below, Plaintiffs must show who actually committed constitutionally violative acts in order to recover under federal law.

42. Plaintiffs contend that upon arrival at UH - Monroe at about 9:35pm, Ouachita Parish Sheriff's Office deputies provided this false or misleading history to medical staff.   Defendants contend that no individual Defendant or employee provided any officers or medical staff with any false or misleading information; the individual Defendants believed, at different points in time, that Moore was malingering and/or pretending to sleep.

43. Plaintiffs contend that when Moore Sr. arrived at UH-Monroe, medical staff found him unconscious and unresponsive. Defendants contend that records of Moore Sr.'s medical care are in writing and such writings are the best evidence of their content and speak for themselves.

44. Plaintiffs contend that on October 13 at Richwood Correctional Center, Moore Sr. suffered a fatal subdural hematoma on the right side of his brain, also known as a brain bleed. The subdural hematoma caused a midline shift of his brain, a brainstem edema, and Moore Sr.'s death. Defendants contend that, based on the medical evidence, the subdural hematoma could have formed prior to Moore's admission to RCC, and that a definitive timing and cause of injury is not established by the evidence.

45. Plaintiffs contend that the uses of force and negligence by Defendants Hardwell, Runner, Williams, Curley, Forster, Loring and other RCC and LMC employees caused the fatal subdural hematoma to Moore, Sr. Defendants contend that none of the named Defendants or other RCC or LMC employees inflicted any injury upon Moore or caused a subdural hematomata. Defendants further contend that Plaintiffs' contention is vague, because it fails to specify the "other RCC and LMC employees" who purportedly caused the subdural hematoma.

46. Plaintiffs contend that Dr. Nelson instructed that Moore Sr. be transported by air from UH-Monroe to UH —Shreveport. Defendants contend that the medical findings of Moore's treating physicians are inconsistent.

47. Plaintiffs contend that by the time Moore Sr. reached UH-Shreveport, his brain injuries were fatal, and treatment could not have saved him then. Defendants contend that the medical

findings of Moore's treating physicians are inconsistent. Further, Defendants contend that Plaintiffs cannot show at what point in time, if any, Moore's head injuries became fatal. Finally, there will be no testimony to support this allegation.

48. Plaintiffs contend that Moore Sr. remained in a coma at UH-Shreveport from when he arrived on October 14, 2015, until he passed away on November 14, 2015. Defendants contend that Moore, Sr. suffered no conscious pain or suffering during the time described and that Moore's condition is described and found by reference to his medical records.

49. The State of Louisiana's Certification of Death for Moore Sr. states that his manner of death was homicide, caused by head injuries received while at Richwood Correctional Center on October 13, 2015. Defendants contend that Moore's Death Certificate is in writing which writing is the best evidence of its contents and the Coroner did not attribute fault to any particular Defendant or injury. Defendants further contend that "homicide" as written on Certifications of Death is legally distinct from the criminal definition of "homicide" as well as the plain meaning of that term. Further, Defendants contend that the author of that Certification had no personal knowledge of the circumstances leading to Moore's death

50. Plaintiffs contend that if Defendants had taken Moore Sr. to the hospital after Defendant Hardwell body slammed him at 7:06 p.m., it is more likely than not he would have survived. Defendants contend that Moore was never "body slammed"; Moore was extracted from his cell while actively resisting. Defendants further contend that no reasonable officer would have believed that Moore should have been taken to the hospital at that time. Defendants further contend that

Plaintiffs have no evidence of Moore's potential for survival at any point in time and that loss of chance of survival damages are not available to the Plaintiffs under prior rulings of this Court and Louisiana law.

51. Plaintiffs contend that Vernon White experienced seizures at Richwood Correctional Center. Defendants contend that White's medical information, beyond that related to his injuries at the hands of Moore, is irrelevant to this matter and that whether White experienced seizures at RCC was immaterial to his death at the hands of Moore. Defendants further contend that White's autopsy records and death certificate contain no mention of seizures.

52. Plaintiffs contend that inmate Trusty Willie Woodard smelled and cleaned chemical spray from the Four Way on October 13, 2015, after Moore Sr. was taken there. Defendants contend that no one used chemical spray in the Four Way. Defendants further there will be no evidence that Woodard "smelled and cleaned chemical spray from the Four Way ," and if there was any smell or presence of chemical spray, it was because residue remained on Moore from a prior chemical spray.

53. Plaintiffs contend that Hardwell, Runner, Williams, Loring, Curley, and Mitchell wrote false and misleading information in reports about their actions and those of their fellow staff members on October 13. Defendants contend that Hardwell, Runner, Williams, Loring, Curley, and Mitchell's reports were materially accurate.

54. Plaintiffs contend that Defendants RCC and LMC failed to provide refresher and other training in defensive tactics to Defendants and other employees Richwood Correctional Center.

Defendants contend that adequate training was provided to all correctional officers. Defendants further contend that Defendants and other Richwood Correctional Center employes received defensive tactics training. Defendants also contend that the use of the term "defensive tactics" for a correctional officers is a generic legal abstraction.

55. Plaintiffs contend that the lack of defensive tactics training for officers led them to resort to street fighting tactics against Moore Sr. Defendants contend that all individual Defendants were adequately trained in defensive tactics and relied upon that constitutionally adequate training at all times pertinent herein. Further, the Defendants content that any force used was appropriate, reasonable, and necessary.

