UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **ERIE MOORE JR ET AL** | **CASE NO. 3:16-CV-01007** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LASALLE CORRECTIONS INC ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM ORDER**

Before the Court is Pretrial Memorandum [Doc. No. 497] filed by Defendants, c/o Reginald Curley, Jody Foster, Sgt. Gerald Hardwell, William Mitchell, c/o Jeremy Runner, Sgt. Reginald Williams, LaSalle Management Co. LLC., Richwood Correctional Center, LLC, The City of Monroe, and Christopher Loring (collectively, "Defendants"). Also before the Court is a Pretrial Memorandum [Doc. No. 499] filed Plaintiffs Erie Moore, Jr., Tamra Green, and Tiffany Robinson (collectively "Plaintiffs"). The Court provides the following rulings for the issues raised in the parties' pretrial memorandums.

I. **FACTS AND BACKGROUND**

This case has a long procedural history. As it relates to the parties' pretrial memorandums, the Court entered an amended Scheduling Order on February 25, 2025, and set the case for trial on August 4, 2025.[1] Pursuant to the February 25, 2025, Scheduling Order, the parties filed their respective pretrial memorandums identifying contested issues of law, outstanding discovery issues.[2] A pre-trial

---
[1] [Doc. No. 479].
[2] [Doc. Nos. 497, 499].

conference was held on June 12, 2025.[3] The parties were given until July 1, 2025, to file replies to the memoranda.[4] The Court resolves the issues as follows.

## II.  LAW AND ANALYSIS

The first disputed legal issue concerns the applicability of qualified immunity and a good faith defense. Plaintiffs contend that the individual defendants are barred from asserting both qualified immunity and a good faith defense. While Defendants concede that qualified immunity is not available in this case, they maintain that they are nonetheless entitled to raise the good faith defense.

Defendants are correct, and the good faith defense is allowed to be asserted at trial. Courts have recognized that the principles of equality and fairness form the foundation of the good faith defense. *See Danielson v. AFSCME, Council 28, AFL-CIO*, 340 F. Supp. 3d 1083, 1085 (W.D. Wash. 2018) ("Although the precise contours of the defense have not been clearly defined by the Supreme Court, circuit courts, including the Ninth Circuit, have acknowledged its general contours of equity [sic] and fairness."); *Mooney v. Illinois Education Association*, 372 F. Supp. 3d 690, 703 (C.D. Ill. 2019) ("The principles of fairness and equality underlying the good-faith defense in the § 1983 context ..."). By these principals, the Fifth Circuit held "private defendants sued on the basis of *Lugar* (private actors sued under § 1983) may be held liable for damages under § 1983 only if they failed to act in good faith in invoking the unconstitutional state procedures, that is, if they either knew or should have known

---

[3] [Doc. No. 503].
[4] [Id.].

2

that the statute upon which they relied was unconstitutional." *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993).

The second contested issue of law concerns punitive damages. Plaintiffs argue that Richwood Correctional Center ("RCC") and LaSalle Management Company ("LMC") (collectively "Companies") are subject to punitive damages. Defendants admit that the Fifth Circuit has allowed punitive damages against private establishments, such as the Companies, to be decided by the jury, but Defendants believe the Fifth Circuit is incorrect and reserve their right to appeal this issue.

The jury will receive instructions on whether to consider awarding punitive damages against the Companies. *Moore v. LaSalle Management Company, LLC*, 41 F.4th 493, 514 (5th Cir. 2022).

Third, Plaintiffs assert that the "function as a unit" theory is applicable in this case and serves to establish both causation and liability of the individual Defendants for the injuries sustained by Erie Moore, Sr. ("Moore"). Defendants contend that liability must be assessed individually for each defendant, based solely on each individual action a Defendant personally took. And that if this theory is applied at trial, it would seek to include former named defendants who have been dismissed with prejudice. Additionally, Defendants argue that just because the Fifth Circuit ruled that a jury could find that the "function as a unit" theory applied in this case, they cannot use the theory to lessen their burden of proof.

