`UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **ERIE MOORE JR ET AL** | **CASE NO. 3:16-CV-01007** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LASALLE CORRECTIONS INC ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM ORDER**

Pending before the Court is a Motion for Conflict Free Counsel [Doc. No. 519] filed by Plaintiffs Erie Moore, Jr., Tamra Green, and Tiffany Robinson (collectively "Plaintiffs"). Defendant The City of Monroe filed a Response [Doc. No. 525]. Defendants c/o Reginald Curley, Jody Foster, Sgt. Gerald Hardwell, William Mitchell, c/o Jeremy Runner, Sgt. Reginald Williams, LaSalle Management Co. LLC., Richwood Correctional Center, LLC, and Christopher Loring (collectively, "Defendants") filed an Opposition [Doc. No. 530].

**I.   FACTS AND BACKGROUND**

This case has a long procedural history and arises out of the death of an inmate at Richwood Correctional Center ("RCC"). As related to this Motion, RCC and LaSalle Management Corporation ("LMC") (collectively, "Corporate Defendants") are represented by Provosty, Sadler & deLaunay, APC ("Provosty"). Also represented by Provosty are the individual Defendants.[1]

---

[1] The individual Defendants are Reginald Curley, Jody Foster, Gerald Hardwell, Willim Mitchell, Jeremy Runner, and Reginald Williams.

1

Plaintiffs argue that defense counsel from Provosty have a conflict of interest because Provosty concurrently represents LMC, RCC and the individual Defendants. Plaintiffs assert that the conflict can only be remedied by (1) LMC and RCC agreeing to fully indemnify the individual Defendants represented by Provosty and the Defendants represented by Provosty provide fully informed consent to the conflict, or (2) be disqualified from representing either the individual Defendants or the Corporate Defendants.

## II. LAW AND ANALYSIS

"A motion to disqualify is a substantive motion affecting the rights of the parties and is determined by applying standards developed under federal law." *MacNair v. Chubb Eur. Grp. SE*, No. CV 23-761, 2025 WL 1115681, at *3 (E.D. La. Apr. 15, 2025) (citations omitted). Disqualification cases are governed by state and national ethical standards adopted by this Court. *Id*. And when "considering attorney disqualification, the court considers (1) the local rules in the district; (2) the American Bar Association's ("ABA") Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct." *Id*. However, "[t]he local rules promulgated by the local court itself are the most immediate source of guidance for a district court." *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir .1995). Likewise, "the ethical rules announced by the national profession," the public interest, and the litigant's rights" are also relevant to inquiry. *Id*. The Western District of Louisiana has adopted the Louisiana State Bar Association's Rules of Professional Conduct. *See* Local Civ. Rule 83.2.4. These rules are identical to the

ABA's Model Rules of Professional Conduct. This case implicates at least one of these rules. Rule 1.7 states in relevant part:

> RULE 1.7. CONFLICT OF INTEREST: CURRENT CLIENTS
>
> (a) ... a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>> (1) the representation of one client will be directly adverse to another client; or
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client [or] a former client....
>
> (b) Notwithstanding the existence of a concurrent conflict of interest ..., a lawyer may represent a client if:
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>> (2) the representation is not prohibited by law;
>> (3) ...; and
>> (4) each affected client gives informed consent, confirmed in writing.

The interests of a municipality and the interests of its employees may be adverse to one another in section 1983 cases. *Nagle v. Gusman*, No. CIV.A. 12-1910, 2015 WL 1525827, at *1 (E.D. La. Apr. 2, 2015) (citing *Van Ooteghem v. Gray*, 628 F.2d 488, 495 (5th Cir. 1980), *aff'd in part, vacated in part on other grounds*, 654 F.2d 304 (5th Cir. 1981) (en banc) (per curiam)); *see also Shadid v. Jackson*, 521 F. Supp. 87, 90 (E.D. Tex. 1981). As noted by *Dunton v. Suffolk Cnty., State of N.Y.*, 729 F.2d 903, 907 (2d Cir.), *amended*, 748 F.2d 69 (2d Cir. 1984), conflicts may arise in two different ways. *See Van Ooteghem*, 628 F.2d at 495. On the one hand, an employee may be able to transfer some liability to the municipality by demonstrating that their actions were taken in accordance with an official policy. *Id*. On the other hand, the municipality might try to avoid liability by arguing that the employee was acting outside the scope of their official duties. *Id*.

