# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **ERIE MOORE JR ET AL** | **CASE NO. 3:16-CV-01007** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LASALLE CORRECTIONS INC ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM ORDER

Pursuant to the Pretrial Conference held in the above proceeding on June 12, 2025, the parties were to brief objections to the opposing parties' exhibit list [Doc. No. 503]. Plaintiffs Erie Moore, Jr., Tamara Green, and Tifffany Robinson (collectively, "Plaintiffs'), filed their objections to Defendants'[1] exhibits [Doc. No. 572] and Defendants filed their objections to Plaintiffs' exhibits [Doc. No. 571].

## I. DEFENDANTS' EXHIBITS

### a. Video Exhibits

Plaintiffs have withdrawn objections to several video exhibits listed by Defendants.[2] However, Plaintiffs maintain objections to Defendants' video exhibits from camera 16 listed as "My Book Video Files Produced by OPSO – RCC, main Control – Camera 16." Pursuant to this Court's prior ruling,[3] Plaintiffs' objection to this video is **DENIED**.

---

[1] Defendants are the City of Monroe, Reginald Curley, Jody Foster, Gerald Hardwell, William Mitchell, Jeremy Runner, Reginald Williams, LaSalle Management Co. LLC., and Richwood Correctional Center, LLC, (collectively, "Defendants").
[2] [Doc. No. 572, p. 3].
[3] [Doc. No. 600].

Plaintiffs further object to Defendants' video exhibits listed as "RCC Homicide DVD #1; RCC Homicide DVD #2; Videos Pt. 1; Videos Pt. 2; and Videos Pt. 3,[4] because such has not yet been produced for Plaintiffs to review. The admissibility of these videos is **DEFERRED**.

### b. Reference to Vernon White's Death

Plaintiffs ask that the Court exclude or require redaction of any suggestions of a link between Vernon White's ("White") death and Moore.[5] Plaintiffs further contend that any mention of White's death should also be redacted.[6] This Court has previously ordered the exclusion of any testimony suggesting that Moore was responsible for White's death.[7] That ruling was limited to that specific issue, and this Court did not determine that White's death is wholly inadmissible. Furthermore, the Court previously held that the interaction between White and Moore is relevant and would not be excluded from trial.[8]

In their requests, Plaintiffs object to several of Defendants' exhibits which involved White's death. They are as follows:

> D42 (White's Autopsy and Toxicology Report)
> D109 (White's Records from Ouachita Parish Coroner's Office)
> D110 (White's Death Certificate)
> D111–D115 (White's Medical Records)

Although White's death is not relevant, any injuries White sustained during the altercation with Moore are pertinent to establishing any possible injuries to

---

[4] [Doc. No. 572, pp. 3–4].
[5] [Id. at p. 4].
[6] [Id.].
[7] [Doc. No. 511, p. 5].
[8] [Id.].

2

Moore that may have contributed to his death. Evidence of an altercation between White and Moore may indicate that Moore sustained injuries during the encounter. Furthermore, such evidence is relevant to assessing the officers' justification for entering the cell and extracting Moore following the altercation. Therefore, D42 and D109–D115 are **ADMISSIBILE** for those purposes.

Plaintiffs also request that the following exhibits be redacted to remove any references to White's death or the investigation of Moore for homicide in connection with White's death. The exhibits are listed below:

>D61 (Search Warrant 10/13/15)
>D62 (Search Warrant 10/14/15)
>D63 (OPSO Records – Homicide Investigation)
>D117 (Dr. Frank Peretti – Moore medical records)

Exhibits D61, D62, and D63 pertain to the homicide investigation of Moore in relation to White's death. Although relevant, the prejudice to Plaintiffs outweighs the relevance. Exhibits D61, D62, and D63 will be **EXCLUDED** from trial. D117 is **ADMISSIBILE**. However, the reference on page 27 that Moore attacked and killed White shall be **REDACTED**.

  c. *Evidence of PCP in Moore's System*

Plaintiffs request the exclusion of any evidence regarding Moore's alleged intoxication, including positive PCP test results, pending the Court's ruling on admissibility. However, the prior ruling that was deferred addressed Nurse Mitchell's testimony regarding Moore's intoxication based on his perception, pursuant to Rule 701 of the Federal Rules of Evidence. This matter did not concern positive test results for PCP. Plaintiffs' request is therefore **DENIED**.

      *d. Defendants' Out of Court Statements*

Plaintiffs seek to exclude the following exhibits based on hearsay:

      D60 (OPSO Investigation and Incident Report)
      D63 (OPSO Records)
      D82 (Linda Badger Personnel File)
      D90 (Yolanda Jackson Records)
      D100–D108 (Statements of Curley, Hale, Hardwell, Loring, Mitchell, Runner, Walker, and Williams)
      D127–D136 (Audio of Statements of Curley, Hale, Hardwell, Loring, Mitchell, Runner, Walker, and Williams)
      D6, p. 28 (Loring, Mitchell, Runner, Walker, and Williams' Unusual Occurrence Report)
      D39 (Nurse Mitchell's Notes)
      D41 (Nurse Mitchell's Notes)
      D46 (Unusual Occurrence Report)

The above exhibits are objected to as hearsay. While the exhibits may constitute hearsay, numerous exceptions to the hearsay rule exist, some of which hinge on whether the declarant testifies. Without knowing the specific questions and testimony elicited, it is impossible to rule upon these exhibits now. Therefore, their admissibility is **DEFERRED** until trial.

