**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **ERIE MOORE, JR., ET AL.** | * | **CIVIL ACTION NO.: 3:16-CV-01007** |
| | * | |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| | * | |
| **LASALLE CORRECTIONS, INC.,** | * | **MAG. JUDGE KAYLA D. McCLUSKY** |
| **ET AL.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**LASALLE DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**
**PURSUANT TO FED. R. CIV. P. 50(B)**

Deirdre C. McGlinchey (24167)
dmcglinchey@joneswalker.com
Andrew R. Lee (21196)
alee@joneswalker.com
Robert K. Denny (33092)
rdenny@joneswalker.com
JONES WALKER LLP
201 St. Charles Ave.
New Orleans, Louisiana 70170
Telephone: (504) 582-8000

H. Bradford Calvit (18158)
bcalvit@provosty.com
John D. Ryland (20355)
jryland@provosty.com
Eli J. Meaux (33981)
emeaux@provosty.com
PROVOSTY, SADLER & DELAUNAY, APC
4615 Parliament Drive, Suite 200
P.O. Box 13530
Alexandria, LA 71315-3530
Telephone: (318) 767-3133

*ATTORNEYS FOR DEFENDANTS / MOVANTS, GERALD*
*HARDWELL, JEREMY RUNNER, REGINALD WILLIAMS,*
*LASALLE MANAGEMENT CO. LLC, and RICHWOOD*
*CORRECTIONAL CENTER, LLC*

#110659594v7

# TABLE OF CONTENTS

Table of Authorities ................................................................................................iv

Summary of Argument .............................................................................................1

Relevant Procedural Background .............................................................................2

Standard for Rule 50(b) Consideration ...................................................................3

Argument .................................................................................................................3

    I.     The Verdict Holding the LaSalle Defendants Liable Is Invalid as a Matter of Law Because It Violates the Fifth Circuit's Mandate. ........................................................3

        A.    Plaintiffs Abandoned Their Challenge to the "No Deliberate Indifference" Finding; the Fifth Circuit's Mandate Governed Subsequent Proceedings. .............4

        B.    The Verdict Contradicts the Mandate. ...................................................................5

        C.    The Verdict Is Legally Impossible because *Monell* Liability Requires Policymaker Deliberate Indifference. ................................................................................................6

        D.    The "Knowledge" Versus "Deliberate Indifference" Distinction Does Not Save the Verdict. ...............................................................................................................8

        E.    The Verdict Impermissibly Imposes Respondeat Superior Liability. .....................9

        F.    The Punitive Damages Award Cannot Stand. .......................................................10

    II.    Causation Is a Constitutional Gateway That Bars Wrongful Death Liability Here. .10

        A.    The *Phillips* Mandate: Causation is the Gateway to § 1983 Wrongful Death Liability. ..................................................................................................................11

        B.    The Jury's Verdict Closed Any Constitutional Gateway to Wrongful Death Damages. ...............................................................................................................11

    III.    The Jury's "No Causation" Finding Forecloses *Monell* Liability for the Death. .......13

    IV.    The Punitive Damages Award is Constitutionally Infirm and Must be Vacated or Remitted. ...............................................................................................................13

        A.    Punitive Damages Under § 1983 Require a Constitutional Violation. .................14

        B.    The Punitive-to-Compensatory Ratio Violates Due Process. ...............................14

    V.    Alternative Argument: The Trial Evidence Was Independently Insufficient to Establish *Monell* Liability. ......................................................................................15

        A.    Plaintiffs Failed to Establish Facts That They Forecast in the Fifth Circuit. ........15

        B.    The Governing Legal Framework. ........................................................................16

        C.    Plaintiffs Failed to Establish an Unconstitutional Policy or Custom. ...................16

        D.    Plaintiffs Failed to Establish Policymaker Knowledge. .......................................18

        E.    Plaintiffs Failed to Establish Moving Force Causation. .......................................18

        F.    The Jury's Verdict Independently Forecloses Any Pepper-Spray or Four-Way Based Theory of Wrongful Death Liability. .......................................................19

        G.    The Jury's Verdict Forecloses Both Individual and Corporate Liability for Moore's Death. ........................................................................................................20

#110659594v7

VI.    The Trial Evidence Was Insufficient to Support the Jury's Findings Against Individual Defendants Hardwell, Runner, and Williams. ........................................20

    A.    The Jury's Findings Create an Internal Tension That Requires Analysis. ............20

    B.    The Evidence Was Insufficient to Establish That Williams Used Any Excessive Force or Committed Battery. ...................................................................................21

    C.    The Evidence Supporting Excessive Force and Battery Findings Against Runner and Hardwell Was Insufficient. ...........................................................................22

    D.    The Evidence Was Insufficient to Establish That Individual Defendants' Negligence Caused Moore's Death. ....................................................................22

    E.    The Jury's Findings Foreclose Any Theory Under Which Individual Defendants Caused Moore's Death Through Constitutional Violations. ................................24

VII.    Lasalle Management Company Should Not Have Been Held in Judgment. ............24

    A.    Legal Standard: Single Business Enterprise Liability Is an Extraordinary Remedy Reserved for Exceptional Circumstances. ............................................................24

    B.    Plaintiffs Failed to Plead Single Business Enterprise Liability. ...........................25

    C.    The Trial Evidence Was Insufficient to Establish Single Business Enterprise Liability. ...............................................................................................................25

CONCLUSION.................................................................................................................27

#110659594v7

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akuna Matata Invs., Ltd. v. Tex. Nom Ltd. P'ship*,
  814 F.3d 277 (5th Cir. 2016) ................................................................................3

*Alvarez v. City of Brownsville*,
  904 F.3d 382 (5th Cir. 2018) ..............................................................................12

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996)............................................................................................14

*Boeing Co. v. Shipman*,
  411 F.2d 365 (5th Cir. 1969) ................................................................................3

*Bujol v. Entergy Servs., Inc.*,
  922 So. 2d 1113 (La. 2004) ..........................................................................24, 26

*City of Canton v. Harris*,
  489 U.S. 378 (1989)..............................................................................................6

*City of Los Angeles v. Heller*,
  475 U.S. 796 (1986).....................................................................................7, 8, 10

*Comeaux v. Sasol Chems. USA LLC*,
  No. 21-1617, 2022 U.S. Dist. LEXIS 104342, 2022 WL 2112806 (W.D.
  La. Apr. 28, 2022)...............................................................................................21

*Connick v. Thompson*,
  563 U.S. 51 (2011).............................................................................6, 8, 16, 17

*Cortez v. Lamorak Ins. Co.*,
  No. 20-2389, 2022 U.S. Dist. LEXIS 142255, 2022 WL 3226941 (E.D.
  La. Aug. 10, 2022) ..............................................................................................26

*Creamer v. Porter*,
  754 F.2d 1311 (5th Cir. 1985) ............................................................................14

*Daniels v. Williams*,
  474 U.S. 327 (1986)......................................................................................12, 13

*Davidson v. City of Stafford*,
  848 F.3d 384 (5th Cir. 2017) .......................................................................16, 18

*Deas v. River West, L.P.*,
  152 F.3d 471 (5th Cir. 1998) ................................................................................3

*Doe v. Dall. Indep. Sch. Dist.*,
  153 F.3d 211 (5th Cir. 1998) ................................................................................6

*Domino v. Tex. Dep't of Crim. Just.*,
  239 F.3d 752 (5th Cir. 2001) ..............................................................................23

*Farmer v. Brennan*,
  511 U.S. 825 (1994)........................................................................................6, 23

*Ford v. Anderson Cty.*,
  102 F.4th 292 (5th Cir. 2024) ..............................................................................7

#110659594v7

*Fraire v. City of Arlington*,
957 F.2d 1268 (5th Cir. 1992) ..................................................................................16