56. Plaintiffs contend that Defendants were trying save money by not providing necessary defensive tactics training. Defendants contend that all individual Defendants were adequately trained in defensive tactics and relied upon that constitutionally adequate training at all times pertinent herein. Further, Defendants contend that any force used was appropriate, reasonable, and necessary. Further, Defendants contend that no such claim concerning "saving money" has ever been made.

57. Plaintiffs contend that at all relevant times RCC, LMC, and the City had a custom of using excessive force against detainees at the Richwood Correctional Center. This custom had various elements; including but not limited to using physical force to punish detainees for behaviors, taking detainees to the Four Way to use excessive force against them because it had no cameras and was out of view of other inmates and officers; not providing adequate training to officers in defensive

tactics and the use of force; making false and misleading reports about uses of force to cover-up excessive force; not investigating or disciplining excessive uses of force; and finding that excessive uses of force were within policy. Defendants contend that no such custom of using excessive force against detainees at RCC existed. Defendants further contend that the scope of the Monell claim is strictly limited to whether "a custom existed to use the Four-Way and chemical spray to punish prisoners." Moore v. LaSalle Mgmt. Co., L.L.C., 41 F.4th 493, 510 (5th Cir. 2022). Any other discussions of (1) uses of force other than by chemical spray and within the Four-Way , (2) any discussion of training, (3) any discussion of report writing or cover-ups, or (4) any discussion of lack of investigation or discipline contravene the Fifth Circuit's ruling. Such claims were not properly pleaded, are not active here, and any evidence related to such claims is irrelevant and objectionable.

58. Plaintiffs contend that a policymaker for the City, RCC, and LMC, including Warden Ray Hanson, knew and should have known about this custom of using excessive force against detainees.   Defendants contend that no policymaker knew or should have known about a custom of using excessive force against detainees because no such custom existed.

59. Plaintiffs contend that the policymaker, including Warden Ray Hanson, was deliberately indifferent with respect to the custom of using excessive force against detainees. Defendants contend that no policymaker was deliberately indifferent with respect to a custom of using excessive force against detainees because no such custom existed. Defendants further contend that whether a Defendant was deliberately indifferent is a legal conclusion.

60. Plaintiffs contend that the custom of using excessive force against detainees was the moving force behind the excessive force Defendant guards used against Moore Sr., resulting in his death.   Defendants contend that no custom of using excessive force against detainees was the moving force behind any alleged excessive force used against Moore because (1) no such custom existed, and (2) no excessive force was ever used on Moore.

61. Plaintiffs contend that RCC, LMC, and the City did not discipline any of the Defendants for their conduct towards Moore Sr.   Defendants contend that, as no individual Defendant ever violated Moore's constitutional rights or otherwise harmed him in any way, no discipline was warranted. Defendants further contend that no policymaker approved of any misconduct.

62. Plaintiffs contend that RCC, LMC, and the City failed to investigate Defendants' conduct towards Moore Sr. Defendants contend that, as no individual Defendant ever violated Moore's constitutional rights or otherwise harmed him in any way, no investigation of such individuals was ever warranted. Defendants further note that the existence of such an investigation is not material, probative, or relevant evidence of any of Plaintiffs' claims. Further, Warden Hanson will testify to his actions after the incident, including his review of all of the reports.

63. Plaintiffs contend that RCC, LMC, and the City ratified Defendants' conduct towards Moore Sr.   Defendants maintain that there is no *Monell* claim based on a "ratification" theory, which was not discussed by the Fifth Circuit or approved by this Court.   Defendants further contend that, as no individual Defendant ever violated Moore's constitutional rights or otherwise harmed him in any way, whether any of their conduct was "ratified" is irrelevant.   Defendants

further contend that RCC, LMC, and the City had no information or knowledge of any misconduct and did not ratify or approve of any misconduct.

64. Plaintiffs contend that Warden Hanson, Assistant Warden Aultman, and LMC and RCC executives, including Johnny Creed, knew all the material facts about officer Defendants' excessive uses of excessive force, negligence, and deliberate indifference to Moore Sr.'s medical needs, but decided not to investigate or discipline those responsible.   Defendants contend this is merely a restatement of a ratification theory, which is not applicable in this case. Defendants further contend that Hanson, Aultman, LMC and RCC executives, and Johnny Creed, had no information or knowledge of material facts about any alleged use of excessive force by the officer Defendants, any alleged negligence by same, or any alleged deliberate indifference to Moore Sr.'s medical needs by same. Defendants further contend that no individual has a constitutional right to an internal investigation and whether such an investigation occurred is immaterial to Plaintiffs active claims, and accordingly evidence related to same is irrelevant.   Further, Defendants contend that Moore's attack on White was thoroughly investigated by the Ouachita Parish Sheriff with full cooperation from all officers.

65. Plaintiffs contend that RCC and LMC employees at Richwood Correctional Center had a pattern and practice of using the Four Way as a place to use excessive force against detainees because it had no cameras and was out of the view of other inmates and officers.   Defendants contend that there was no pattern or practice of using the Four Way as a place to use excessive force.   Defendants further contend that no force was used on Moore in the Four Way and that all

force used on Moore was reasonable and constitutionally appropriate to the resistance from Moore experienced at that time.

66. Plaintiffs contend that this practice was known to LMC and RCC management and superior officers at Richwood Correctional Center. Defendants contend that there was no pattern or practice of using the Four Way as a place to use excessive force.   Defendants further contend that no force was used on Moore in the Four Way and that all force used on Moore was reasonable and constitutionally appropriate to the resistance from Moore experienced at that time.