In *Simpson v. Hines*, 903 F.2d 400, 403 (5th Cir. 1990), ten police officers entered Simpson's cell and collectively used force against him. The defendants argued

3

that they could not be held individually liable absent evidence that each defendant's actions caused severe injuries. *Id*. The Fifth Circuit found that argument unpersuasive because the officers functioned as a unit once inside Simpson's cell. *Id*. In this case, the Fifth Circuit ruled that the case for a "function as a unit" theory is even stronger. *See Moore*, 41 F.4th at 506.

Based on the Fifth Circuit's ruling in *Moore*, the Court will provide a jury instruction allowing the jury to find causation as to the Defendants under the "function as a unit" theory. However, the Court agrees with the Defendants that this theory pertains solely to causation, not to liability. The Fifth Circuit stated, "a reasonable jury could find on this record that the Individual Defendants (save for Mitchell) all had the same 'identity' of 'purpose' and 'action' in dragging Moore from his cell to the Four-Way to finish him." *Moore*, 41 F.4th at 403. Thus, it is the jury's role to deliberate and decide whether Defendants acted as a unit in using excessive force. But in doing so, the jury must still deliberate as to separate individual liability under 42 U.S.C § 1983.

In the fourth contested issue of law, Plaintiffs contend that the Companies are a single integrated enterprise and joint employers of all individual Defendants and officers working at RCC. Defendants state that Plaintiffs never pleaded their single business enterprise theory. Alternatively, Defendants argue it is inapplicable.

Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of his legal argument. *See* 5 C. Wright & A. Miller, Federal Practice & Procedure § 1219,

4

pp. 277–278 (3d ed.2004 and Supp.2010). Accordingly, the plaintiff does not need to plead specific theories of recovery in the complaint. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). The allegations of liability and joint liability against RCC and LMC in the Third Amended Complaint are sufficient.[5] Therefore, the jury will receive a proper instruction on the single integrated enterprise theory, allowing them to determine whether the theory is applicable in this case.

Fifth, Plaintiffs assert that RCC, LMC, and the City of Monroe's (the "City") (collectively, the "Organizational Defendants") *Monell* liability may be predicated on the conduct of the Organizational Defendants' employees and agents who are not named defendants or found individually liable. Defendants claim that *Monell* liability can only be established through an official policy or custom of which the policymaker had knowledge, and which was a constitutional violation. Moreover, Defendants contend that the conduct of Defendants who have been previously dismissed with prejudice cannot form the basis for *Monell* liability.

After the Fifth Circuit's revival of nearly all of Plaintiffs' claims, this Court held that the Organizational Defendants can be liable, under *Monell*, for the conduct of the previously dismissed Defendant, Warden Hanson. In dismissing Warden Hanson, this Court held that "[i]t has never been the rule that to be liable under *Monell*, the final policymaker must also be individually liable."[6] Further, "[i]t is not that the policymaker must have violated Moore's constitutional rights, but rather

---

[5] [Doc. No. 140].
[6] [Id. at 15].

5

that someone acting pursuant to the policy violated Moore's constitutional rights."[7] This Court made clear that Warden Hanson's dismissal did not affect the viability of Plaintiffs' *Monell* claims because his dismissal was a the result of a redundancy as the municipality's policymaker.[8] "Yet, to prevail on *Monell*, the Fifth Circuit stated that Plaintiffs must show (1) "an official policy (or custom)," (2) that "a policy maker can be charged with actual or constructive knowledge," and (3) "a constitutional violation whose 'moving force' is that policy (or custom)." *Moore*, 41 F.4th at 509.

Therefore, Plaintiffs can still assert *Monell* liability for a constitutional violation based on Warden Hanson, as the policymaker, even though he has been dismissed. And such liability can be imposed on individuals acting pursuant to the policy, such as the guards, because it is alleged that, despite being dismissed on technical grounds, the guards were still allegedly acting in furtherance of an unconstitutional violation.

The sixth disputed legal issue is whether RCC and LMC can be held vicariously liable under Section 1983 for the actions of employees who are neither named nor found individually liable, provided those employees have not been previously dismissed with prejudice. Defendants contend that vicarious liability applies solely to the Plaintiffs' state law claims and can only be imposed if a named defendant is found individually liable.