3

Plaintiffs significantly rely on persuasive authority found in *Nagle* and *Brown v. Burmaster,* No. 22-847, 2025 WL 1019399, *2 (E.D. La. Apr. 4, 2025). In *Nagle*, the court ruled that joint representation of Sheriff Gusman (in his official capacity), correctional staff, and medical personnel posed significant conflicts—particularly regarding *Monell* liability. 2015 WL 1525827 at *2. The court ruled that to proceed with the case, those conflicts had to be cured via dismissal of claims, separate counsel, indemnity, or informed waivers. *Id*. In arriving at its holding, the court relied on a footnote in *Van Ooteghem,* which stated that although no party raised the question of conflict of interest, "a serious problem of conflict of interest could exist in future § 1983 actions in which one attorney represents both a county and a county official individually." *See Van Ooteghem*, 628 F.2d at 495 n.7.

In *Brown*, the plaintiffs filed a motion to determine conflict-free counsel after discovering that the City Attorney's Office was set to represent both Officer Burmaster and the City of New Orleans. 2025 WL 1019399 at *1. The court held that the interest of the municipality and its employees may be adverse to one another in section 1983 cases, despite the defense stating that they were "unifed on every issue regarding their theory of defense" and that Burnmaster knowingly signed a representation agreement with the City's Attorney." *Id*. The court stated that although Burnmaster had already attempted to waive the concurrent conflict, a question remained whether the document contained sufficient information to satisfy the requirement of informed consent. *Id*. So the court held a hearing in open court to ensure Burnmaster was informed of any potential conflicts.

4

Here, Defendants argue that, aside from *Van Ooteghem*, none of the cases cited by Plaintiffs constitute binding precedent in this Court. True. Moreover, Defendants contend that while the claims and factual circumstances in the Eastern District cases may bear some resemblance to the present matter, Defendants assert that there are significant distinctions that render those authorities inapplicable or unpersuasive. The Court disagrees.

Applying the foregoing reasoning from the Eastern District of Louisiana and the Fifth Circuit to the facts of this case, the Court concludes that LMC and RCC may have interests that are adverse to those of the individual Defendants. As a result, there is a significant risk that the representation of each Defendant will be directly adverse or materially limited by the lawyer's responsibilities to the others. For example, an individual Defendant could shift part of his liability to LMC or RCC if he can show that his actions were taken pursuant to an official policy. Conversely, LMC or RCC may attempt to avoid liability by showing that an individual Defendant was not acting within the scope of his duties. Therefore, the Court finds that an agreement similar to the one in *Nagle* would be curative of the conflicts in this case, with (1) indemnification limited to those claims where a conflict exists—claims for which liability may be transferred between individual defendants and the corporation, and (2) Plaintiffs dropping their punitive damages claims that pose the same negative incentives for representation.

There are thus two options to remedy the conflict, one which would not require a continuance and one which would. The first option ("Option One") is that each of

the individual defendants file into the record two documents: (1) an affidavit by the defendants waiving the potential conflict of interest regarding the § 1983 claims with the other defendants represented by the same counsel, and (2) an affidavit by defense counsel, averring (a) that LMC and RCC has agreed to indemnify the individual defendants for compensatory damages, costs, and attorneys' fees and (b) that counsel has met with the defendants and explained the litigation, the claims against the defendants, the ways in which the defendants' interest is potentially adverse to the interests of the other defendants represented by the same counsel, the effect of the indemnification agreement, and the effect of waiving these conflicts. And in exchange, Plaintiffs drop the punitive damages claims against LMC and RCC.

The second option ("Option Two") is to appoint new counsel to represent the individual Defendants, which—given the late stage of the case—would require a trial continuance.

### III. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that the Motion for Conflict-Free Counsel [Doc. No. 519] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties inform the Court by July 23, 2025, at 5:00 p.m. C.S.T if an agreement has been made as to the two options.

**IT IS FURTHER ORDERED** that if the agreement has been reached as to Option One, then Plaintiffs move for dismissal of the punitive claims against LMC and RCC by July 24, 2025, at 8:00 a.m. C.S.T.

**IT IS FURTHER ORDERED** that if the parties come to an amicable resolution of the conflict, then defense counsel must file affidavits for all defendants certifying their informed consent by July 28, 2025 at 8:00 a.m. C.S.T under seal.

**IT IS FURTHER ORDERED** that should the parties not inform the Court of an agreement of Option One by July 23, 2025 at 5:00 p.m., the Court will implement Option Two.

MONROE, LOUISIANA, this 22nd day of July, 2025.

*[signature]*
Terry A. Doughty
United States District Judge