      *e. Law Enforcement Bulletins and Safety Reports*

Plaintiffs object to the following exhibits that are in reference to Moore's encounters with law enforcement on October 11-12, 2015:

      D53 (Moore Traffic Stop)
      D54 (Moore Traffic Stop)
      D55 (Officer Safety Alert)

The Court **DEFERS** the ruling on the admissibility of D53 and D54. D55 is an officer safety alert that was sent out to warn other officers of Moore's behavior. Plaintiffs claim that none of the Defendants were aware of the safety bulletin's

contents before Moore was incarcerated at Richwood. However, the safety bulletin serves as supporting evidence of Moore's alleged dangerous behavior before his transfer to Richwood. This information is pertinent both to the testimony of the Richwood officers about Moore's conduct while at Richwood and to the circumstances surrounding Moore's death. Therefore, D55 is **ADMISSIBLE.**

  *f. Basic Jail Guidelines ("BJG") Monitoring Documents*

Plaintiffs object to the following exhibits:

  D74 (BJG 8/24/12 Monitoring Report)
  D75 (BJG 9/04/13 Monitoring Report)
  D76 (BJG 9/17/14 Monitoring Report)
  D77 (BJG 7/23/15 Monitoring Report)
  D78 (BJG 7/25/16 Monitoring Report)

The Court **DEFERS** ruling on these exhibits until trial.

  *g. Other Defense Exhibits*

Objections to Defendants' exhibits, D3–D5, are **DEFERRED** until trial. Moreover, objections to D6–D28 are **DEFERRED** until trial, although some evidence will be allowed for the limited purpose of Plaintiffs' *Monell* claim.

  D32-D33- Exclude. Not relevant.
  D39. Deferred.
  D41-D42. Deferred.
  D46-D47. Deferred.
  D50. Deferred.
  D53-D59. Admissible.

## II. PLAINTIFFS' EXHIBITS

  *a. October 30, 2016-Chemical Spray Incident*

Defendants object to the following Plaintiffs' exhibits:

  P41 (Sgt. Rosenthall Unusual Occurrence Report)

5

        P44 (Sgt. Rosenthall Resignation Letter)
        P45 (Sgt. Rosenthall Termination Letter)
        P109 (Christopher Loring Termination Report)
        P140 (Roderick Douglas Termination Report)
        P142 (Memo from Turner to Hanson)
        P227 (Sgt. Rosenthall Termination Documents)
        P268–P280 (Termination, Plea Agreements & Judgments)
        P333 (Douglas Rule Violation Report)

All exhibits above relate to an incident at Richwood on October 30, 2016, when several prison guards used chemical spray on five restrained detainees at Richwood. This Court previously ruled that evidence of this incident was admissible as an attempt to prove that a custom of abusing inmates in the Four-Way area existed at Richwood.[9]

As mentioned above, testimony and evidence concerning the October 30, 2016, incident shall be admitted solely for the limited purpose of Plaintiffs' *Monell* claim. The criminal prosecutions of the guards, however, are irrelevant to the *Monell* claim; accordingly, exhibits P273 through P280 are hereby **EXCLUDED**.

A substantial portion of the remaining evidence may be cumulative, and the Defendants' objections on the basis of cumulative testimony are **DEFERRED**.

    b. *Single Integrated Enterprise Evidence*

This Court previously held that the jury will be instructed on the theory that Richwood and LaSalle are a single integrated enterprise.[10] Defendants dispute that Richwood and LaSalle are a single integrated enterprise and object to the following exhibits:

        P18

---

[9] [Doc. No. 549, pp. 4–5].
[10] [Doc. No. 531, pp. 4–5].

6

       P22
       P32 through PP35
       P54
       P191
       P223
       P228
       P239 through P244
       P250
       P258
       P261
       P263 through P264
       P266 through P267
       P375

Many of these exhibits use logos, email addresses, and LaSalle's supervision of Richwood's employees. Evidence of the single integrated enterprise theory will be allowed; however, the extent thereof is **DEFERRED** until trial.

    c. *Monell Claims*

Plaintiffs allege that Richwood, LaSalle, and/or City of Monroe had a policy which allowed guards to use excessive force against inmates in the Four-Way area. Plaintiffs seek to introduce evidence supporting their claims. Defendants object to the following exhibits:

       P20 (Runner Employee Evaluation)
       P265 (Runner Employee Evaluation)
       P224 (LMC emails)
       P252 (RCC Bill to City of Monroe)
       P259 (Hardwell Employee Evaluation)
       P261 (Hardwell LaSalle Computer Policy)

Exhibit P252 is not relevant to the *Monell* claim and will be **EXCLUDED**. The admissibility of the remaining exhibits will be **DEFERRED** until trial.

    d. *Department of Public Safety & Corrections Exhibits*

Defendants object to the Louisiana Department of Public Safety and Corrections' ("DPSC") regulation on use of force because Moore was not a DPSC inmate. The following exhibits are objected to:

> P80 (La DPSC Regulation)
> P82 (La. DPSC Correctional Officers Oath Regulation)
> P84 (La. DPSC Serious Unusual Occurrence Review Panel)
> P85 (La. DPSC Regulation- Monthly Summary Report)

Warden Hanson testified in his deposition that Richwood's "use of force" policy was based upon the La. DPSC regulation. Therefore, exhibit P80 will be **ADMITTED**. Exhibits P82, P84, and P85 will be **EXCLUDED** because they do not apply to Moore.