*Grayson v. R. B. Ammon & Assocs.*,
778 So. 2d 1 (La. App. 1 Cir. 2000) ........................................................................25

*Green v. Champion Ins. Co.*,
577 So. 2d 249 (La. App. 1 Cir. 1991) ...........................................................24, 25, 26

*Kingsley v. Hendrickson*,
576 U.S. 389 (2015).................................................................................................21

*Loera v. Kingsville ISD*,
151 F.4th 813 (5th Cir. 2025) ............................................................................18, 19

*McClendon v. City of Columbia*,
305 F.3d 314 (5th Cir. 2002) ....................................................................................6

*Monell v. United States*,
436 U.S. 658 (1978).........................................................................................*passim*

*Moore v. LaSalle Mgmt. Co.*,
LLC, 41 F.4th 493 (5th Cir. 2022)...................................................................*passim*

*In re New Orleans Train Car Leakage Fire Litig.*,
690 So. 2d 255 (La. App. 4th Cir. 1996) .................................................................24

*Peterson v. City of Fort Worth, Tex.*,
588 F.3d 838 (5th Cir. 2009) ................................................................................6, 16

*Phillips ex rel. Phillips v. Monroe County*,
311 F.3d 369 (5th Cir. 2002) ..................................................................11, 12, 14, 24

*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir. 2001) ..................................................................13, 16, 18

*Rivera v. Bonner*,
952 F.3d 560 (5th Cir. 2020) ...................................................................................19

*Rubinstein v. Administrators of Tulane Educ. Fund*,
218 F.3d 392 (5th Cir. 2000) ...................................................................................14

*Saenz v. Heldenfels Bros. Inc.*,
183 F.3d 389 (5th Cir. 1999) .....................................................................................7

*Sanchez v. Young County*,
956 F.3d 785 (5th Cir. 2020) ...................................................................................16

*Simpson v. Hines*,
903 F.2d 400 (5th Cir. 1990) ...................................................................................21

*Slade v. City of Marshall*,
814 F.3d 263 (5th Cir. 2016) ...................................................................................11

*Smith v. Wade*,
461 U.S. 30 (1983)......................................................................................10, 13, 14

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003)..................................................................................................14

#110659594v7

*Tollett v. City of Kemah*,
 285 F.3d 357 (5th Cir. 2002) ...................................................................................5, 6

*Town of Haynesville, Inc. v. Entergy Corp.*,
 956 So. 26 192 (La. App. 2 Cir. 2007) .............................................................25

*United States v. Lee*,
 358 F.3d 315 (5th Cir. 2004) .................................................................................5

*Webster v. City of Houston*,
 735 F.2d 838 (5th Cir. 1984) (en banc) .............................................................17

*Wilder v. Morgan*,
 No. 6:20-01383, 2022 U.S. Dist. LEXIS 50717, 2022 WL 839128 (W.D.
 La. Mar. 18, 2022) ......................................................................................16, 17

*Williams v. Kaufman County*,
 352 F.3d 994 (5th Cir. 2003) ..............................................................................14

*Williams v. Monitowoc Cranes, LLC*,
 898 F.3d 607 (5th Cir. 2018) .................................................................................3

**Statutes, Constitutional Provisions, and Rules**

42 U.S.C. § 1983......................................................................................*passim*

Fed. R. Civ. P. 50(b) ...............................................................................*passim*

Fed. R. Civ. P. 54(b) ....................................................................................3, 4

U.S. Const., Am. XIV .....................................................................................12

#110659594v7

Defendants and Movants, Gerald Hardwell, Jeremy Runner, Reginald Williams, Lasalle Management Co. LLC, and Richwood Correctional Center, LLC (the "LaSalle Defendants"), submit this memorandum in support of their renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b).

## SUMMARY OF ARGUMENT

This motion renews arguments that all Defendants presented in their Rule 50(a) motion at the close of Plaintiffs' case-in-chief,[1] and which they reasserted at the conclusion of all evidence, maintaining the Defendants' challenge to the legal validity of the verdict.

The Fifth Circuit's mandate in this case was clear: further proceedings were to be conducted "in accordance with" the panel majority's opinion. (Doc. 393); *see Moore v. LaSalle Mgmt. Co*., LLC, 41 F.4th 493, 514 (5th Cir. 2022). A central component of that "accordance" was the finality of this Court's prior ruling that Warden Ray Hanson was not deliberately indifferent, a finding the Plaintiffs abandoned on appeal and which the Fifth Circuit consequently affirmed. Despite this, the jury returned a verdict finding the LaSalle Defendants liable under § 1983 based solely on the "deliberate indifference" of that same Warden Hanson.

This verdict is a legal impossibility. It contradicts the law-of-the-case doctrine and violates the mandate rule. Because there is no "legally sufficient evidentiary basis" to support a finding of deliberate indifference that has already been judicially foreclosed, the Court must set aside the verdict and enter judgment for the Defendants.

Independent of the mandate rule violation, the jury's own findings foreclose wrongful death liability. The jury found that neither the individual Defendants' excessive force nor the alleged unconstitutional custom was a "substantial factor" in Moore's death. Instead, the jury attributed Moore's death exclusively to negligence. Such a finding cannot support § 1983

---

[1] On October 14, 2025, after Plaintiffs rested their case-in-chief, all Defendants moved for Rule 50(a) relief, whereupon the City of Monroe presented many of these arguments. The LaSalle Defendants adopted the City's arguments and presented additional arguments.

1

liability as a matter of law. If no constitutional violation caused Moore's death, then neither the individual Defendants nor the corporate Defendants can be held liable for wrongful death damages under § 1983, and the $18 million wrongful death award must be vacated. In turn, the $23.25 million punitive damages is constitutionally infirm: measured against the remaining $1.5 million survival award, the punitive-to-compensatory ratio of 15.5:1 far exceeds the single-digit threshold the Supreme Court has identified as the constitutional boundary.

Even setting aside these threshold legal defects, the trial evidence was independently insufficient to establish *Monell* liability. The specific evidence the Fifth Circuit relied upon to reverse summary judgment, including testimony that the "Four-Way" was used to "teach prisoners a lesson," never materialized at trial. What remained was legally insufficient to establish a persistent and widespread custom, policymaker knowledge, or moving force causation under the demanding standards the U.S. Supreme Court has articulated. Additionally, Plaintiffs failed to plead or prove that LaSalle Management Company and Richwood Correctional Center constitute a single business enterprise under Louisiana law, and LaSalle Management Company is entitled to dismissal on that independent ground.

Finally, individual Defendants Hardwell, Runner, and Williams preserve challenges to the jury's findings of excessive force, battery, and negligence causation against them.

## RELEVANT PROCEDURAL BACKGROUND

This litigation started in July 2016 and proceeded through three iterations of the operative complaint. (Doc. 140.) Following extensive discovery, Defendants filed a series of dispositive motions. On October 30, 2020, this Court entered eight summary judgments in favor of Defendants dismissing the majority of Plaintiffs' claims. (Docs. 350-357.) In one of them, this Court dispensed with all § 1983 claims against Warden Ray Hanson, expressly finding that "Plaintiffs have not established that Hanson . . . w[as] deliberately indifferent to Moore's rights" as a matter of law. (Doc. 356 at 23, 46-47; Doc. 357.) The Court certified these

2

#110659594v7

rulings as final under Fed. R. Civ. P. 54(b) (Doc. 371), and Plaintiffs appealed.

On appeal, Plaintiffs challenged several of the summary judgment rulings but contested neither the Court's express finding that Hanson was not deliberately indifferent nor his dismissal. In its decision reversing some of the summary judgment rulings, the Fifth Circuit applied the abandonment doctrine, thereby affirming the unchallenged rulings. *Moore*, 41 F.4th at 502 n.2, *citing Akuna Matata Invs., Ltd. v. Tex. Nom Ltd. P'ship*, 814 F.3d 277, 282 n.6 (5th Cir. 2016). The Fifth Circuit remanded the remaining issues for trial. *Id.* at 515.