67. Plaintiffs contend that officers at Richwood Correctional Center had a practice of writing use of force reports in a coordinated way that misled the reader into believing their actions were reasonable and within policy.   Defendants contend that no such practice existed at RCC, that no reports or statements by any individual Defendants herein was written with the intent to mislead any reader, and that to the extent Plaintiffs assert that any officers' actions, as relayed in their written reports, were reasonable this is because the reports are accurate and the officers' actions were, in fact, reasonable.   Defendants further contend that there is no pending claim for a pattern or practice of mis- or falsely reporting events.

68. On October 30, 2016, RCC and LMC employees Christopher Loring, Roderick Douglas, Shaffer, Rosenthal, Credit, and Parker took five detainees at the Richwood Correctional Center to the Four Way, where there was no security camera surveillance. The detainees were handcuffed, compliant, kneeling on the floor, not posing a threat to anyone, and not evading or struggling with any officer. The guards threatened the detainees with spray as they interrogated them, and then

took turns spraying the chemical agents into the detainees' eyes. The officers then agreed to falsify their incident reports to cover up their wrongdoing.   Defendants contend that the facts of the October 2016 incident are irrelevant to this matter as neither Moore nor any Plaintiff was involved in that incident which occurred more than a year after Moore left the facility. Further, Defendants contend that any relevance that information might have is grossly outweighed by its prejudicial nature and likelihood to confuse the jury. The incident at issue occurred under materially different circumstances than the case before the jury, most pertinently that only three of the several Defendants here were involved in that subsequent incident. The introduction of this evidence, even against the overlapping Defendants, is likely to confuse the jury as to the issues actually before it for decision and ultimately prejudice the Defendants who were not involved with the subsequent incident.   Finally, this matter is the subject of a pending Motion in Limine which has been briefed by the parties. The Defendants incorporate herein, by reference, their arguments made in support of said pending Motion(s).

69. Plaintiffs contend that the use of chemical spray on handcuffed detainees was a widespread practice at Richwood Correctional Center starting as early as 2012 and up until and after October 13, 2015.   Defendants contend that there was no widespread practice at Richwood Correctional Center of using chemical spray on handcuffed detainees.

70. Plaintiffs contend that on October 13, Loring and Foster knew that fellow officers were violating Moore Sr.'s constitutional rights.   Defendants contend that Moore's constitutional rights were never violated and because of that Loring and Foster did not know that Moore's constitutional

rights were being violated.

71. Plaintiffs contend that Defendants Loring and Foster had a reasonable opportunity to prevent the harm. Defendants contend that, because there was no constitutional violation or impermissible harm, there was nothing for Loring and Foster to prevent.

72. Plaintiffs contend that Loring and Foster chose not to act.   Defendants contend that, because there was no constitutional violation or impermissible harm, there was nothing for Loring and Foster to act upon.

73. Plaintiffs contend that officers at Richwood Correctional Center, including Defendant Loring, talked openly about the practice of taking detainees to the Four Way to be beaten. Defendants contend that no officers at Richwood Correctional Center talked openly about taking detainees to the Four Way to be beaten because no such practice existed.

74. Plaintiffs contend that in June and July of 2018, LMC and RCC employees at Richwood Correctional Center used excessive force against detainees there.   Defendants contend that no such excessive force occurred.   Defendants further contend, alternatively, that nothing that occurred at RCC more than two years after Moore's incarceration there could possibly be relevant here. Defendants further contend that Plaintiffs' contention is vague, because it does not specify what "excessive force" was used against "detainees" in June and July 2018. Further, Defendants contend that introduction of evidence of any other incident which may have occurred under materially different circumstances than the case before the jury, is likely to confuse the jury as to the issues actually before it for decision and ultimately prejudice any Defendants who were not

involved with any subsequent incident.

75. Plaintiffs contend that trainers at Richwood Correctional Center told guards it was appropriate to use excessive force against detainees if they got on the officers' nerves. Defendants contend that no trainer at Richwood Correctional Center ever told guards that it was appropriate to use excessive force under any circumstances.

76. Plaintiffs contend that Assistant Warden Aultman told guard John Badger that if Badger hurt someone, he'd go to bat for him. Defendants contend that no such statement was ever made.

77. Plaintiffs contend that at all relevant times, Defendants Runner, Hardwell, Curley, Williams, Loring, Mitchell, and Foster, as well as Hanson, Aultman, and Creed, and other RCC and LMC employees at Richwood Correctional Center, acted within the course and scope of their employment with RCC and LMC. Defendants contend that the employers of the individual Defendants, as well as whether all were acting within the course and scope of their employment at all times is a contested issue.

78. Plaintiffs contend that at all relevant times, Defendants Runner, Hardwell, Curley, Williams, Loring, Mitchell, and Foster, as well as Hanson, Aultman, and Creed, and other RCC and LMC at Richwood Correctional Center, were acting within the ambit of their assigned duties and in furtherance of their employer's objectives. Defendants contend that the employers of the individual Defendants, as well as whether all were acting within the ambit of their assigned duties and in furtherance of their employer's objectives at all times is a contested issue.

79. Plaintiffs contend that employers RCC and LMC might have prevented the acts of its

26

employees that caused the harm to Moore Sr., but did not.   Defendants submit that this is not a claim made by the Plaintiffs. Defendants further contend that the employers of the individual Defendants is a fact issue for the jury.   Defendants further contend that no acts of any individual Defendant caused any harm to Moore, and as such, regardless of who an individual Defendant's employer might be, there was nothing to prevent.

80. Defendants acted with malice and reckless indifference to the rights of Moore Sr. Defendants contend that all of their actions were constitutionally adequate at all times and reasonable under the circumstances and were not done with malice and reckless indifference to Moore's rights.   Defendants further contend that this contention does not apply to the City.