As to the federal vicarious liability claims, this Court held that "Section 1983 vicarious liability claims are still not legally cognizable against any defendant." *See*

---

[7] [Id.].
[8] [Doc. No. 478, pp. 14-17]. *See also Moore,* 41 F.4th at 509-12.

6

[Doc. No. 478, p. 17] (citing *Adames v. Perez*, 331 F.3d 508, 513, n.3 (5th Cir. 2003) ("Vicarious liability is an untenable theory of recovery in a § 1983 action.")). Thus, this issue has been dismissed and may not be reasserted at trial.

The seventh disputed legal issue raised by the Plaintiffs is that for the Organizational Defendants to have *Monell* liability for Moore's death, it is not required to identify which individual was acting on their behalf or which specific act caused Moore's death. However, Defendants contend that for *Monell* liability to attach in this case, Plaintiffs must demonstrate that a specific policy, procedure, or custom was implemented and was the direct cause of Moore's death. Alternatively, Defendants argue that the dismissed defendants' constitutional actions were not raised on appeal and cannot be resurrected in this way.

Defendants argue that whether an individual was "acting on their behalf" is not an element of a *Monell* claim. But neither is proving a specific individual and a specific act. All that *Monell* requires is (1) an official policy (or custom), (2) that a policymaker had actual or constructive knowledge of, and (3) a constitutional violation (excessive force) that was the policy or custom that was the moving force behind the violation of a constitutional right. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247–49 (5th Cir. 2003).

Thus, as is well established, the viability of a *Monell* claim requires a constitutional violation. Defendants' argument that an individual Defendant must be adjudged liable in his or her individual capacity is misplaced. The jury could find that the guards acted in concert to violate Moore's constitutional rights at the direction of

a policy or custom established by Warden Hanson, and that this custom itself violated Moore's constitutional rights. *See Moore*, 41 F.4th at 509–13.

Therefore, Plaintiffs can still assert *Monell* liability with Warden Hanson as the final policymaker, even though he has been dismissed. And such causation can be imposed by someone acting pursuant to the policy, such as the guards. *See* [Doc. No. 478, p. 15].

The eighth contested issue of law concerns RCC and LMC's vicarious liability for Moore's death. Plaintiffs argue that it is unnecessary to identify which specific employee caused the death, so long as it is established that one of the employees acting on their behalf was responsible. Defendants do not dispute this general principle but assert that the principle does not apply if the individual in question has either been dismissed with prejudice or was not previously found liable.

In prior cases, this Court has provided—and will provide in this case—a jury instruction stating that for RCC and LMC to be held vicariously liable under state law, it is not required to identify which specific employee acting on their behalf caused the death, as long as the jury finds that one of the employees was responsible.

For the ninth issue of law, Plaintiffs argue that once they prove an actor (whether an individual Defendant or other RCC or LMC employee) engaged in tortious conduct that exposed Moore to a risk of harm, the burden of proof shifts to the actor to prove they did not cause Moore's death. Defendants argue that general tort principles and specifically the Restatement of Torts do not apply because more specific Louisiana and federal laws on the subject exist.

The burden of proof for Moore's wrongful death claim is for Plaintiffs to prove his death was caused by Defendants under state causation principles. *Moore*, 41 F.4th at 504. "To prevail on an excessive-force claim, a plaintiff need only show '(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Id*. at 505. Thus, "Moore's survivors do not have to show that the Individual Defendants caused his death to recover for excessive force." *Id*.

As identified previously, the "function as a unit" instruction will be given to the jury in determining the causation of Moore's death. The burden-shifting analysis in Restatement (Third) of Torts: Liability for Phys. and Emot. Harm, § 28(b) (2010) does not apply and will not be given as an instruction.

The tenth issue of law is whether the Court should instruct the jury on the presumption of causation under *Housley v. Cerise*, 579 So.2d 973, 980 (La. 1991). Defendants argue that the *Housley* presumption is inappropriate because it does not apply to federal claims and Plaintiffs cannot establish all three elements required for *Housley*.