### e. *Ouachita Parish Sheriff's Office Reports*

Defendants object to three exhibits that are reports from the Ouachita Parish Sheriff's Office. Plaintiffs seek to introduce these records as business records under Federal Rule of Evidence 803(8) to establish the truth of the matters asserted. However, this Court concludes that sheriff's office reports do not meet the criteria for admissible business records. Were that the case, every report generated by a law enforcement agency would be automatically admissible for the truth of its contents. These reports are designed mainly to provide information for ongoing investigations and were not prepared for purposes independent of litigation, as they were created to investigate possible criminal conduct likely to lead to prosecution.

Therefore, exhibits P132 and P340 are **EXCLUDED** and not admissible as business records.

### f. *Photographs and Videos*

Defendants object to the following Plaintiffs' exhibits:

8

> P199 (Toledo CT Scan PowerPoint)
> P182 (Photos of Moore in hospital)
> P296 (Photos of Moore and family)

P199 is admissible upon the testimony of Dr. Gonzalez-Toledo, who is alleged to have created the presentation. The admission of the photos in P296 will be **DEFERRED**. Family photographs of Moore and/or his family will likely be admitted, but many photos of Moore in the hospital may be too prejudicial. The Moore funeral pamphlet and obituary is **EXCLUDED**.

Defendants further object to exhibits P297 through P311, which consist of videos of Moore singing. Upon proper authentication, *one* such video will be **ADMITTED**, while the remaining videos are deemed cumulative.

Additionally, Defendants object to exhibits P342 through P344, which are photographs of Defendants Loring, Runner, and Williams that are offered to show their height and weight at the time of the incident. Upon proper authentication, these photographs will be **ADMITTED**.

### g. *Financial Documents*

Plaintiffs' exhibits P233 through P238 are financial documents showing financial information for LaSalle and Richwood. Plaintiffs seek to introduce these documents for purposes of its punitive damage claim against Richwood and LaSalle. This Court previously determined that punitive damages could be awarded against LaSalle and/or Richwood. Net worth can be an important factor for the jury to consider in determining an amount of punitive damages. *Woods-Drake v. Lundy*, 667 F.2d 1198, 1203 n.9 (5th Cir. 1982). Additionally, evidence of a defendant's financial

9

worth is "traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded." *Greater New Orleans Fair Housing Action Center v. Kelly*, No. 18-8177, 2020 WL 4875569 at *1 (E.D. La. Jan. 17, 2020) (quoting *United States v. Big D Enters., Inc.*, 184 F.3d 924, 932 (8th Cir. 1999)).

Because net worth and/or financial condition is key evidence as to this claim, exhibits P233–P235 and P238 will be **ADMITTED** upon proper authentication. However, Exhibits P236 and P237 are **EXCLUDED**.

    h. *Special Interrogatory*

P248 is LaSalle's supplemental response to a question to the location of all the security cameras in Richwood and is thus relevant and **ADMISSIBLE**.

    i. *Other Plaintiffs' Exhibits*

The Court will take the foregoing actions as to additional objected-to exhibits:

    P1. Not admissible. Relevance.
    P2. Not admissible. Relevance.
    P15. Admitted upon proper authentication.
    P31. Deferred.
    P37. Deferred.
    P50–P51. Deferred.
    P52. Excluded.
    P53. Deferred.
    P56–P57. Deferred.
    P129–P130. The writing on the photos must be redacted.
    P147–P148. Not admitted. Relevance and subsequent remedial measure.
    P152. Not admitted. Relevance.
    P153–P154. Admitted upon proper authentication.
    P156. Not admitted. Relevance.
    P213. Not admitted. Subsequent remedial measure.
    P221. Deferred.
    P226. Deferred.
    P249. Not admitted. Relevance.
    P251. Not admitted. Relevance.

    P254. Not admitted. Relevance.
    P256–P257. Deferred.
    P286. Not admitted. Unfair prejudice.
    P287. Admitted upon authentication.
    P314. Deferred.
    P335. Admitted upon authentication.
    P339. Deferred.
    P349, Admitted upon proper authentication.
    P350. Not admitted. Relevance.
    P352–P373. Deferred.
    P374. Deferred.
    P743. Deferred.

### III. CONCLUSION

For the reasons stated above,

Both parties' objections [Doc. Nos. 571 and 572] are **GRANTED IN PART**, **DEFERRED IN PART** and **DENIED IN PART**.

MONROE, LOUISIANA, this 30th day of September, 2025.

_____
Terry A. Doughty
United States District Judge