Following a two-week trial in October 2025, the jury returned a verdict for Plaintiffs, awarding $1.5 million in survival damages, $18 million in wrongful death damages, and $23.25 million in punitive damages against the LaSalle Defendants. (Doc. 663.) The Court entered final judgment on December 22, 2025. (Doc. 691.)

## STANDARD FOR RULE 50(B) CONSIDERATION

Faced with a Rule 50(b) motion, the Court must determine whether the evidence "points so strongly and overwhelmingly in favor of one party that reasonable jurors could not reach the verdict rendered." *Deas v. River West, L.P.*, 152 F.3d 471, 476 (5th Cir. 1998). The Court cannot weigh the evidence, evaluate witness credibility, or substitute its judgment for that of the jury on *factual* disputes. *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969).

This deferential standard does not, however, insulate verdicts that rest upon *legal impossibilities*. A Rule 50 motion should be granted if "the legal conclusions implied from the jury's verdict cannot in law be supported by those findings." *Williams v. Monitowoc Cranes, LLC*, 898 F.3d 607, 614 (5th Cir. 2018) (internal citation omitted).

## ARGUMENT

**I.     The Verdict Holding the LaSalle Defendants Liable Is Invalid as a Matter of Law Because It Violates the Fifth Circuit's Mandate.**

This case's procedural history compels the inexorable conclusion that the jury's verdict directly violates the Fifth Circuit's mandate because the finding that Warden Hanson was *not*

3

deliberately indifferent was finally adjudicated and cannot be disturbed.

> **A.  Plaintiffs Abandoned Their Challenge to the "No Deliberate Indifference" Finding; the Fifth Circuit's Mandate Governed Subsequent Proceedings.**

On October 30, 2020, this Court granted Defendants' motion for summary judgment, dismissing all § 1983 claims against Warden Ray Hanson. (Doc. 356.) The Court held, as a matter of law, that Plaintiff failed: (i) "to establish[] that Hanson or Aultman were deliberately indifferent to Moore's rights," (*Id.* at 23; *see also id.* at 31); (ii) "to establish that someone employed by LaSalle or Richwood was deliberately indifferent in adopting the training policies" (*id.* at 46.); and (iii) "to establish that the allegedly inadequate training policies, procedures, or customs directly caused Moore's injury." (*Id.*) The Court's findings went beyond Hanson's liability, addressing *Monell* elements: "Plaintiffs have failed to carry their burden of establishing that . . . someone employed by LaSalle or Richwood w[as] deliberately indifferent in adopting the policies, procedures, or customs." (*Id.* at 46-47.)[2]

The Court certified this and seven other summary judgment rulings as final under Rule 54(b), making them eligible for immediate appeal. (Doc. 371.) Plaintiffs contested some of these rulings but did not challenge any part of Doc. 356, including the dismissal of Hanson, the finding that he was not deliberately indifferent, and the decisions regarding deliberate indifference in LaSalle and Richwood's policies. Instead, Plaintiffs abandoned the Hanson summary judgment in their opening brief. That is, the Court's finding that Hanson was not deliberately indifferent, as well as the related conclusion that no one at LaSalle or Richwood was deliberately indifferent in policy-making, became final and binding once the Fifth Circuit finalized its mandate. The Fifth Circuit specifically referenced the abandonment doctrine, noting that Plaintiffs forfeited claims not included in their opening brief, which were then

---

[2] The Court held that Plaintiffs failed "to carry their burden of establishing that (l) the policies, practices or customs at RCC were inadequate, (2) that someone employed by LaSalle or Richwood were deliberately indifferent in adopting the policies, procedures, or customs, and (3) the inadequate policies, procedures or customs directly caused any injury to Moore." (*Id*. at 47.)

4

considered affirmed. *Moore*, 41 F.4th at 502 n.2.

The Fifth Circuit's mandate directed this Court to conduct "further proceedings in accordance with the opinion of this Court." (Doc. 393.) This language is not precatory; it is mandatory. "[A] district court on remand must implement both the letter and the spirit of the appellate court's mandate." *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004). The mandate rule is "a specific application of the law of the case doctrine, which provides that an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on subsequent appeal." *Tollett v. City of Kemah*, 285 F.3d 357, 363-64 (5th Cir. 2002) (citation omitted). Simply put, a final appellate determination cannot be undone by subsequent trial proceedings. Yet the final determination that Hanson was not deliberately indifferent *was* undone, as shown by the jury verdict form.

## B. The Verdict Contradicts the Mandate.

The submitted verdict form included the following questions, which the jury answered with "check" (affirmative) marks:

> 16. Was Ray Hanson a policymaker for any of the following entities? You may check "none," one defendant, or more than one defendant.
>
>     a. LaSalle Management Company, LLC  ✓
>     b. Richwood Correctional Center, LLC  ✓
>     c. City of Monroe  _____
>     d. None  _____
>
> 17. Did Ray Hanson know or should he have known about a custom or practice of using the four way and chemical spray to punish detainees?
>
>     Yes ✓    No _____
>
> 18. Was Ray Hanson deliberately indifferent to a practice or custom of using the four way and chemical spray to punish detainees?
>
>     Yes ✓    No _____

(Doc. 663 at 6-7.)

The jury's verdict conflicts with the Fifth Circuit's mandate. The verdict relies on

5

Hanson's deliberate indifference, which cannot align with the Fifth Circuit's mandate that upheld this Court's conclusion that "Plaintiffs have not established that Hanson or Aultman were deliberately indifferent to Moore's rights." (Doc. 356 at 23.) The mandate rule required that this Court consider the "no deliberate indifference" finding as final. *See Tollett, supra*. By permitting the jury to determine otherwise, this Court breached the Fifth Circuit's mandate.

### C. The Verdict Is Legally Impossible because *Monell* Liability Requires Policymaker Deliberate Indifference.

To establish *Monell* liability based on an unconstitutional custom, Plaintiffs were required to prove three elements: (1) the existence of a custom; (2) that the policymaker had actual or constructive knowledge of the custom and was deliberately indifferent to the constitutional violation; and (3) that the custom was the "moving force" behind the deprivation. *Monell v. United States*, 436 U.S. 658, 695 (1978); *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).

The second element is dispositive here. *Monell* liability cannot exist without a finding that the *policymaker* acted with *deliberate indifference*. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.").[3] This is not a minor evidentiary hurdle; it is a constitutional prerequisite to imposing liability on a private entity acting under color of state law.

The jury found Warden Ray Hanson was the policymaker for the corporate Defendants; it identified no one else for *Monell* liability. Therefore, any corporate liability must be based solely on Hanson's conduct. The fact that Hanson was earlier determined, as a matter of law,

---

[3] *See also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (state actor's actual knowledge is critical to the inquiry; a failure to alleviate "a significant risk that he should have perceived but did not" falls beneath the level of deliberate indifference); *Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998) ("The deliberate indifference standard is a high one."); *McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002) ("To act with deliberate indifference, a state actor must 'know[] of and disregard[] an excessive risk to [the victim's] health or safety.'"), *quoting Farmer*, 511 U.S. at 837.

6

*not* to have been deliberately indifferent precludes the jury's liability finding as to the corporate Defendants and mandates that it be overturned.

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986), compels this result. In *Heller*, after a jury returned a verdict for an individual police officer on the plaintiff's excessive force claim, the district court dismissed the *Monell* claim against the city. The appeals court reversed, reasoning that the jury might have found in favor of the officer based on his good-faith compliance with department policy, and that such a finding "would not negate the existence of a constitutional injury." *Id.* at 797. The Supreme Court summarily *reversed*, holding that "neither *Monell* nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *Id.* at 799. The Fifth Circuit has consistently applied this principle. *See Ford v. Anderson Cty.*, 102 F.4th 292, 323 (5th Cir. 2024) ("[W]e do not hold municipalities liable under § 1983 absent an underlying violation of the Constitution or federal law."); *Saenz v. Heldenfels Bros. Inc.*, 183 F.3d 389, 392–93 (5th Cir. 1999) (rejecting recovery sought against the county on the basis of its alleged "custom or policy" because the officer's conduct "did not violate plaintiffs' constitutional rights").