81. Defendants purposefully and knowingly violated Moore Sr.'s rights and safety. Defendants contend that their actions were reasonable under the circumstances and because there was no constitutional violation, no one purposefully or knowingly violated Moore's rights and safety. Defendants further contend that this contention does not apply to the City.

82. Defendants acted with a complete lack of concern for the rights and safety of Moore Sr.. Defendants contend that their actions were reasonable under the circumstances and because there was no constitutional violation, no one acted without concern for Moore's rights or safety.

83. Defendants acted with deceit, intended to cover up their conduct against Moore Sr, and were motivated by a profit to augment profit. Defendants submit that this is not a claim made by the Plaintiffs. Defendants further contend no one acted with deceit or intent to cover up any alleged misconduct. Defendants further contend that this contention does not apply to the City.

27

84. Plaintiffs contend that Defendants conduct caused Moore Sr. to suffer severe physical pain and emotional distress up until the time of his death.   Defendants contend that there was no misconduct and Moore suffered no conscious physical pain and/or emotional distress prior to his losing consciousness.

85. Plaintiffs contend that they suffered severe harms as a result of Moore Sr.'s death, including emotional and psychological harms and loss of consortium.   Defendants contend that Plaintiffs suffered no cognizable harm as the result of Moore's death.

86. LMC controls the employees of RCC. The Warden is a LMC employee and has supervisory control over all employees working at the Richwood Correctional Center, including all RCC and LMC employees. Johnny Creed, chief operations manager for LMC, directly supervised Warden Hanson at all relevant times. LMC provides human resource, payroll and financial support and control to RCC.   Supervision over RCC is reserved to LMC.   Defendants contend that the relationships between the individual and municipal/ Company Defendants and any third parties is in dispute.

87. Defendant City of Monroe provided no oversight or review of LMC or RCC operations. City of Monroe never inspected Richwood Correctional Center or its records. No City representative went to Richwood Correctional Center to review or inspect the facility or its operations.   The City contends that the City enforced its contract with RCC.

Defendants' Contested Issues of Fact:

1.  Defendants contend that the actions of each Defendant  must be considered separately

when determining whether a given Defendant violated the decedent's civil rights.  No individual Defendant may be held liable for the actions of any other Defendant. It is clear law that the acts of individuals must be considered individually in a 42 USC §1983 action.  The Plaintiffs burden of proof includes an implicit requirement that they not only prove what acts caused the alleged harm, but who caused the alleged harm.   Accordingly, the Defendant contends that the Plaintiffs continuously and improperly conflate the actions of different Defendants in Plaintiffs' recitation of contested issues of fact.   Further, Plaintiffs appear to be claiming that former Defendants' fault can be considered, despite the fact that former Defendants were dismissed with prejudice.

     a.  Plaintiffs contend that these are legal arguments by Defendants and not assertions of fact. These vague and erroneous arguments are addressed by Plaintiffs in the Contested Issues of Law section of the pretrial order.

2.  Defendants contend that Moore's booking at RCC was adequate and he was provided constitutionally adequate medical care at all times while at RCC.

     a.  Plaintiffs contend that due to Moore Sr.'s obvious mental health issues, he should not have been placed in a lockdown cell with Vernon White, whose behavior was known by guards to be violent and unstable. Plaintiffs further contend that Defendants did not provide Moore Sr. with constitutionally adequate medical care at Richwood Correctional Center, as set forth above.

3.  Defendants contend that Moore violently attacked Vernon White and caused White's death.

     a.   Plaintiffs contend that the cause of White's death is unknown and irrelevant.

4.   Defendants contend that any force used by Runner while extracting White from the cell he shared with Moore was reasonable under the circumstances and proportional to the threat posed by Moore to Runner and was not deadly force.

     a.   Plaintiffs contend that the force used by Runner was unreasonable and excessive. At no point during Moore Sr.'s interaction with Runner or other Defendants during the extraction from the cell did Moore Sr. resist or threaten or use force against Defendants.

5.   Defendants contend that Moore's extraction from LD7 was necessitated by Moore's violent assault of his cellmate White.   The individuals who extracted Moore did so according to all constitutional requirements and acted reasonably at all times.   Further, any forced used any of those Defendants was reasonable under the circumstances and proportional to the threat posed by Moore.

     a.   Plaintiffs contend that Defendants used unreasonable and excessive force when extracting Moore Sr. from the cell.

6.   At no time did Hardwell "body slam" Moore, but instead extracted Moore in order to gain compliance as Moore was actively resisting during the entirety of the extraction and cuffing outside of LD7.

     a.   Plaintiffs contend that Defendant Hardwell used unreasonable and excessive force when he body slammed and threw Moore Sr. head-first into the ground.

7. The Defendants did not act as "team" or "unit" within the legal meaning of said terms.

    a. Plaintiffs contend that Defendants acted as a team and unit.

8. Defendants contend that Hardwell's extraction did not constitute "deadly force."

    a. Plaintiffs contend that Hardwell's body slam of Moore Sr. was deadly force.

9. Defendants contend that Moore acted aggressively prior to, and during, the cell extractions in that he balled up his hands, reacted aggressively to verbal commands, and yelled verbal threats.

    a. Plaintiffs contend that Moore did not act aggressively prior to or during the cell extraction.

10. Defendants contend that any use of chemical agent during the cell extractions was reasonable under the circumstances and proportional to the threat posed by Moore at the time.

    a. Plaintiffs contend that the use of a chemical agent during the extraction was unreasonable.