To obtain the benefit of the *Housley* presumption, the plaintiff must show that "(1) he was in good health prior to the accident; (2) commencing with the accident, the symptoms of the disabling condition appeared and continuously manifested themselves afterwards; and (3) there is a reasonable probability of a causal connection between the accident and the disabling condition." *Thompson v. GEO Group, Inc.*, 838 Fed.Appx. 36, 38 (5th Cir. 2020) (citing *Housley v. Cerise*, 579 So.2d

9

973, 980 (La. 1991). When there is conflicting evidence regarding causation of the injury, a *Housley* presumption is inappropriate. *Gober v. Walgreen Louisiana Co.*, 80 So.3d 9, 14 (La. App. 2d Cir. 2011). Here, the evidence regarding how Moore's injuries occurred is conflicting. The injuries might have happened before his initial arrest, during the altercation with Vernon White, when Moore was extracted from his cell, when he was dropped while being transferred, or while in the Four-Way. As a result, the Court will not provide the *Housley* presumption as a jury instruction.

Plaintiffs assert that the eleventh contested issue of law relates to concurrent causation in Plaintiffs' non-survivorship claims. Plaintiffs argue that the Fifth Circuit's opinion about concurrent causation shows Plaintiffs can prove causation for the wrongful death by showing that an individual Defendant's act "could have caused" Moore's death. *Moore*, 41 F.4th at 508 n. 42. Defendants argue that the standard for substantial factor causation is not whether an act "could have caused" the injury at issue but instead whether it was a substantial factor in bringing about the harm.

The Fifth Circuit opinion in *Moore* used the standard in *Bonin v. Ferrellgas, Inc.*, 877 So.2d 89 (La. 2004), to determine whether there were factual disputes as to causation in Moore's wrongful death claim. *Moore*, 41 F.4th at 507. Under *Bonin*, Plaintiffs can prove causation by showing "the conduct in question was a substantial factor in bringing about the accident." 877 So.2d at 94. Thus, Plaintiffs may prove causation for the wrongful death claim by showing the conduct in question was a "substantial factor" in bringing about the accident. To show the conduct was a "substantial factor," the jury should consider "whether each of the causes played a

10

role so important in producing the result that responsibility should be imposed upon each item of conduct, and whether the actor's conduct has created a force or series of forces which are continuous and active operation up to the time of the harm." *Moore,* 41 F.4th at 507. (quoting *Bonin,* 877 So.2d at 94). This language will be used for the jury instruction, rather than stating that the Defendants "could have caused" Moore's injuries.

Lastly, for the twelfth issue of law, Plaintiffs argue that their *Monell* claim is that RMC, LMC, and the City had a custom of using excessive force. Defendants contend Plaintiffs' explanation of the *Monell* practice or custom is overbroad and that the Fifth Circuit confined the custom or practice of excessive force to the Four-Way and use of chemical spray to punish prisoners.

In the operative pleading, Plaintiffs allege that the corporate Defendants are liable under *Monell* due to a custom or practice of excessive force.[9] As also previously ruled on, both claims of a custom or practice of excessive force by using the Four Way/chemical spray, and/or failure to train as to a custom of excessive force remains.[10] "Only insofar as Plaintiffs may use evidence of insufficient training at trial to prove a custom of excessive force promulgated by Corporate Defendants and also attributable to the City."[11] Moreover, the Fifth Circuit held that "[a] reasonable jury could conclude a custom existed to use the Four-Way and chemical spray to punish prisoners." *See Moore,* 41 F.4th at 510.

---

[9] [Doc. No. 140, pp. 27, 33, 40, 41, 42].
[10] [Doc. No. 423, pp. 21-22].
[11] [Id. at 21.].

11

Accordingly, at trial, Plaintiffs are limited to asserting claims of failure to train regarding excessive force and alleging a policy or custom of excessive force existed in the use of the Four-Way and chemical spray. Plaintiffs may not introduce broad evidence of excessive force at RCC unrelated to these specific claims.

### III. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that the parties comply with the above rulings as they relate to the issues raised in Plaintiffs' Pretrial Memorandum [Doc. No. 497] and Defendants' Pretrial Memorandum [Doc. No. 499].

MONROE, LOUISIANA, this 18th day of July, 2025.

_____
Terry A. Doughty
United States District Judge