Although *Heller* was decided in the context of a jury finding of non-liability, its reasoning nonetheless applies here. In *Heller*, the jury's verdict absolving the officer could have been influenced by various factors, but the Supreme Court still regarded it as "conclusive" against the municipality. 475 U.S. at 799. In contrast, Warden Hanson's exoneration was definitive, and Plaintiffs waived any challenge of this Court's summary judgment decision. Unlike a jury verdict, these events provide no space for speculation about alternative reasons. In other words, if *Heller* prevents municipal liability when a *jury* finds no constitutional violation, it similarly prevents corporate liability when a final judgment holds that the policymaker was not deliberately indifferent. The corporate LaSalle Defendants "were sued

only because they were thought legally responsible for [Hanson's] actions; if the latter caused no constitutional injury to [Plaintiffs], it is inconceivable that [the LaSalle Defendants] could be liable." *Id.*

The logical result is unavoidable:

*Major Premise:* *Monell* liability requires the policymaker to have acted with deliberate indifference.

*Minor Premise:* Hanson was the only policymaker, and it has been conclusively decided that he was not deliberately indifferent.

*Conclusion:* The LaSalle Defendants cannot be liable under *Monell*.

No amount of trial evidence could overcome this legal impossibility. The verdict rests on a factual predicate that prior, final adjudication has conclusively disproved. This is not a case of disputed evidence but one where the jury was asked to find what the law prohibits.

### D.    The "Knowledge" Versus "Deliberate Indifference" Distinction Does Not Save the Verdict.

Plaintiffs may argue that the Fifth Circuit's opinion contemplated a trial on Warden Hanson's knowledge and deliberate indifference. They will likely point to the court's statement that "a reasonable jury could find on this record that Hanson actually knew that guards used the Four-Way and pepper spray to punish prisoners," *Moore*, 41 F.4th at 511, and contend that this language demonstrates that the Fifth Circuit intended for the state of Hanson's mind to be tried on remand.

Such an argument conflates two legally distinct inquiries. The Fifth Circuit addressed only whether there was a fact dispute on *Monell*'s second element — policymaker *knowledge* of the alleged customs — and found that Plaintiffs had raised a fact dispute on whether Hanson "actually or constructively knew" about the alleged practices. *Id.* at 510–11. But *knowledge* and *deliberate indifference* are not synonymous. A policymaker may have knowledge of problematic conduct yet respond reasonably, in which case there is knowledge but no deliberate indifference. *See Connick*, 563 U.S. at 61 (explaining that deliberate indifference requires proof

8

#110659594v7

that the policymaker "disregarded a known or obvious consequence of his action"). The district court's summary judgment addressed the latter, finding as a matter of law that "Plaintiffs have not established that Hanson . . . w[as] deliberately indifferent to Moore's rights." (Doc. 356 at 23.)

The Fifth Circuit's references to Hanson's potential "criminal indifference" in the punitive damages discussion do not disturb this conclusion. That discussion was necessarily conditional: *if* Plaintiffs could establish *Monell* liability, *then* they could also pursue punitive damages based on Hanson's state of mind. *See Moore*, 41 F.4th at 514. The court was not adjudicating whether deliberate indifference could be relitigated; it was explaining what relief would flow from a successful *Monell* claim. That conditional analysis cannot override the preclusive effect of the un-appealed summary judgment finding that Hanson was not deliberately indifferent. Put differently, the Fifth Circuit's opinion created a procedural pathway for Plaintiffs to pursue *Monell* claims on remand, but that pathway necessarily presupposed that all elements of *Monell* liability, including policymaker deliberate indifference, would be met.

The Fifth Circuit reversed the summary judgment on *knowledge*; it did not reverse the summary judgment on *deliberate indifference*. The Fifth Circuit did not (and could not) resurrect an element that had been adjudicated against Plaintiffs and abandoned on appeal. The mandate directed "further proceedings in accordance with" the Fifth Circuit's opinion, *Moore*, 41 F.4th at 514, but those proceedings must occur within the constraints of what was actually decided.

### E.    The Verdict Impermissibly Imposes Respondeat Superior Liability.

*Monell* established a foundational principle of § 1983 jurisprudence: municipalities and corporate entities performing governmental functions "cannot be held liable solely because [they] employ[] a tortfeasor — or, in other words, a municipality cannot be held liable under §

9

1983 on a respondeat superior theory." 436 U.S. at 691.

If a particular officer did not cause constitutional harm, then any municipal policy authorizing such conduct is not actionable. *Heller*, 475 U.S. at 799. As a matter of law, Hanson did not act with deliberate indifference. As a result, the jury's verdict contradicts *Heller* and *Monell*. Stated differently, adjudging the LaSalle Defendants liable based on Hanson's role as policymaker turns the doctrine of respondeat superior liability on its head: the corporate Defendants are vicariously liable for an employee who *lacks* personal responsibility.

### F.    The Punitive Damages Award Cannot Stand.

Corporate punitive damages under § 1983 require a finding that the policymaker acted with "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Moore*, 41 F.4th at 513. This standard is at least as demanding as "deliberate indifference." Indeed, the Fifth Circuit described it as requiring evidence that Hanson "acted *criminally* indifferent toward illegal customs." *Id.* at 514 (emphasis added); *see also id.* at 513 (equating "reckless or callous indifference" to "subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations") (internal quotations omitted). If Hanson was not deliberately indifferent (a final adjudication), then *a fortiori* he did not act with the heightened "reckless or callous indifference" required for punitive damages.

## II.    Causation Is a Constitutional Gateway That Bars Wrongful Death Liability Here.

Separately, the verdict here represents a dispositive failure of proof on an essential element of Plaintiffs' wrongful death claim. The jury explicitly found that while constitutional violations occurred (excessive force and custom), those violations were *not substantial factors* in Erie Moore's death. Instead, the jury identified negligence alone as the "sole substantial factor" causing the death. Accepting the jury's specific factual finding that the constitutional violations did not cause the death should result in a judgment as a matter of law: when the law is applied to this controlling fact, any judgment for wrongful death damages is legally

10

impossible and must be vacated as a matter of law.

     **A.**      **The *Phillips* Mandate: Causation is the Gateway to § 1983 Wrongful Death Liability.**

In the Fifth Circuit, the path to § 1983 wrongful death damages is narrow and guarded by a "dual causation" requirement. A § 1983 plaintiff must prove both (1) the alleged constitutional deprivation, and (2) "the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute." *Phillips ex rel. Phillips v. Monroe County*, 311 F.3d 369, 374 (5th Cir. 2002); *accord Moore*, 41 F.4th at 504 (wrongful death claims "create new causes of action on behalf of the statutorily-designated persons in order to compensate them for the death of the decedent"; plaintiffs must prove the cause of the decedent's demise under state causation principles to recover).

As the *Phillips* court held, "[u]nlike a survival action, a wrongful death action cannot be maintained unless the defendant's conduct is the cause of the decedent's death." *Id*. In *Slade v. City of Marshall*, 814 F.3d 263 (5th Cir. 2016), the Fifth Circuit reaffirmed that high bar, holding that a plaintiff must show that the unconstitutional conduct "more likely than not caused the decedent's death." *Id.* at 265. This causal link is the constitutional gateway. Without it, the injury of "death" remains a state law concern, *not* a federal constitutional one.