11. Defendants contend that Moore resisted between the second cell extraction and being placed in the Four Way.   They further contend that when placed in the Four Way, and during his time there, he was awake and alert, and was not obviously in need of medical attention.

    a. Plaintiffs contend that Moore Sr. did not resist between the time of his extraction and being taken to the Four Way, and that Moore Sr. was unconscious and unresponsive in the Four Way, and in obvious need of medical attention.

12. Defendants contend that no officer was "aware of Moore's unresponsive condition" at

any time.

  a. Plaintiffs contend that Defendants were aware of Moore Sr.'s unresponsive condition.

13. Defendants contend that Moore went to the floor outside the cell because Moore continued to wriggle and/or resist while being carried and those actions caused Moore to fall to the floor.

  a. Plaintiffs contend that Defendant Hardwell picked Moore Sr. up from behind and body slammed him head-first into the floor, and that Moore Sr. did not wriggle or resist when Hardwell carried out this deadly and unreasonable force. Moore Sr. also did not cause Runner to drop him by wriggling or resisting. Defendants had other safer means available to transport Moore Sr., instead of by hand.

14. Defendants contend that no officer struck, kicked, pepper sprayed, or otherwise used any force on Moore while was in the Four Way.

  a. Plaintiffs contend that Defendants struck, kicked, pepper sprayed, held down, piled on top of, and used other force against Moore Sr. in the Four Way.

15. Defendants contend that Moore's head injury was caused by unknown events prior to his booking into Richwood Correctional Center or due to his altercation with Vernon White.

  a. Plaintiffs contend that Defendants caused Moore Sr.'s head injury at Richwood Correctional Center on October 13, 2015.

16. Defendants contend that no officer or employee caused injury to Erie Moore, Sr.

     a.   Plaintiffs contend that LMC and RCC employees caused injury to Moore, Sr.

17. Defendants contend that the cause of Moore's head injury is unknown.

     a.   Plaintiffs contend that Defendants caused Moore Sr.'s fatal subdural hematoma.

18. Defendants contend that Moore did not suffer blunt force trauma to his head, and Plaintiffs are unable to identify any physical sign of such trauma.

     a.   Plaintiffs contend that Defendants inflicted blunt force trauma to Moore Sr.'s head on October 13, 2015.

19. Defendants contend that the time of any injury to Moore is unknown.

     a.   Plaintiffs contend that Defendants caused injuries to Moore Sr. beginning at 6pm on October 13, 2015, and until OPSO deputies arrived at the facility around 9pm. The CT scans and medical testimony corroborate this timing of the injuries.

20. Defendants contend that all actions taken by Richwood Correctional Center personnel were reasonable under the circumstances, did not violate constitutional rights, and did not cause any injury to Moore.

     a.   Plaintiffs contend that Defendants, who were RCC and LMC employees, engaged in excessive and unreasonable force that violated Moore Sr.'s constitutional rights and Louisiana state law and injured and killed him.

21. Defendants contend that Richwood Correctional Center personnel did not supply false or misleading information about the incident to anyone.

     a.  Plaintiffs contend that LMC and RCC employees at Richwood Correctional Center, including Defendants, provided false and misleading information about their interactions with Moore Sr. and the causes of his injuries, in order to cover up their wrongdoing.

22. Defendants contend that RCC and LaSalle Management provided constitutionally adequate training to all RCC Correctional Officer Defendants.  Any training which was not provided, but which the Plaintiffs believes should have been provided, was not required by any state, federal, or jurisprudential law or standard. Further, there will be no testimony or evidence to support this claim.

     a.  Plaintiffs contend that LMC and RCC provided inadequate training to officers at Richwood Correctional Center, including Defendants, on the use of force and defensive tactics.

23. Defendants contend that there was no pattern or practice of using the four way to forcefully interrogate or harm prisoners.

     a.  Plaintiffs contend that Defendants City, RCC, and LMC maintained a pattern and practice and custom of forcefully interrogating and harming detainees in the Four Way.

24. Defendants contend that neither Richwood Correctional Center, LaSalle Management Company, or the City of Monroe knew of or condoned any pattern or practice of using the Four Way to forcefully interrogate or harm prisoners.

34

     a.   Plaintiffs contend that RCC, LMC, and the City's policymakers, including Warden Hanson, knew about the pattern, practice, and custom of using the Four Way to forcefully interrogate and harm prisoners.

25. Defendants contend that all correctional practices at RCC, relative to Moore and White, were constitutionally adequate.

     a.   Plaintiffs contend that LMC and RCC employees at Richwood Correctional Center, including Defendants, violated Moore Sr.'s constitutional rights, and the RCC, LMC, and City customs and policies were the moving force behind the violations.

26. Defendants contend that there was no practice of RCC Correctional Officers documenting incidents in a misleading fashion or falsifying any such documentation.

     a.   Plaintiffs contend that LMC and RCC employees at Richwood Correctional Center had a practice of documenting use of force incidents in a misleading and false fashion in order to cover up wrongdoing.

27. Defendants contend that Plaintiffs will be unable to prove which individual Defendants caused which particularized alleged harms to Moore.

     a.   Plaintiffs contend that this is an erroneous opinion by Defendants and not an assertion of disputed fact. Plaintiffs further address this issue in the Contested Issues of Law section.