     **B.**      **The Jury's Verdict Closed Any Constitutional Gateway to Wrongful Death Damages.**

The jury made the following findings with respect to causation:

| Alleged Conduct | Constitutional Violation? | Substantial Factor in Death? |
|---|---|---|
| Excessive force by individual defendants | Yes (as to three defendants) | **NO** |
| Battery by individual defendants | Yes | **NO** |
| Custom/practice of using Four-Way and chemical spray to punish detainees | Yes | **NO** |
| **Negligence** | **No** | **YES; Sole Substantial Factor** |

(Doc. 663.) To understand the jury's verdict, the Court must recognize the *Phillips* decoupling

11

— the legal distinction between survival actions and wrongful death actions. Here, by answering *"NO"* to the specific interrogatories asking whether either the excessive force or a custom was a substantial factor in Moore's death, the jury foreclosed any constitutional claim for that death.

The Fifth Circuit emphasized this distinction, explaining that survival actions redress pre-death injuries (pain and suffering), while wrongful death actions compensate for the death itself, and that this dichotomy compels two requirements for a § 1983 plaintiff to prevail:

> Sometimes state law does bind us on causation in § 1983 cases . . . . We explained one of those ways in *Phillips*. A plaintiff bringing a state law wrongful death claim under § 1983, we said, must "prove both [1] the alleged constitutional deprivation required by § 1983 and [2] the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute." In other words, state law governs whether there's a causal link between the constitutional deprivation and the victim's death for state wrongful death claims. . . .

*Moore*, 41 F.4th at 504, *quoting Phillips*, 311 F.3d at 374.

Instead of a constitutional violation, the jury attributed Moore's death exclusively to negligence. In short, the jury made the dispositive finding that Plaintiffs failed to satisfy the second prong of the *Phillips* mandate. This Court's Judgment awarding wrongful death damages on the Plaintiffs' federal claims despite the jury's negative finding violates the fundamental premise that § 1983 imposes liability only for constitutional deprivations that actually cause the injury.

In *Daniels v. Williams*, 474 U.S. 327 (1986), the Supreme Court held that a negligence finding alone cannot establish a claim under the U.S. Constitution's Fourteenth Amendment Due Process Clause. *Id.* at 334. On the contrary, liability under § 1983 applies only to the misuse of government authority, not mere negligence. *Alvarez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018). In finding that negligence was the only substantial factor in Moore's death, the jury effectively determined there was no intentional or deliberately indifferent

12

conduct to support a constitutional claim for that death. The jury's verdict also confirms that the "moving force" behind the death was not a constitutional violation, but a negligent accident. Permitting a federal judgment for death damages based on a finding of "negligence" essentially creates a federal remedy for a state tort, which *Daniels* forbids. Therefore, the wrongful death damages are unsupported by any constitutional predicate.

This is not an inconsistent verdict that requires a new trial; it is a precise factual bifurcation. The jury found liability for the harm the individual officers caused (pain) and rejected liability for the harm they did not cause (death). This Court must respect that bifurcation by vacating the wrongful death award.

### III.    The Jury's "No Causation" Finding Forecloses *Monell* Liability for the Death.

The jury's specific factual findings also invalidate the *Monell* claim regarding the wrongful death damages. To establish municipal liability, a plaintiff must prove that the official policy or custom was the "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694. The "moving force" standard requires a "direct causal link" between the policy and the injury. *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001). This federal standard is as rigorous, if not more so, than the state law "substantial factor" test.

The logic is inescapable:  because the jury found that no custom was a "substantial factor" in Moore's death, one cannot, as a matter of law, be the "moving force." Without "moving force" causation, there is no *Monell* liability for the death. Consequently, the $18 million wrongful death award against the corporate defendants lacks the statutory causation *Monell* requires.

### IV.    The Punitive Damages Award is Constitutionally Infirm and Must be Vacated or Remitted.

Punitive damages under § 1983 require proof that the defendant's conduct violated federally protected rights. *Smith*, 461 U.S. at 56. The jury's finding that no constitutional violation caused Moore's death eliminates the constitutional predicate for punitive damages

13

related to the death. Defendants preserved their challenge to the sufficiency of Plaintiffs' evidence on all elements of the underlying claims in their Rule 50(a) motion, and punitive damages cannot survive if liability is vacated.

### A.    Punitive Damages Under § 1983 Require a Constitutional Violation.

An "award of punitive damages is a harsh remedy and normally is not favored by law"; its goal "is to punish as well as to deter the commission of similar offenses in the future." *Creamer v. Porter*, 754 F.2d 1311, 1319 (5th Cir. 1985). Punitive damages in § 1983 actions are available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith*, 461 U.S. at 56. This standard expressly requires conduct that violates "federally protected rights" — meaning a constitutional violation. Negligence, even gross negligence, does not satisfy this standard. *See Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003) (punitive damages require "recklessness in its subjective form," not mere negligence). The jury's finding that negligence, and not any constitutional violation, caused Moore's death eliminates the constitutional predicate for punitive damages related to the death.

### B.    The Punitive-to-Compensatory Ratio Violates Due Process.

The vacatur of the $18 million wrongful death award triggers a constitutional crisis for the $23 million punitive damages award. Punitive damages must bear a "reasonable relationship" to the compensatory damages. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 581 (1996). If the wrongful death damages are vacated (as *Phillips* requires), the only remaining compensatory damage component is the $1.5 million survival award. The $23 million punitive damages award thus results in a ratio of $23 million punitive damages / $1.5 million survival — a ratio of **15.3 to 1**. "[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). A ratio of 15:1 is thus presumptively

14

#110659594v7

unconstitutional. *Id*.; *see also Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 405 (5th Cir. 2000) (reducing 30:1 ratio to 10:1).

Because the punitive damages award was heavily anchored to the "death" damages, and because the jury found the death was caused by negligence (which cannot support punitive damages), the punitive award must be vacated or, at a minimum, remitted to a reasonable ratio related to the remaining survival damages.

## V.    Alternative Argument: The Trial Evidence Was Independently Insufficient to Establish *Monell* Liability.

Even if the jury's verdict permitted wrongful death liability as a matter of law, which Movants dispute, the trial evidence independently failed to establish the elements of *Monell* liability.[4]

### A.    Plaintiffs Failed to Establish Facts That They Forecast in the Fifth Circuit.

A split Fifth Circuit panel reversed several of this Court's summary judgment rulings based on specific evidentiary representations, none of which materialized at trial. These included: (a) Yolanda Jackson's claim that the Four-Way was used to "teach prisoners a lesson"; (b) the Assistant Warden's "admission" about interrogation; (c) John Badger's testimony about Foster's "confession"; (d) Foster's "pepper spray mode" statement; (e) Willie Woodard's statements about cleaning pepper spray and blood; and (f) claims about officers "openly discussing" force. As Judge Ho cautioned in his dissent, Plaintiffs should not be allowed to prop up their case "with evidence that doesn't exist." *Moore*, 41 F.4th at 518 (Ho,

---

[4] The argument in this Section V and subsequent sections, to the extent that they conflict with the foregoing sections, are made in the alternative. Defendants preserved each of these arguments in their Rule 50(a) motion at the close of Plaintiffs' case-in-chief. Specifically, Defendants argued: (1) the evidence was legally insufficient to establish a custom of using pepper spray and the Four-Way to punish inmates, citing the temporal disconnect between Plaintiffs' evidence and Moore's 2015 confinement, as well as Fifth Circuit authority requiring far more than "more than once" frequency to establish a pattern; (2) no evidence established that Hanson knew or should have known of any such custom, as no witness testified to prolonged public discussions or that they informed Hanson; (3) Plaintiffs failed to present any evidence that Moore was subjected to unconstitutional force in the Four-Way that could have been the "moving force" behind his injuries; (4) the ratification theory fails because Hanson did not knowingly approve any constitutional violation. These arguments were renewed at the close of all evidence.