28. Defendants contend that Plaintiffs will be unable to prove the action which alleged caused Moore's death to a sufficient degree of medical certainty.

    a.  Plaintiffs contend that this is an erroneous opinion by Defendants and not an assertion of disputed fact. Plaintiffs further address this issue in the Contested Issues of Law section. Furthermore, the standard in a civil case is preponderance of the evidence, not "sufficient degree of medical certainty."

29. The City of Monroe contends that the City did not permit, condone, or authorize any policy, practice, or custom of using excessive force.

    a.  Plaintiffs contend that the City permitted, condoned, and authorized the policy, practice, and custom of using excessive force at Richwood Correctional Center.

30. Defendants contend that Moore acted abnormally and erratically when he encountered Trooper Jason Hanneman and later, Officer Tommy Crowson, causing the issuance of an "Officer Safety Alert" and Moore's arrest.

    a.  Plaintiffs contend that this contention is irrelevant, because the Defendants and staff at Richwood Correctional Center who used excessive force against Moore Sr. had no knowledge of the incidents with Trooper Hanneman or Officer Crowson.

31. Defendants contend that Moore Sr. disrupted the booking process through his actions and behavior and prevented the completion of the booking process, including disrupting the medical assessment.

    a.  Plaintiffs contend that any alleged disruption did not preclude Defendants from making an assessment, based on their first-hand observations, about Moore Sr.'s mental health condition.

**F.**

**Contested Issues of Law**

By the Plaintiffs:

1.  Plaintiffs contend that RCC and LMC are private actors acting under the color of law and that, as a result, their employees are not entitled to assert qualified immunity.   Defendants contend that all defendants are entitled to assert the defense of good faith.

2.  Plaintiffs contend that RCC and LMC are private actors acting under the color of law and are subject to being assessed punitive damages.   Defendants maintain that punitive damages are only available against Defendants in their individual capacity and hereby reserve this issue for any future appeal.   However, Defendants acknowledge that for the purposes of the jury trial of this matter, they are subject to the currently applicable ruling of the Fifth Circuit allowing punitive damages to go to the jury.

3.  Plaintiffs contend that the "function as a unit" doctrine applies to establish that individual Defendants concurrently caused injuries to Erie Moore, Sr.   Defendants contend that the "function as a unit" doctrine does not apply and the liability of each individual Defendant must be determined individually, based on actions each individual personally took. Further, the "function as a unit" doctrine may seek to include former named Defendants who have been dismissed with prejudice.

4.  Plaintiffs contend that Defendants LMC and RCC are a single integrated enterprise and joint employers of all individual Defendants and officers working at Richwood Correctional Center. Individual Defendants are employees of both corporations. Defendants contend that this

issue of law seeks to improperly expand the pleadings. No single enterprise theory was pleaded by Plaintiffs.  Out of an abundance of caution, Defendants contend that all juridical entities are separate and do not form a single integrated enterprise.

5.  Plaintiffs contend that Defendants RCC's, LMC's, and City's *Monell* liability may be predicated on the conduct of City, RCC, and LMC employees and agents who are not named defendants or found individually liable, including the policymaker. Defendants contend that *Monell* liability can only be established through an official policy or practice of which the policymaker had knowledge. Defendants further contend that the conduct of individuals who have been previously dismissed with prejudice may not form the basis for *Monell* liability here. Defendants contend that for Monell liability for Moore's death to attach, Plaintiffs must show that a specific policy, procedure, or custom was adopted with deliberate indifference and was the moving force behind Moore's death.   Whether an individual Defendant was acting on behalf of a Defendant is not an element of a *Monell* claim and impermissibly seeks to smuggle a vicarious liability theory of liability into Plaintiffs' federal claims.   Defendants further contend that, to the extent an actual violation, of which the policy at issue was a moving force, must be shown, such actions by dismissed Defendants cannot be used as the actions of those Defendants who have been found to be non-violative. An appeal, rather than an artful argument, was the proper avenue to seek to address alleged violative behavior by dismissed parties.   As such an appeal was not taken and/or rejected, the lawful, constitutional nature of the behavior of those individuals is now settled law of the case and cannot be resurrected in this way.

6.   Plaintiffs contend that Defendants RCC's and LMC's vicarious liability may be predicated on the conduct of employees who are not named Defendants or found individually liable, as long as those individuals had not been previously dismissed with prejudice pursuant to a Court's order on summary judgment motions, and the dismissal was not successfully appealed. Defendants contend that vicarious liability only applies to Plaintiffs' state law claims, and that such liability may only attach here where a named Defendant is found individually liable. Plaintiffs' assertion that such is not required is an attempt to forgo their duty to bring all claims against all potential Defendants. Plaintiffs are precluded, by virtue of their assumptive failure to provide notice prior to trial of allegedly liable parties, from arguing the fault of such unnamed individuals now. Allowing them to move forward, absent such notice, is extremely prejudicial to the Defendants' ability to defend against the Plaintiffs' claims. If the Plaintiffs intend to offer the fault of a specific non-party who was never previously identified, they should be prevented from doing so as this would functionally amount to adding parties two months prior to trial and after the discovery period has closed.

7.   Plaintiffs contend that for Defendants RCC, LMC, and the City to have *Monell* liability for Moore Sr.'s death, it is not necessary to determine which of the individuals acting on their behalf caused the death, as long as one of them is proven to have caused the death.   Defendants contend that for Monell liability for Moore's death to attach, Plaintiffs must show that a specific policy, procedure, or custom was adopted with deliberate indifference and was the moving force behind Moore's death.   Whether an individual Defendant was "acting on their behalf" is not an element

of a Monell claim and impermissibly seeks to smuggle a vicarious liability theory of liability into Plaintiffs' federal claims.   Defendants further contend that, to the extent an actual violation, of which the policy at issue was a moving force, must be shown, such actions by dismissed Defendants cannot be used as the actions of those Defendants have been found to be non-violative. An appeal, rather than an artful argument, was the proper avenue to seek to address alleged violative behavior by dismissed parties.   As such an appeal was not taken and/or rejected, the lawful constitutional nature of the behavior of those individuals is now settled law of the case, and cannot be resurrected in this way.