J., dissenting). Yet the jury was asked to find *Monell* liability based on a trial record stripped of the very evidence that the panel majority relied on to reverse.

### B.    The Governing Legal Framework.

The Fifth Circuit has repeatedly emphasized that *Monell* liability represents "a high threshold." *Piotrowski*, 237 F.3d at 580. This demanding standard exists because *Monell* expressly "reject[ed] *respondeat superior* liability." *Monell*, 436 U.S. at 692. To impose liability on a private entity acting under color of state law, a plaintiff must prove that "the entity itself" — through its policies, customs, or policymakers — "is the wrongdoer." *Id.* at 694.

At trial, Plaintiffs did not meet this high standard. The evidence they promised at the summary judgment stage never appeared. Instead, what Plaintiffs presented was a confusing mix of vague, disconnected testimony that failed to prove any part of *Monell* liability.

### C.    Plaintiffs Failed to Establish an Unconstitutional Policy or Custom.

To satisfy *Monell*'s first element, Plaintiffs were required to prove that an unconstitutional "custom" existed that was "so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. A pattern sufficient to establish such a custom requires "similarity, specificity, and sufficiently numerous prior incidents." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017).

"Showing a pervasive pattern is a heavy burden." *Sanchez v. Young County*, 956 F.3d 785, 793 (5th Cir. 2020). As Judge Ho observed, the Fifth Circuit has "consistently required a plaintiff to plead specific facts, not merely conclusory allegations." *Moore*, 41 F.4th at 518 (Ho, J., dissenting), *quoting Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). In *Peterson v. City of Fort Worth*, the Fifth Circuit found no pattern despite 27 complaints of excessive force over four years. 588 F.3d 838, 851 n.4 (5th Cir. 2009). And a division of this Court held that 1,172 use-of-force complaints, 107 lawsuits, and 14 excessive-force cases over a dozen years were insufficient to establish a pattern. *Wilder v. Morgan*, No. 6:20-01383, 2022

16

U.S. Dist. LEXIS 50717, 2022 WL 839128, at \*5 (W.D. La. Mar. 18, 2022) (Summerhays, J.).

Against this backdrop, Plaintiffs' trial presentation was inadequate and, compared to the evidence they promised, fell far short of meeting their evidentiary burden. In reversing on *Monell* liability, the Fifth Circuit relied on evidence Plaintiffs did not present at trial, including Yolanda Jackson's testimony that the Four-Way was used to "teach [prisoners] a lesson," a purported admission by an Assistant Warden that the Four-Way was used to "interrogate" detainees, John Badger's testimony that Foster "confessed" that guards brought Moore to the Four-Way to "beat him [to] death" and "finish[ ] him," Foster's statement that guards went into "pepper spraying mode," Willie Woodard's declaration claiming he cleaned blood from the Four-Way, and Jackson's testimony that officers "openly discussed" using force on prisoners. But when these witnesses testified at trial, no such events were described.

Without nonexistent evidence, Plaintiffs' trial presentation was limited to: Woodard's vague testimony about inmates pepper-sprayed in the Four-Way "more than once" — without details on dates, circumstances, or frequency; Karen Wilson's claims of a "culture" of excessive force at Richwood, but only for 2017–2018, and unrelated to the Four-Way or 2015; and evidence of a 2016 pepper spray incident at the Four-Way, a year after Moore's death. This evidence was insufficient to establish the "persistent and widespread" pattern the Supreme Court requires. *See Connick*, 563 U.S. at 61. Vague frequency characterizations like "more than once" are categorically insufficient as a matter of law. *See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (where prior incidents are used to prove a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees"). If 1,172 complaints over a decade are insufficient to establish a pattern, *see Wilder*, *supra*, at \*5, then vague testimony about witnessing an event "more than once" cannot possibly satisfy *Monell*'s demanding standard.

17

#110659594v7

The evidence's temporal disconnection, furthermore, is decisive. Wilson's observations concern happenings in 2016 and 2017–2018 — incidents that occurred *after* Moore's death. They cannot reliably prove an unconstitutional custom in place in July 2015, when Moore was at Richwood. A custom must have existed at the time of the alleged violation. *See Davidson*, 848 F.3d at 396 ("pattern requires similarity, specificity, and sufficiently numerous prior incidents"). Evidence of incidents involving different officers and circumstances that happened later cannot retroactively establish a pattern.

### D.    Plaintiffs Failed to Establish Policymaker Knowledge.

Under *Monell*'s second element, Plaintiffs had to prove that Hanson, the LaSalle corporate Defendants' policymaker, had "actual or constructive knowledge" of the unconstitutional custom. *Moore*, 41 F.4th at 509. Despite the Fifth Circuit's challenge, Plaintiffs failed to show that in 2015 Warden Hanson knew about using the Four-Way or pepper spray to punish inmates; they put on no evidence that he was informed or authorized such conduct. (Hanson was not even asked about the alleged custom.) Moreover, Plaintiffs failed to prove constructive knowledge, for example, through "prolonged public discussion," as no testimony confirmed such discussions among staff. The Fifth Circuit's reliance on Jackson's declaration proved Judge Ho's point about "evidence that doesn't exist" since Jackson did not testify to such discussions. *See Moore*, 41 F.3d at 511 (describing Jackson declaration). Finally, when Warden Hanson first discovered the excessive use of force in the Four-Way in 2016, he terminated several officers involved, while the remaining officers resigned. Thus, contrary to Plaintiffs' contentions, Warden Hanson never allowed any excessive force to be used in the Four-Way.

### E.    Plaintiffs Failed to Establish Moving Force Causation.

*Monell*'s third element requires proof that the policy or custom was the "moving force" behind the violation, which goes beyond but-for causation and requires a "direct causal link"

18

#110659594v7

between the policy and the deprivation. *Piotrowski*, 237 F.3d at 580; *see also Loera v. Kingsville ISD*, 151 F.4th 813, 818 (5th Cir. 2025) (moving force causation requires a "strong connection between the background of the particular applicant and the specific violation alleged such that a hired individual was 'highly likely to inflict the particular type of injury suffered.'"), *quoting Rivera v. Bonner*, 952 F.3d 560, 565 (5th Cir. 2020). The policy must make the injury "highly likely," not merely possible or foreseeable. Plaintiffs failed to meet this standard for at least two obvious reasons: (a) the jury found that pepper spray use was not a substantial factor in Moore's death, and (b) there was insufficient evidence to support any finding that a pepper-spray-misuse policy existed.

On this second point, the Court identified the policy as "using pepper spray and the Four-Way to punish inmates." (Doc. 531 at 12.) The only supporting evidence was Willie Woodard's testimony that he saw handcuffed inmates being pepper-sprayed in the Four-Way. But Moore was not handcuffed when pepper-sprayed, and Plaintiffs offered no evidence of pepper-spray use on a restrained Moore. This disconnect is fatal: the custom that was alleged was pepper-spraying handcuffed inmates, but Moore was not sprayed while handcuffed, so the custom could not have been the "moving force" behind his pepper-spray.[5]

This mismatch defeats *Monell* causation. According to *Loera*, Plaintiffs had to demonstrate a "strong connection" between the custom and Moore's injuries. A policy of pepper-spraying restrained inmates after the incident involving Moore does not relate to pepper-spraying an unrestrained, resisting detainee. Moore's injury from pepper spray was not "highly likely" under a policy focused on handcuffed inmates since he was not restrained.

> **F.      The Jury's Verdict Independently Forecloses Any Pepper-Spray or Four-Way Based Theory of Wrongful Death Liability.**

The jury's verdict conclusively resolves the causation question that Plaintiffs' trial

---

[5] According to Plaintiffs' theory, Moore was unconscious throughout his time in the Four-Way.  If so, there was no conscious pain and suffering to support survival damages.