8.   Plaintiffs contend that for Defendants RCC and LMC to have vicarious liability for Moore Sr.'s death, it is not necessary to determine which of the employees acting on their behalf caused the death, as long as one of the employees is found to have caused the death.   Defendants contend that vicarious liability may not be predicated on the actions of any individual who has been either (1) dismissed with prejudice, or (2) was not previously identified.   It is law of the case that individuals who have been dismissed with prejudice acted reasonably at all times.   A party who has been dismissed with prejudice, on the merits, may not later be found to have acted negligently. Further, Plaintiffs are precluded, by virtue of their failure to provide notice prior to trial of allegedly liable parties who were not named Defendants, from arguing the fault of such unnamed individuals now. Allowing them to move forward, absent such notice, is extremely prejudicial to the Defendants' ability to defend against the Plaintiffs' claims. If the Plaintiffs intend to offer the fault of a specific non-party who was never previously identified, they should be prevented from doing

so as this would functionally amount to adding parties two months prior to trial and after the discovery period has closed.

9.   Plaintiffs contend that once they prove an actor (whether a Defendant or other RCC or LMC employee) engaged in tortious conduct that exposed Moore Sr. to a risk of harm, the burden of proof is on each such actor to prove they did not cause Moore Sr.'s death. This is because where, as here "the plaintiff sues all of multiple actors and proves that each engaged in tortious conduct that exposed the plaintiff to a risk of harm and that the tortious conduct of one or more of them caused the plaintiff's harm but the plaintiff cannot reasonably be expected to prove which actor or actors caused the harm, **the burden of proof, including both production and persuasion, on factual causation is shifted to the defendants**." Restatement (Third) of Torts: Phys. & Emot. Harm § 28(b) (2010) (emphasis added). Defendants contend that general tort principals, and specifically the Restatement of Torts, do not apply in this situation as more specific Louisiana and federal law on the subject exists. Specifically, Plaintiffs bear the burden of showing which individual acts by which individual Defendants allegedly violated Moore's civil rights. Vicarious liability does not apply to the Plaintiffs' civil rights claims and no amount of artful pleading can overturn explicit law that requires individualized proof.

10. Plaintiffs contend that the Court should instruct the jury on the presumption of causation under *Housley v. Cerise*, 579 So. 2d 973, 980 (La.1991). Defendants contend that *Housley* presumption is in appropriate because Plaintiffs cannot establish all three elements of the *Housley* presumption, and even if they could, the *Housley* presumption does not apply to Plaintiffs' federal-

law claims.

11. Pursuant to the Fifth Circuit's opinion about concurrent causation in this case, Plaintiffs can prove causation for the wrongful death claims by showing that an individual Defendant's act "could have caused" Moore Sr.'s death. *Moore v. LaSalle Mgmt. Co*, 41 F.4th 493, 508 fn. 42 (5th Cir. 2022).   Defendants contend that this is an oversimplicated misreading of the Fifth Circuit's opinion.   That opinion merely utilized "substantial factor" causation, adopted from the Louisiana Supreme Court in Bonin v. Ferrellgas, Inc., 2003-3024 (La. 7/2/04), 877 So. 2d 89.   The standard for substantial factor causation is not whether an act "could have caused" the injury at issue, but instead whether it was a substantial factor in bringing about the harm.

By the Defendants:

12. Defendants contend that Plaintiffs' explication of the *Monell* practice or custom is overbroad and inconsistent with the narrow custom or practice identified by the Fifth Circuit: whether "a custom existed to use the Four-Way and chemical spray to punish prisoners."

    a.  Plaintiffs contend that, as confirmed in the Magistrate Judge's Memorandum Ruling on September 29, 2023, Plaintiffs' *Monell* claim is that RCC, LMC, and the City "had a custom of using excessive force." (Dkt 423 at p. 20); *see also id.* at p. 21 (explaining that Plaintiffs may use evidence of insufficient training "to prove a custom of excessive force promulgated by Corporate Defendants and also attributable to the City" and referring to evidence of insufficient training and use of chemical spray and beatings in the Four Way as evidence going to the "same, single

custom or practice of excessive force promulgated by Corporate Defendants.")

**G.**

The following depositions and answers to interrogatories will be offered in evidence:

1. Dr. Gonzalez-Toledo who now resides in Argentina.   Or in the alternative, he may testify
   live via Zoom video.

   a. Defendants object to the use of Zoom for any live testimony in this matter.

2. David Nelson, M.D. may attend by video deposition or zoom.

   a. Defendants object to the use of Zoom for any live testimony in this matter.

3. John T. Owings, M.D. may attend by video deposition or zoom.

   a. Defendants object to the use of Zoom for any live testimony in this matter.

4. LMC's supplemental answer to Plaintiff's Interrogatory 2, listed as Plaintiff's Exhibit
   221.

   a. Defendants object to Exhibit 221 as such discovery responses constitute hearsay.
      The information contained in the discovery response at issue can be obtained
      through live testimony, making the declarant, or a representative, available.