19

evidence failed to establish. Whatever the scope of any custom involving pepper spray or the Four-Way, the jury found that such customs were not a substantial factor in Moore's death. This finding aligns with the undisputed medical evidence: Moore died from a subdural hematoma caused by head trauma, not from pepper spray exposure. No causal pathway connects any purported pepper-spray custom to death by head trauma, and the jury's verdict reflects this evidentiary reality.

Nor did Plaintiffs present the evidence they promised at summary judgment. The dramatic testimony the Fifth Circuit relied on — Foster's alleged confession that guards brought Moore to the Four-Way to "beat him [to] death," and Badger's corroboration — never materialized at trial. Instead, evidence showed officers secured Moore in restraints, and Curley entered wearing a gas mask. This does not prove Moore suffered head trauma in the Four-Way or that an unconstitutional custom caused his fatal injury.

### G.    The Jury's Verdict Forecloses Both Individual and Corporate Liability for Moore's Death.

The jury's verdict determines causation and resolves the case. It found that the alleged excessive force and battery by the individual Defendants were not substantial factors in Moore's death. Since their conduct did not cause death, assigning individual responsibility or blaming policies cannot change the outcome. The verdict prevents wrongful death liability against both individual and corporate Defendants.

### VI.   The Trial Evidence Was Insufficient to Support the Jury's Findings Against Individual Defendants Hardwell, Runner, and Williams.

Because the jury found that neither the excessive force nor the battery was a substantial factor in causing Moore's death, this limits the liability of the individual Defendants to the $1.5 million survival award. That award, however, should not stand.

### A.    The Jury's Findings Create an Internal Tension That Requires Analysis.

The jury found that Defendants Gerald Hardwell, Jeremy Runner, and Reginald

20

#110659594v7

Williams: (1) committed battery against Erie Moore, Sr.; (2) used excessive force against Moore in violation of § 1983; and (3) were negligent. (Doc. 664 at 2-3, 6.) The jury also found that these Defendants' batteries and excessive force were *not* substantial factors in causing Moore's death, while their negligence *was* a substantial factor in causing that death. (*Id*. at 2-3, 6, 8.) This bifurcated finding reveals an important analytical point: the only basis for wrongful death liability against the individual Defendants is state law negligence, not federal constitutional violations. Even so, the trial evidence was insufficient to support the jury's findings on excessive force and battery. Defendants preserved these arguments in their Rule 50(a) motions at the close of Plaintiffs' case and at the close of all evidence.

### B.    The Evidence Was Insufficient to Establish That Williams Used Any Excessive Force or Committed Battery.

No video evidence shows Williams use of pepper spray, directly strike Moore, or use any force against him. Williams's involvement was limited to: (1) being present during the cell extractions; (2) assisting in carrying Moore from Hallway B to the Four-Way; and (3) involvement in an inadvertent drop when Runner slipped.

The jury was instructed on a "function as a unit" theory, which permits collective liability when "individual defendants functioned as a unit" with "the same identity of purpose and action." (Doc. 662 at 19.) But under Fifth Circuit precedent, this theory requires "conscious planning" or coordination, not mere presence. *Simpson v. Hines*, 903 F.2d 400, 403 (5th Cir. 1990). There was no evidence that Williams engaged in conscious planning to use force against Moore. His presence during the extractions, without more, is legally insufficient to establish that he personally used excessive force.

Moreover, the inadvertent drop cannot constitute either excessive force or battery. Both Runner and Williams testified that they slipped while carrying Moore. An accident is not the purposeful or knowing application of force required. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015) (detainee cannot prevail on excessive force claim "if an officer

21

unintentionally trips and falls on" him). Nor can an accident support a battery claim under Louisiana law. *Comeaux v. Sasol Chems.USA LLC*, No. 21-1617, 2022 U.S. Dist. LEXIS 104342, 2022 WL 2112806, at *16 (W.D. La. Apr. 28, 2022).

Because Plaintiffs did not prove Williams personally used unreasonable force (and was merely present during others' actions), the verdict against Williams for excessive force and battery lacks a sufficient evidentiary basis.

C.      **The Evidence Supporting Excessive Force and Battery Findings Against Runner and Hardwell Was Insufficient.**

Defendants Runner and Hardwell do not contest that their conduct was captured on video. Yet under the totality of circumstances, the force they used was reasonable. These circumstances included that Moore had just brutally stomped his cellmate Vernon White, was making verbal threats, and was non-compliant.

Defense expert George Armbruster testified that all force was consistent with POST training under the totality of circumstances. For his part, Plaintiffs' expert Kenny Sanders did not account for the full context, including Moore's violent battery of White, his verbal threats to the officers, or the biohazard conditions in the cell. The reasonableness of force in response to an individual who had just committed a violent attack and continued to issue threats presents a materially different calculus than force applied to a passive, compliant detainee.

D.      **The Evidence Was Insufficient to Establish That Individual Defendants' Negligence Caused Moore's Death.**

The jury found that the negligence of Hardwell, Runner, and Williams was a substantial factor in causing Moore's death. (Doc. 664 at 2.) This finding rested on one of two potential theories: (1) unreasonable use of force, or (2) failure to provide medical care.

*On the force theory:* The jury's finding that neither battery nor excessive force was a substantial factor in death effectively negates force-based negligence. If the *intentional* application of force did not cause death, the *negligent* application of force cannot have caused

22

death. The same physical acts cannot be both causally insufficient (as battery/excessive force) and causally sufficient (as negligence). This internal inconsistency in the verdict undermines the negligence-causation finding to the extent it rests on the use of force.

*On the medical care theory:* Multiple witnesses testified that Moore appeared conscious and responsive in the Four-Way: (i) Defendant Williams testified that Moore was speaking, said "he was sorry," and was wriggling his legs during transport; (ii) Nurse Mitchell testified that Moore was conscious during his checks and responded to a sternal rub; and (iii) Lavetta Watson testified that Moore was "mad," "hollering," "fussing," "spitting," and "trying to kick" and with no visible injuries or blood when she saw him in the Four-Way.

None of the individual defendants had medical training to diagnose a subdural hematoma. A licensed nurse examined Moore and concluded he was sleeping. The subjective belief that Moore was asleep, combined with the absence of visible injuries reported by Watson, demonstrates that the three individual Defendants reasonably believed no medical emergency existed. Under these circumstances, the evidence was insufficient to establish that Hardwell, Runner, and Williams breached a duty of care with respect to medical attention. *See Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) ("'failure to alleviate a significant risk that [the official] should have perceived, but did not,' is insufficient to show deliberate indifference"), *quoting Farmer*, 511 U.S. at 838.

A jury could not reasonably find that laypeople without medical training, who observed a nurse examine the detainee and conclude nothing was amiss, breached a duty of care by failing to independently diagnose an internal head injury that presented no external symptoms. The negligence finding, to the extent it rests on failure to provide medical care, lacks legally sufficient evidentiary support.[6]

---

[6] Notably, Nurse Mitchell was absolved of any liability. If the nurse who examined Moore was found blameless, how can an officer be found responsible?

23

E.      **The Jury's Findings Foreclose Any Theory Under Which Individual Defendants Caused Moore's Death Through Constitutional Violations.**

The jury's specific factual findings conclusively resolve the causation question for purposes of § 1983 liability. The jury found that any excessive force used by Hardwell, Runner, and Williams was *not* a substantial factor in causing Moore's death and that any batteries committed by Hardwell, Runner, and Williams were *not* substantial factors in causing Moore's death. (Doc. 664 at 3, 6.) These findings are dispositive for § 1983 purposes. If the constitutional violations (excessive force) did not cause death, then individual Defendants cannot be held liable under § 1983 for wrongful death damages, regardless of any state law negligence finding. *Phillips*, 311 F.3d at 374.

Any wrongful death liability that attaches to the individual Defendants flows solely through Louisiana state law and the corporate Defendants' vicarious liability for employee negligence, not through § 1983. The individual Defendants' direct exposure is thus limited to the $1.5 million survival award for pre-death pain and suffering attributable to the excessive force and battery the jury found they committed.