5. LMC's supplemental answer to Plaintiff's Interrogatory 11, listed as Plaintiff's Exhibit
   248.

   a. Defendants object to Exhibit 248 as such discovery responses constitute hearsay.
      The information contained in the discovery response at issue can be obtained
      through live testimony, making the declarant, or a representative, available.

6. Plaintiffs and Defendants reserve the right to use the deposition testimony of any witness who is determined to be unavailable at trial.

**H.**

The is no objection to exhibits on the attached lists except as follows:

Plaintiffs' Exhibit List is attached as Exhibit 1. Defendants' objections to Plaintiffs' Exhibit List is attached as Exhibit 2. Defendants' Exhibit List with Plaintiffs' Objections is attached as Exhibit 3.

**I.**

This is a jury case. The anticipated length of trial is two weeks.

**J.**

The issue of liability should not be tried separately from that of quantum.

**K.**

The undersigned hereby certify that this Pretrial Order has been formulated after telephone conferences held on May 27, 2025, in which trial counsel for all parties were included and on June 9, 2025, when counsel for all parties except the City were included. Reasonable opportunity has been afforded to counsel for corrections or additions prior to signing. Hereafter, this Order shall control the course of the trial and may not be amended except by consent of the parties and the Court, or by the order of the Court to prevent manifest injustice.

APPROVED AS TO FORM AND CONTENT:

For Plaintiffs Erie Moore, Jr.; Tamara Green; and Tiffany Robinson.

<u>        s/ Omar G. Qureshi        </u>
Signature of Attorney for Plaintiffs

Name:   Omar G. Qureshi (Temp No. 918456)
          Max A. Schoening (Temp No. 918457)
<u>          Nelson Cameron (No. 01283)     </u>
Firm:  <u>Qureshi Law PC             </u>
Address:  <u>700 Flower St, Suite 1000    </u>
<u>          Los Angeles, CA 90017      </u>
Telephone:  <u>(213) 786-3478        </u>

For Defendants Lasalle Management Company, LLC; Richwood Correctional Center, LLC; Gerald Hardwell; Jeremy Runner; Reginald Williams; Reginald Curley; William Mitchell; and Jody Foster.

<u>        s/ H. Bradford Calvit       </u>
Signature of Attorney for Defendants

Name:  H. Bradford Calvit (No. 18158)
        Eli J. Meaux (No. 33981)
<u>        John D. Ryland (No. 20355)     </u>
Firm:  <u>Provosty, Sadler & Delaunay, APC  </u>
Address:  <u>4615 Parliament Drive, Suite 200 </u>
<u>        Alexandria, LA 71303       </u>
Telephone:  <u>(318) 445-3631         </u>

For Defendant City of Monroe.

<u>       s/ Brandon W. Creekbaum     </u>
Signature of Attorney for Defendant

Name:  <u>Brandon W. Creekbaum (No. 33791) </u>
Firm:  <u>City of Monroe           </u>
Address:  <u>400 Lea Joyner Memorial Expy   </u>

Monroe, LA 71201
Telephone:   (318) 329-2240


For Defendant Christopher Loring.

s/ Lavalle B. Salomon
Signature of Attorney for Defendant

Name:   Lavalle B. Salomon
Firm:   Attorney at Law
Address:   700 N 2nd St
Monroe, LA 71201-5834
Telephone:   (318) 387-1222

**PROOF OF SERVICE**

STATE OF CALIFORNIA         )
COUNTY OF LOS ANGELES       )

       I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  On the date herein below specified, I served the foregoing document described as set forth below:

DATE OF SERVICE:      June 9, 2025

DOCUMENT(S) SERVED:  PRE-TRIAL ORDER

PARTIES SERVED   :      SEE ATTACHED SERVICE LIST

____  (BY MAIL AS FOLLOWS):  I placed the envelope for collection and processing for mailing following this firm's ordinary practice with which I am readily familiar.  On the same day correspondence is placed for collection and mailing, they are deposited in the ordinary course of business with the United States Postal Service.

____  (VIA FACSIMILE): I sent via facsimile the above described documents to the offices of the addressee(s) as indicated.  The transmission was reported as successful immediately following complete transmission.

____  (VIA EMAIL):  I caused above-referenced documents to be emailed to the addressee at the following email addresses:

Said email was reported complete and without error.

XXX  (VIA ELECTRONIC SERVICE):  Pursuant to agreement by the parties, by electronically transmitting the above document(s) via electronic mail, pursuant to court order or agreement by the parties, to the persons at the electronic mail addresses listed on the attached Service List. To my knowledge, the transmission was reported as complete and without error.

____  (BY PERSONAL SERVICE):  I caused to be delivered such envelope(s) by hand to the offices of the addressee(s).

* * *

XXX  (STATE):  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

____  (FEDERAL):  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

EXECUTED at Los Angeles, California, on June 9, 2025.

                                            _____
                                                Jenny Yoo

## SERVICE LIST

**Nelson Cameron**
Email: eganspk@gmail.com

**Victoria Adams**
Email: victoriadadams@yahoo.com

**H Bradford Calvit**
Email: bcalvit@provosty.com

**Eli Jules Meaux**
Email: emeaux@provosty.com

**John D Ryland**
Email: jryland@provosty.com

**Brandon Wade Creekbaum**
Email: brandon.creekbaum@ci.monroe.la.us

**Lavelle Salomon**
Email: val@valsalomon.com

**Robert Denny**
Email: rdenny@mcglinchey.com

**Deirdre McGlinchey**
Email:dmcglinchey@mcglinchey.com

**Gillian McCarroll**
Email: gmccarroll@mcglinchey.com