For the foregoing reasons, Defendants Hardwell, Runner, and Williams request that the Court grant judgment as a matter of law in their favor on the excessive force and battery claims, and grant judgment in their favor as a matter of law or, in the alternative, a new trial on the negligence-causation finding.

VII.    **Lasalle Management Company Should Not Have Been Held in Judgment.**

A.      **Legal Standard: Single Business Enterprise Liability Is an Extraordinary Remedy Reserved for Exceptional Circumstances.**

As the corporate Defendants argued in their Rule 50(a) motion, Lasalle Management and Richwood did not operate as a single business enterprise as a matter of law. Louisiana law recognizes that corporations are distinct legal entities, and courts will disregard corporate separateness only in exceptional circumstances. *Green v. Champion Ins. Co.*, 577 So. 2d 249,

24

257 (La. App. 1 Cir. 1991); *In re New Orleans Train Car Leakage Fire Litig.*, 690 So. 2d 255, 259 (La. App. 4th Cir. 1996); *see also Bujol v. Entergy Servs., Inc.*, 922 So. 2d 1113, 1127-28 (La. 2004) (veil piercing an "extraordinary remedy, to be granted only rarely"). To determine whether entities constitute a single business enterprise, Louisiana courts evaluate a non-exhaustive list of 18 factors, including: (1) common ownership; (2) common directors or officers; (3) unified administrative control; (4) centralized accounting; (5) common business departments; (6) consolidated financial statements; (7) common use of employees, services, and facilities; (8) commingling of funds; (9) interlocking directorates; (10) services rendered by employees of one corporation on behalf of another; and related indicia of integration. *Green*, 577 So. 2d at 257-58. Critically, Louisiana courts have emphasized that "the mere existence of common ownership, shared employees, or centralized accounting is insufficient to establish a single business enterprise." *Id.* The doctrine applies only where justice requires disregarding corporate separateness to prevent fraud or achieve equity — not only because affiliated entities share branding, use common forms, or maintain a parent-subsidiary relationship. *Green*, 577 So. 2d at 257.

**B.       Plaintiffs Failed to Plead Single Business Enterprise Liability.**

As a threshold matter, Plaintiffs never pleaded the single business enterprise (SBE) theory. (Doc. 498 at 37; Doc. 497 [Def. Pretrial Mem.] at 13.) Permitting Plaintiffs to pursue an unpleaded theory of liability at trial, one that fundamentally alters the scope of potential defendants, prejudiced LaSalle Management's ability to defend against claims for which it had no notice.

**C.       The Trial Evidence Was Insufficient to Establish Single Business Enterprise Liability.**

The evidence adduced at trial fell far short of the demanding "clear and convincing" standard for establishing SBE liability that Louisiana law requires. *See Grayson v. R. B. Ammon & Assocs.*, 778 So. 2d 1, 14 (La. App. 1 Cir. 2000). Plaintiffs' SBE proof consisted almost

25

entirely of testimony that LaSalle and Richwood had some common leaders, that certain employment and policy documents bore LaSalle Management's name in the header, and that Warden Hanson, a Richwood employee, answered to an employee of LaSalle. This superficial evidence is precisely the type of showing Louisiana courts have deemed insufficient to collapse separate corporate identities. See *Town of Haynesville, Inc. v. Entergy Corp.*, 956 So. 2d 192, 197 (La. App. 2 Cir. 2007) (reversing trial court's SBE finding, despite testimony and exhibits in evidence that Entergy had overlapping leadership, parent company control over subsidiaries, and advertised being "one" company); *see also Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 U.S. Dist. LEXIS 142255, 2022 WL 3226941, at *50-51 (E.D. La. Aug. 10, 2022) (SBE theory fails "where only a few of the *Green* factors are present, the factors at issue are all consistent with legitimate business practices, and plaintiffs have not pointed to evidence showing that any extraordinary circumstances, such as fraud or other wrongdoing, exist").

The evidence overwhelmingly confirmed that the two entities were separate: all Defendants testified that Richwood paid their wages, identified Richwood as their employer (and not LaSalle), and showed that Richwood was the actual employer of the correctional officers. LaSalle Management's CPA Lee Thomason testified that the two companies observed all corporate formalities, including keeping separate books and records, and that LaSalle Management merely serves in an administrative role for Richwood.

Meanwhile, Plaintiffs offered no evidence of any of the other hallmarks Louisiana courts require before treating separate corporations as one, for instance, centralized accounting between the entities or commingling of funds. The presence of an affiliate's name on standardized forms, without evidence of the functional integration Louisiana law demands, cannot sustain a single business enterprise finding.

Simply put, this is not one of those "rare" or "extraordinary" situations that warranted a finding of SBE liability. *See Bujol*, 922 So. 2d at 1128. Because Plaintiffs (a) never pleaded

26

#110659594v7

single business enterprise liability, (b) failed to identify which of the 18 factors they intended to prove, and (c) adduced evidence of only one superficial factor (common branding on forms), while the undisputed evidence established that Richwood alone employed the individual defendants, the jury's SBE finding lacks legally sufficient evidentiary support. The exceptional circumstances Louisiana requires for disregarding corporate separateness are not present. LaSalle Management is entitled to judgment in its favor as a matter of law on this independent ground.

## CONCLUSION

For these reasons, the LaSalle Defendants ask this Court to grant their renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). Pursuant to Rule 50(b)(3)(B), Defendants request that the Court:

a)   Vacate the jury's verdict against Defendants Gerald Hardwell, Jeremy Runner, Reginald Williams, LaSalle Management Co. LLC, and Richwood Correctional Center, LLC;

b)   Direct the entry of judgment as a matter of law in favor of these Defendants on Plaintiffs' § 1983 claims, on the grounds that (a) the verdict violates the Fifth Circuit's mandate by predicating corporate liability on Warden Hanson's deliberate indifference after that issue was finally adjudicated against Plaintiffs; (b) the jury's own findings establish that no constitutional violation was a substantial factor in Moore's death, precluding wrongful death liability under § 1983; and (c) the trial evidence was independently insufficient to establish *Monell* liability;

c)   Vacate the $18 million wrongful death award as legally unsupported by any constitutional violation that caused Moore's death;

27

#110659594v7

d)    Vacate the $23.25 million punitive damages award as unconstitutionally excessive and unsupported by the requisite showing of reckless or callous indifference to federally protected rights; and

e)    Dismiss LaSalle Management Co. as a Defendant on account of Plaintiffs' failure to plead or prove single business enterprise liability.

Respectfully submitted,

/s/ Andrew R. Lee                                    -and-
Deirdre C. McGlinchey (24167)
dmcglinchey@joneswalker.com              H. Bradford Calvit (#18158)
Andrew R. Lee (21196)                          bcalvit@provosty.com
alee@joneswalker.com                           John D. Ryland (#20355)
Robert K. Denny (33092)                        jryland@provosty.com
rdenny@joneswalker.com                       Eli J. Meaux (#33981)
JONES WALKER LLP                            emeaux@provosty.com
201 St. Charles Ave.                              PROVOSTY, SADLER & DELAUNAY, APC
New Orleans, Louisiana 70170              4615 Parliament Drive, Suite 200
Telephone: (504) 582-8000                    P.O. Box 13530
                                                          Alexandria, LA 71315
                                                          P: (318) 767-3133

*ATTORNEYS FOR DEFENDANTS / MOVANTS
GERALD HARDWELL, JEREMY RUNNER,
REGINALD WILLIAMS, LASALLE MANAGEMENT
CO. LLC, and RICHWOOD CORRECTIONAL
CENTER, LLC*

**CERTIFICATE OF SERVICE**

I certify that on January 20, 2026, a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ Andrew R. Lee
ANDREW R. LEE

28

#110659594v7