**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **ERIE MOORE, JR., ET AL.** | \* | **CIVIL ACTION NO.: 3:16-CV-01007** |
| | \* | |
| **VERSUS** | \* | **JUDGE TERRY A. DOUGHTY** |
| | \* | |
| **LASALLE CORRECTIONS, INC.,** | \* | **MAG. JUDGE KAYLA D. McCLUSKY** |
| **ET AL.** | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## LASALLE DEFENDANTS'
## MEMORANDUM IN SUPPORT OF FED. R. CIV. P. RULE 59 MOTION

Deirdre C. McGlinchey (24167)
dmcglinchey@joneswalker.com
Andrew R. Lee (21196)
alee@joneswalker.com
Robert K. Denny (33092)
rdenny@joneswalker.com
JONES WALKER LLP
201 St. Charles Ave.
New Orleans, Louisiana 70170
Telephone: (504) 582-8000

H. Bradford Calvit (18158)
bcalvit@provosty.com
John D. Ryland (20355)
jryland@provosty.com
Eli J. Meaux (33981)
emeaux@provosty.com
PROVOSTY, SADLER & DELAUNAY, APC
4615 Parliament Drive, Suite 200
P.O. Box 13530
Alexandria, LA 71315-3530
Telephone: (318) 767-3133

*ATTORNEYS FOR DEFENDANTS / MOVANTS, GERALD*
*HARDWELL, JEREMY RUNNER, REGINALD WILLIAMS,*
*LASALLE MANAGEMENT CO. LLC, and RICHWOOD*
*CORRECTIONAL CENTER, LLC*

#110663311v7

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ...............................................................................................................1

LEGAL STANDARD FOR RULE 59 RELIEF ...................................................................2

ARGUMENT .......................................................................................................................3

    I.     Incorporation of Rule 50(b) Arguments. ...................................................................3

    II.    The Jury Instruction Error Requires a New Trial..........................................................3

    III.   Remittitur of Excessive General Damages is Appropriate...........................................4

        A.     The Jury's Award Is Excessive and Should Shock the Judicial Conscience...........4

        B.     The Survival Damages Award Should Be Reduced. ...............................................6

        C.     The Wrongful Death Award Should Be Reduced. ..................................................9

    IV.   The $23.25 Million Punitive Damages Award Is Constitutionally Excessive..........17

        A.     The "Reprehensibility" Guidepost: Hanson's Exoneration Forecloses Punitive Liability......................................................................................................17

        B.     The "Ratio" Guidepost: The Award Vastly Exceeds Constitutional Limits. ........19

        C.     The "Civil Penalties" Guidepost: Lack of Fair Notice .........................................20

        D.     The Punitive Damages Award Should Be Vacated or Substantially Remitted .....20

CONCLUSION..................................................................................................................20

#110663311v7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barthel v. La. Dep't of Transp. & Dev.*,
917 So. 2d 15 (La. App. 1 Cir. 2005) ...............................................................................8

*Bender v. Brumley*,
1 F.3d 271 (5th Cir. 1993) ...............................................................................................4

*BMW of N. America, Inc. v. Gore*,
517 U.S. 559 (1996)...............................................................................1, 17, 18, 19

*Boutte v. Jefferson Parish Hosp. Dist. No. 1*,
759 So. 2d 45 (La. Cir. 2000), *overruled on separate grounds*, *Williams v. Jackson Par. Hosp.*, 798 So. 2d 921 (La. 2001) ...............................................................11

*Caldarera v. Eastern Airlines, Inc.*,
705 F.2d 778 (5th Cir. 1983) ........................................................................................1, 3

*Carey v. Piphus*,
435 U.S. 247 (1978)...........................................................................................................5

*Coste v. Jackson*, No. 13-119, 2013 U.S. Dist. LEXIS 109662, 2013 WL
4007501 (E.D. La. Aug. 5, 2013) ....................................................................................8

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986)...........................................................................................................4

*Duboue v. City of New Orleans*,
909 F.2d 129 (5th Cir. 1990) ...........................................................................................8

*Echeverry v. Jazz Casino Co., LLC*,
988 F.3d 221 (5th Cir. 2021) .......................................................................................5, 6

*Eiland v. Westinghouse Elec. Corp.*,
58 F.3d 176 (5th Cir. 1995) .............................................................................................3

*Farmer v. Willis-Knighton Med. Ctr.*,
109 So. 3d 15 (La. App. 2 Cir. 2012) ....................................................................8, 15, 16

*Goff v. City of Booneville*,
No. 94-60748, 1996 U.S. App. LEXIS 45089 (5th Cir. Feb. 26, 1996) .........................5, 6

*Haley v. Pan Am. World Airways, Inc.*,
746 F.2d 311 (5th Cir. 1984) ......................................................................................4, 16

*Henry Pete v. Boland Marine & Mfg. Co.*,
379 So. 3d 1271 (La. 2023) ............................................................................................10

*Hill v. Kilbourne*,
157 F. Supp. 3d 545 (M.D. La. 2015)...............................................................................8

*Hill v. Shelter Mut. Ins. Co.*,
935 So. 2d 691 (La. 2006) ................................................................................................9

*Jordan v. Travelers Ins. Co.*,
245 So. 2d 151 (La. 1971) ..............................................................................................16

#110663311v7

*Lege v. Union Carbide Corp.*,
   365 So. 3d 613 (La. App. 4 Cir. 2021) ................................................................. 15

*Lincoln v. Case*,
   340 F.3d 283 (5th Cir. 2003) .............................................................................. 19

*Longoria v. Hunter Express, Ltd.*,
   932 F.3d 360 (5th Cir. 2019) ................................................................................ 5

*McBride v. Estis Well Serv., L.L.C.*,
   853 F.3d 777 (5th Cir. 2017) .............................................................................. 11

*Monell v. Department of Soc. Services*,
   436 U.S. 658 (1978).......................................................................... 3, 4, 18, 20

*Montano v. Orange Cnty., Tex.*,
   842 F.3d 865 (5th Cir. 2016) ............................................................................ 4, 6

*Moore v. Angela MV*,
   353 F.3d 376 (5th Cir. 2003) .............................................................................. 16

*Moore v. LaSalle Mgmg. Co.*,
   41 F.4th 493 (5th Cir. 2022) ................................................................................ 5

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986)............................................................................................. 3

*Prysock v. Manchester Tank & Equip. Co.*, No. 95-2629, 1996 U.S. Dist.
   LEXIS 10630, 1996 WL 413638 (E.D. La. July 23, 1996) ................................. 8

*Raymond v. Gov't Employees Ins. Co.*,
   40 So.3d 1179 (La. App. 3 Cir. 2010) ................................................................ 15

*Renfro v. Burlington N. Santa Fe Ry.*,
   193 So. 3d 1192 (La. App. 3 Cir. 2016) .............................................................. 9

*Roark v. Liberty Healthcare*,
   191 So.3d 171 (La. App. 2 Cir. 2016) ...................................................... 12, 15, 16

*Robertson v. Wegmann*,
   436 U.S. 584 (1978)............................................................................................. 5

*Ryland v. Shapiro*,
   708 F.2d 967 (5th Cir. 1983) ............................................................................... 6

*Shows v. Jamison Bedding, Inc.*,
   671 F.2d 927 (5th Cir. 1982) ............................................................................... 2

*Smith v. La. Farm Bureau Cas. Ins. Co.*,
   35 So. 3d 463 (La. App. 2 Cir. 2010) ................................................................ 15

*Smith v. Transworld Drilling Co.*,
   773 F.2d 610 (5th Cir. 1985) ............................................................................... 2

*Smith v. Wade*,
   461 U.S. 30 (1983)............................................................................................. 17

*State Farm Mut. Automobile Insur. Co. v. Campbell*,
   538 U.S. 408 (2003)............................................................................ 1, 17, 18, 19

iv

*Stauder v. Shell Oil Co.*,
409 So. 3d 1 (La. App. 4 Cir. 2024) ......................................................................*passim*

*United States v. Sinclair*,
438 F.2d 50 (5th Cir. 1971) ...............................................................................................2

*Wainwright v. Fontenot*,
774 So. 2d 70 (La. 2000) .................................................................................................16

*Warner v. Talos ERT, LLC*,
133 F.4th 412 (5th Cir. 2025) ............................................................................................6

*Williams v. Kaufman County*,
352 F.3d 994 (5th Cir. 2003) ....................................................................................6, 8, 17

*Williams v. Placid Oil Co.*,
224 So. 3d 1101 (La. App. 3 Cir. 2017) ...........................................................................15

*Williams v. State Farm Mut. Auto. Ins. Co.*,
349 So. 2d 1275 (La. App. 1st Cir. 1977).........................................................................15

*Youn v. Mar. Overseas Corp.*,
623 So. 2d 1257 (La. 1993) ............................................................................................6, 9

*Young v. City of New Orleans*,
751 F.2d 794 (5th Cir. 1985) .............................................................................................8

**Statutes, Constitutional Provisions, and Rules**

18 U.S.C. § 3571.................................................................................................................19

42 U.S.C. § 1983...................................................................................................3, 17, 18, 20

42 U.S.C. § 1988...................................................................................................................5

Fed. R. Civ. P. 50(b) ................................................................................................1, 2, 3, 19

Fed. R. Civ. P. 59 ........................................................................................................*passim*

La. Civ. Code art. 2315.2.......................................................................................5, 10, 11, 14

La. R.S. 14:30.1(B) .............................................................................................................14

La. R.S. 14:31(B) ...............................................................................................................14

U.S. Const. Am. XIV ......................................................................................................1, 17

#110663311v7

Moving Defendants, Gerald Hardwell, Jeremy Runner, Reginald Williams, Lasalle Management Co. LLC, and Richwood Correctional Center, LLC (the "LaSalle Defendants"), bring this motion for new trial pursuant to Fed. R. Civ. P. 59(a).

## INTRODUCTION

Even if the Court were to find that some "scintilla" of evidence exists to survive a Rule 50(b) motion, it should nevertheless set aside the verdict under Rule 59 because the jury's findings are against the "great weight of the evidence" and the damages awarded are "monstrous" and "shock the judicial conscience." *See Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983). This Court has both the authority and the obligation to exercise its role as the "thirteenth juror" and prevent a manifest miscarriage of justice.

The jury awarded a staggering **$41.25 million** in total damages — a figure that bears no rational relationship to the evidence presented at trial and that exceeds all comparable verdicts in this Circuit by an exponential order of magnitude. The award includes $18 million in compensatory damages to three adult children for "future losses" of society and companionship with their father. This extraordinary award ignores the uncontroverted evidence that Erie Moore, Sr., having just administered a brutal in-cell beating to another inmate, Vernon White, that resulted in White's death, faced certain prosecution for murder and a highly likely life sentence in a maximum-security prison. The "future" the jury compensated was a fiction; the reality was that Moore's prospects for providing meaningful society and companionship to his adult children were virtually non-existent.

The verdict is further tainted by the $23.25 million punitive damages award, which is constitutionally excessive under the Due Process Clause following rulings in *BMW of N. America, Inc. v. Gore*, 517 U.S. 559 (1996), and *State Farm Mut. Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003). This punitive award is especially unjustified here because Warden Ray Hanson, the policymaker whose actions led to the corporate liability, was

1

previously cleared by this Court of the same constitutional violation (deliberate indifference) that the Judgment and Plaintiffs now aim to penalize. Legally, it is impossible for the Corporate Defendants to be liable for $23.25 million in punitive damages based on the "reckless" conduct of a policymaker who has already been legally found not to have even exhibited "deliberate indifference."

Whether through a new trial or a substantial remittitur, this Court must intervene to prevent a verdict that is untethered from the evidence, unprecedented in this Circuit, and violative of constitutional limits on punitive damages.

### LEGAL STANDARD FOR RULE 59 RELIEF

In the Fifth Circuit, a motion for new trial under Rule 59 is viewed as a distinct "last resort" safeguard for justice that affords the trial court considerably more flexibility than the rigid "sufficiency" standard applicable under Rule 50(b). *See Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (Rule 59 is broad, does not specify what grounds are necessary to support decision to order new trial). Rule 59 provides a broader scope for relief: a new trial should be granted if the verdict is "against the great weight of the evidence," if the damages are excessive, or if the trial was otherwise unfair to the moving party. *Id.*

Unlike the Rule 50(b) standard, which requires the court to view all evidence in the light most favorable to the verdict, under Rule 59 the trial judge is permitted to weigh the evidence, assess witness credibility, and exercise independent judgment as a "thirteenth juror." *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971). If the court concludes that the verdict is against the great weight of the evidence, a new trial should be granted even though there is substantial evidence to support the jury's findings. *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982).

With respect to excessive damages, a court may order remittitur when a jury's award is so large that it "shocks the judicial conscience" or is "entirely disproportionate to the injury

2

#110663311v7

sustained." *Caldarera*, 705 F.2d at 784. In this Circuit, assessment of whether an award shocks the conscience is governed by the "Maximum Recovery Rule," which mandates that a verdict be reduced if it exceeds 133% to 150% of the highest award sustainable by the evidence in factually similar cases within the jurisdiction. *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995).

## ARGUMENT

### I.    Incorporation of Rule 50(b) Arguments.

The LaSalle Defendants incorporate by reference the arguments set forth in their Renewed Motion for Judgment as a Matter of Law (Rule 50(b)) ("Rule 50(b) Motion"), filed contemporaneously. For the reasons stated in the Rule 50(b) Motion, the evidence at trial was legally insufficient to support the jury's verdict on the § 1983 claims against the LaSalle Defendants. Even if this Court concludes that a "scintilla" of evidence supports surviving Rule 50(b) review, it should nevertheless grant a new trial because the verdict is against the "clear weight" of the evidence presented at trial.

### II.    The Jury Instruction Error Requires a New Trial.

This Court granted summary judgment to Warden Ray Hanson on Plaintiffs' deliberate indifference claims, finding he was not deliberately indifferent to Moore's constitutional rights. (Doc. 393.) Plaintiffs appealed but abandoned their challenge to Hanson's exoneration; the Fifth Circuit's mandate therefore affirmed this determination as the law of the case.[1]

The jury verdict cannot stand because it depends entirely on a contrary finding. Under *Monell v. Department of Soc. Services*, 436 U.S. 658 (1978), corporate liability under § 1983 requires that a policymaker with final authority violated the plaintiff's constitutional rights. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). The jury found Hanson was the Corporate Defendants' policymaker and that he acted with deliberate indifference — the

---

[1] *See* discussion in Defendants' Rule 50(b) Motion, Argument, Section I.

3

precise finding this Court had rejected. But if the policymaker's conduct does not satisfy the constitutional standard, there can be no corporate liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[N]either *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm."). A verdict premised on Hanson's deliberate indifference is legally impossible when that indifference has been judicially determined not to exist.

This Court compounded the error by refusing Defendants' requested instruction that the Corporate Defendants could not be held liable based on the conduct of individuals already exonerated of constitutional wrongdoing and instead giving the jury an instruction and verdict form that allowed the jury to relitigate Hanson's liability. These actions permitted the jury to revisit an issue decided against Plaintiffs and to reach a verdict on a foreclosed liability theory. Because this error probably "affected the outcome of the case," a new trial is required. *See Bender v. Brumley*, 1 F.3d 271, 276 (5th Cir. 1993).

### III.    Remittitur of Excessive General Damages is Appropriate.

Even if this Court chooses not to grant a new trial, it should reduce the excessively high compensatory damages awarded. The $18 million wrongful death award to the decedent's three adult children — $6 million each for future losses, the $1.5 million survival award, and the $23.5 million punitive damages — represents a verdict that is so out of proportion to the evidence and so beyond typical awards in this jurisdiction that it shocks the judicial conscience.

#### A.    The Jury's Award Is Excessive and Should Shock the Judicial Conscience.

Rule 59 authorizes a new trial or remittitur when a verdict is "against the great weight of the evidence" or "shocks the conscience." *See Haley v. Pan Am. World Airways, Inc.*, 746 F.2d 311, 315 (5th Cir. 1984). The Fifth Circuit requires that damages be "reasonably proportionate to the injury sustained and supported by the evidence." *Montano v. Orange Cnty.,*

4

*Tex.*, 842 F.3d 865, 873 (5th Cir. 2016). Moreover, that court "generally use[s] the maximum-recovery rule, which permits a verdict at 150% of the highest inflation-adjusted recovery in an analogous, published decision" *Echeverry v. Jazz Casino Co., LLC*, 988 F.3d 221, 236 (5th Cir. 2021) (internal citations and quotations omitted). And while the Fifth Circuit has acknowledged its own inconsistent use of the rule (sometimes as a threshold test for excessiveness, other times as a limiter for calibrating the reduction), it recently confirmed, at least where state law controlled the damages analysis, that the maximum recovery rule does not necessarily decide excessiveness, but rather operates as a guidepost for setting the amount of remittitur. *See Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 365–68 (5th Cir. 2019) (agreeing with other circuit courts that, when state law determines excessiveness of award, maximum recovery rule should be used only "as a guidepost in setting remittitur") (citations omitted).

State law comparators matter because 42 U.S.C. § 1988 directs courts to borrow state law when federal law is "deficient" on damages. *Robertson v. Wegmann*, 436 U.S. 584, 588–90 (1978). That borrowing ensures § 1983 remedies are "fully effectual." *Carey v. Piphus*, 435 U.S. 247, 257–58 (1978). The challenge here, however, is that the verdict combines two fundamentally different claims: survival and wrongful death. Thankfully, the Fifth Circuit in its prior decision here offered a straightforward way to navigate that complexity, explaining that survival actions "redress[] any constitutional injuries suffered by the Decedent before his death," so those damages track federal principles. *Moore v. LaSalle Mgmg. Co.*, 41 F.4th 493, 503–04 (5th Cir. 2022). Wrongful-death claims, by contrast, "create new causes of action on behalf of the statutorily designated persons," which exist only under Louisiana Civil Code article 2315.2. *Id*.

The distinction should guide the excessiveness review: if survival damages are intended to compensate for constitutional injuries, then federal comparators are appropriate for unconstitutional pain-and-suffering awards. *See, e.g.*, *Goff v. City of Booneville*, No. 94-60748,

5

1996 U.S. App. LEXIS 45089 (5th Cir. Feb. 26, 1996) (reviewing Fifth Circuit remittitur awards from diversity and maritime cases to lower pain-and-suffering damages in a § 1983 custodial-death case, upholding modest award for lost future earnings without comparator analysis). But wrongful-death damages arise solely under Louisiana law, so state comparators supply the relevant jurisdiction for those awards. *See, e.g.*, *Warner v. Talos ERT, LLC*, 133 F.4th 412, 430 (5th Cir. 2025) (remitting award using state-law comparators despite exclusive federal jurisdiction under OCSLA). Thus, Louisiana's "much discretion" standard governs whether the wrongful death awards here are "beyond that which a reasonable trier of fact could assess." *See Youn v. Mar. Overseas Corp.*, 623 So. 2d 1257, 1261 (La. 1993).

After analyzing the state-law-based damage awards under Louisiana's standard for excessiveness, if the Court orders remittitur, it may permit "a verdict at 150% of the highest inflation-adjusted recovery in an analogous, published [Louisiana wrongful death] decision." *Echeverry v. Jazz Casino Co., LLC*, 988 F.3d 221, 236 (5th Cir. 2021). In contrast, for the jury's excessive *constitutional* damage awards (the survival claim), the Court examines whether the amount the jury awarded exceeds the maximum recovery awards from similar, published Fifth Circuit cases. *See Goff*, 1996 U.S. App. LEXIS 45089, *4, *citing Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 901 (5th Cir. 1994).

### B.    The Survival Damages Award Should Be Reduced.

#### 1.    The Evidence Did Not Establish Criteria for Survival Damages.

The jury awarded $1.5 million in damages "for mental, physical, and emotional pain and suffering caused to . . . Moore by defendant(s) wrongful conduct . . . ." (Doc. 663 at 7.) Survival damages under § 1983 compensate only for the decedent's conscious pain and suffering between injury and death. *Ryland v. Shapiro*, 708 F.2d 967, 976 (5th Cir. 1983). Such damages must be "reasonably proportionate to the injury sustained and supported by the evidence." *Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 873 (5th Cir. 2016); *see also*

6

*Caldarera*, 705 F.2d at 784 (pain-and-suffering award may be disturbed if it is "entirely disproportionate to the injury sustained").

Here, the undisputed evidence established that Moore experienced no conscious, physical pain or suffering, or mental or emotional anguish from the time he fell asleep and then became unconscious until his death one month later. For instance, Officer Jody Foster testified that during the entire hour-plus he observed Moore in the Four-Way, he appeared to be asleep and was motionless on his back, never adjusting his position, never making any noises, and never responding when Foster yelled "Hey" at him (other than one moment when Moore was urinating on himself and then immediately "went back out"). Nurse Mitchell's sternum rub — a painful stimulus that would wake any conscious person — elicited only a grimace from Moore. Lieutenant Hardwell confirmed Moore was snoring and not awake when the Ouachita Parish deputies arrived. The OPSO deputies corroborated this assessment: they variously described Moore as unconscious and sleeping, like "dead weight," and unresponsive, with Deputy Holyfield testifying Moore did not appear to be conscious when he saw Moore. At the parish jail, the EMT's sternum rub produced no reaction, and Moore's pupils were unequal, indicting neurological injury incompatible with conscious awareness.

Dr. David Nelson's emergency room testimony confirms Moore's complete lack of consciousness from hospital presentation forward. Moore arrived in a "comatose position, not moving, with a Glasgow Coma Scale score of 3, the lowest possible score and indicating complete coma and non-reactive. Dr. Nelson answered "No" when asked whether he ever saw Moore move on his own will in the ER. Moore was immediately intubated, helicoptered to UH-Shreveport, and never regained consciousness during the nearly one month before his death on November 14, 2015.

"A damage award for the decedent's pain and suffering cannot be based merely on the fact that death was not instantaneous." *Prysock v. Manchester Tank & Equip. Co*., No. 95-

7

2629, 1996 U.S. Dist. LEXIS 10630, 1996 WL 413638, at *3 (E.D. La. July 23, 1996). "[W]hen there is no indication that a decedent consciously suffered, an award for pre-death pain and suffering should be denied." *Coste v. Jackson*, No. 13-119, 2013 U.S. Dist. LEXIS 109662, 2013 WL 4007501, at *4 (E.D. La. Aug. 5, 2013). Every witness who observed Moore after 7:05 p.m. on October 13 confirms he was asleep, then unconscious, unresponsive, and incapable of experiencing the fright, fear, mental anguish, pain, or suffering that Louisiana law requires to support survival damages. This includes the Plaintiffs' own medical witnesses. Because the record does not support that Moore endured conscious pre-death suffering, the Court should reduce the survival award to a nominal amount. Comparative Awards.

If Moore did suffer pre-death pain and suffering, all evidence supports that the duration was brief. As a result, the "shortness of the suffering" should affect the computation of the damage award. *Vogler v. Blackmore*, 352 F.3d 150, 160 (5th Cir. 2003). Comparative Fifth Circuit pain and suffering awards do not support the jury's award here.[2] Federal courts applying § 1983 consistently limit survival damages to amounts proportionate to proven conscious pain and suffering.

For example, in *Williams v. Kaufman County*, 352 F.3d 994 (5th Cir. 2003), plaintiffs subjected to unconstitutional strip searches were awarded $100 nominal damages and $15,000 punitive damages each. The Fifth Circuit affirmed, noting that nominal compensatory awards are appropriate where conscious harm is intangible. In *Young v. City of New Orleans*, 751 F.2d 794, 799 (5th Cir. 1985), the court upheld a $5,500 compensatory award for a plaintiff beaten during arrest, stressing that damages must reflect actual injury and pain. Even with clear

---

[2] In similar circumstances, such an award has ranged from $20,000 to $30,000. *See id.* (citing comparable cases). Louisiana courts would not support such an award, either. For instance, in *Barthel v. La. Dep't of Transp. & Dev.*, 917 So. 2d 15, 21 (La. App. 1 Cir. 2005), the court upheld an award of $50,000 in survival damages where the decedent survived only several minutes after a car accident. In *Farmer v. Willis-Knighton Med. Ctr.*, 109 So. 3d 15 (La. App. 2 Cir. 2012), the appellate court affirmed $250,000 in survival damages where the decedent "experienced a horrific event which started with intense burning and pain in her arm and erratic heartbeat" and "began frothing at the mouth and having seizure-like convulsions." *Id.* at 28. The court characterized the award as "toward the top of the range in this type of case." *Id.*

8

evidence of suffering, the award was in the low thousands. And in *Duboue v. City of New Orleans*, 909 F.2d 129 (5th Cir. 1990), the Fifth Circuit affirmed modest compensatory damages totaling $50,000 for excessive force, reinforcing that pain-and-suffering awards hinge on evidence of awareness and distress — absent here.[3] Moore's lack of conscious suffering makes $1.5 million indefensible.

Here, every witness confirmed Moore was asleep then unconscious from injury until death. Minimal, if any, fright, fear, or pain was shown. Under these precedents, survival damages should be nominal, modest (*e.g.*, comparable to the $50,000 in *Dubone*), and certainly not seven figures.

### C.   The Wrongful Death Award Should Be Reduced.

#### 1.   The Standard for Wrongful Death Damages.

Wrongful death damages are defined by the Louisiana Supreme Court as "[t]he determination of the severity of mental anguish of distress resulting from the death of another" and "depends upon several components, including, but not limited to, the closeness of the ties between the parties, the degree of love in the relationship, and the length of the relationship." *Hill v. Shelter Mut. Ins. Co.*, 935 So. 2d 691, 695 (La. 2006); *accord Renfro v. Burlington N. Santa Fe Ry.*, 193 So. 3d 1192, 1209 (La. App. 3 Cir. 2016).

The Fifth Circuit has long recognized that damages must be grounded in reality. *See Haley*, 746 F.2d at 316 ("damages award cannot stand when the only evidence to support it is speculative or purely conjectural"). A jury cannot simply ignore uncontroverted evidence that fundamentally transforms the nature of the plaintiff's loss. Yet that is precisely what the jury did here. By awarding $6 million per child for "future" losses, the jury effectively treated Moore as a law-abiding citizen with a full life expectancy of freedom and ongoing parental

---

[3] *See also Hill v. Kilbourne*, 157 F. Supp. 3d 545 (M.D. La. 2015) (inmate beaten by correctional officers received $500 in nominal damages and punitive damages of $25,000 and $15,000; court upheld punitive damages but emphasized that compensatory damages were minimal even with documented physical harm (blurred vision, swelling)).

involvement — directly contradicting the trial record.

The $18 million wrongful death award — $6 million to each of three adult children — cannot withstand scrutiny under any applicable standard. The award "shocks the conscience" and is "beyond that which a reasonable trier of fact could assess for the effects of the particular injury under the particular circumstances." *Youn*, 623 So. 2d at . Whether measured against Louisiana's post-*Boland Marine* comparative framework, the Fifth Circuit's Maximum Recovery Rule, or simple evidentiary sufficiency, the verdict reflects jury passion rather than rational assessment of demonstrable loss. The award fails on three independent grounds: (1) the evidence does not establish the "extraordinarily close" relationship required for maximum wrongful death awards; (2) the record affirmatively contradicts any claim of dependency, support, or daily integration; and (3) the award for future companionship is legally untenable because it ignores uncontroverted evidence that the decedent faced certain prosecution for murder and probable life imprisonment.

### 2. The *Boland Marine* Comparative Framework and the *Stauder* High-Water Mark.

Under Louisiana's post-*Boland Marine* framework, quantifying wrongful death damages for adult children is now a *comparative exercise*. It is no longer sufficient for plaintiffs to prove general devastation; they must establish that their relationship with the decedent mirrors the specific factual indicia present in high-water mark cases. *See Henry Pete v. Boland Marine & Mfg. Co.*, 379 So. 3d 1271, 1281 (La. 2023) (requiring courts to look to prior awards as "guideposts" in the initial determination of excessiveness).

The current high-water mark decision is *Stauder v. Shell Oil Co.*, 409 So. 3d 1 (La. App. 4 Cir. 2024), where the Louisiana Fourth Circuit affirmed wrongful death awards of $2.75 million to each of the decedent's adult daughters. That amount represents the documented ceiling for adult children claimants. However, even that high award was justified by extraordinary factual circumstances that are not present here, including:

10

1.  **Physical Proximity/Cohabitation:** One daughter lived in a separate house *on the same property* as the decedent — a "compound" style of living creating daily integration far exceeding that of adult children in separate households.

2.  **Daily Integration:** The family shared *dinner together every night for years* — not occasional visits or periodic phone calls, but complete daily integration representing the highest measure of "society" under Article 2315.2.

3.  **Documented Traumatic Grief:** One daughter was so devastated she could not attend the trial and suffered documented mental health decline. Another relocated to New Zealand because remaining in proximity was unbearable. These were both objective, verifiable manifestations of extraordinary loss.

4.  **Intensified Bond Through Prior Tragedy:** The family had recently lost the only son/brother, and testimony established that this prior tragedy had "tightened the bond" between the surviving family members, making the father's death a "double blow" that shattered an already-compressed family unit.

### 3.    The Trial Evidence Contrasts with the *Stauder* Profile.

Measured against the *Stauder* criteria, the Moore Plaintiffs' evidence establishes a relationship profile far different from what would justifies maximum awards.

        a.    Adult, Nondependent Children with No Evidence of Support or Guidance.

Compensatory damages in wrongful death actions are intended to redress concrete, demonstrable loss.[4] The evidence at trial established that each of the decedent's children were adults (ages 20, 25, and 30 at the time of Moore's death), and none was dependent on Moore

---

[4] *See* La. Civ. Code art. 2315.2 (enumerating recoverable elements); *Boutte v. Jefferson Parish Hosp. Dist. No. 1*, 759 So. 2d 45, 51 (La. Cir. 2000) (distinguishing between awards for minor children dependent on parental guidance and adult children with independent lives), *overruled on separate grounds*, *Williams v. Jackson Par. Hosp.*, 798 So. 2d 921, 924 (La. 2001).

11

#110663311v7

for the "nurture, training, and guidance" that might support higher awards for minor children.[5] The verdict form itself implicitly acknowledged this limitation: the award compensated Plaintiffs for "grief and anguish and loss of love, affection, and companionship" — not for "loss of support."[6]

The trial record is devoid of evidence that any of the adult children were receiving financial support from Moore, that he was providing services or guidance upon which they relied, or that they had the type of daily, ongoing relationship that could support a $6 million loss-of-consortium award. Louisiana courts routinely cite precisely these facts — adult status, non-dependency, limited day-to-day contact — to *reduce* wrongful death awards.

b.      Childhood Estrangement and Only Recent Reconnection.

The evidence established that one of the Plaintiffs, Tiffany Robinson, grew up without any involvement from Moore whatsoever. She had only "recently come back into" his life. This was not the "rekindling" of an existing bond, but rather (in the words of trial counsel) just "the evolution" of their relationship." A relationship that "had barely begun" cannot support a $6 million award for its loss.

This factual profile places these facts at the lower end of the spectrum — not the *Stauder* apex. In *Roark v. Liberty Healthcare*, 191 So.3d 171, 177 (La. App. 2 Cir. 2016), the court awarded only $75,000 for the death of an incarcerated father who had maintained contact when able, finding that this evidence *overcame* the estrangement defense. Yet even *Roark*'s facts were stronger than those here: there, the parent had maintained consistent contact when circumstances permitted. Here, as to at least one Plaintiff, there was no prior relationship to maintain.

---

[5] The Plaintiffs were not dependent on Moore, and recovery for "loss of support" is limited to "the financial contributions that the decedent would have made to his dependents had he lived." *McBride v. Estis Well Serv., L.L.C.*, 853 F.3d 777, 782 n.3 (5th Cir. 2017).

[6] The verdict form described the award as compensating each Plaintiff for "grief and anguish and loss of love, affection, and companionship." (Doc. 663 at 8-9.) Notably, there was no separate award for "loss of support" — an implicit acknowledgment that no such loss was established.

  c.   No Evidence of Cohabitation, Daily Contact, or Integrated Lives.

Unlike the *Stauder* plaintiffs, who lived on the same property as their father and shared dinner every night, the record contains no evidence of cohabitation, daily meals, routine phone calls, or the type of integrated daily life that defines "extraordinary" parent-child relationships. Testimony established only occasional visits and phone calls — the very pattern Louisiana courts describe as "loving but not close" when justifying reduced awards.

The structural circumstances of this case made such evidence impossible to adduce. The decedent was *subject to prosecution* for second-degree murder at the time of his death. The "compound living" arrangement that anchored the *Stauder* award was factually impossible. The "dinner together every night" integration was factually impossible. The relationship profile was necessarily that of family members separated by institutional constraints, rather than the daily, integrated bond that justifies top-tier damages.

  d.   Documented Traumatic Grief of Extraordinary Magnitude.

The *Stauder* court validated its maximum awards by pointing to objective, verifiable manifestations of the survivors' extraordinary grief: inability to attend trial, documented psychiatric decline, life-altering international relocation. These are *measurable* indices of loss; not merely claimed grief, but observable functional impairment.

The Plaintiffs presented no comparable evidence. There was no testimony of medical treatment, counseling, psychiatric diagnosis triggered by the death, no evidence of inability to function, no life-altering relocations, no objective measures that would move the case from ordinary grief to the "extraordinary" category. While the jury was entitled to infer that Plaintiffs experienced sorrow at their father's death, ordinary grief is assumed in every wrongful death case. It is not the predicate for maximum awards.

### 4.  The Award for "Future Losses" Is Legally Untenable.

Even if the evidence could support *some* wrongful death recovery, the jury's award for

13

future loss of society and companionship is legally untenable because it ignores uncontroverted evidence that the decedent's future prospects for providing society, companionship, or support were virtually nonexistent. The award assumes a future that was never going to happen.

a.     The In-Cell Killing and Certain Prosecution for Murder.

The uncontroverted evidence established that before the incident at issue, Moore beat Vernon White, in their shared cell, so severely that White died within hours from the injuries sustained at the hands and feet of Moore. Detective Johnny Holyfield, the lead investigator, testified *without contradiction* that had Moore not died, he would have been charged with and sought his prosecution for second-degree murder in connection with White's death. This was neither speculation nor defense argument; it was the unequivocal testimony of law enforcement representatives.

Louisiana law requires that wrongful death damages be calculated based on the *actual loss* suffered, not a hypothetical loss premised on circumstances that would never have materialized. *See* La. Civ. Code art. 2315.2. When uncontroverted evidence establishes that the decedent faced certain criminal prosecution, a rational calculation of "future loss" must account for that reality.

b.     The Prospect of Life Imprisonment.

Given the severity of the circumstances Moore would have faced, any calculation of "future loss of society" must account for the reality that Moore would likely have remained incarcerated for the rest of his life. Second-degree murder in Louisiana carries a mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. La. R.S. 14:30.1(B). Even a manslaughter conviction carries a maximum sentence of 40 years. La. R.S. 14:31(B).

The "society and companionship" available from a parent serving a life sentence for murder in a maximum-security facility is categorically different from that of a parent who

14

would otherwise be present in the home and available for daily interaction, support, and guidance. A rational assessment of Plaintiffs' actual losses — as opposed to an emotional response to the circumstances of Moore's death — must account for this dispositive fact.

### 5.    The Award Reflects Passion, Not Evidence.

No reasonable "thirteenth juror" could conclude that a parent facing long term or even permanent isolation in a maximum-security prison for murder provides "society and companionship" worth $6 million per adult child. The award reflects the jury's emotional response to the unfortunate circumstances of Moore's death, circumstances that were the subject of the jury's liability determination and its substantial punitive damages award. But wrongful death damages serve a different purpose: they compensate for *actual loss*, not the defendant's perceived immorality. The Court should not permit passion to substitute for evidence.

### 6.    The Award Defies the Entire Jurisprudential Spectrum

The $6-million-per-child award does not merely exceed *Stauder*; it defies the entire quantum spectrum established by other Louisiana cases for adult children claimants:

- *Lege*, 365 So. 3d 617, 628 (La. App. 4 Cir. 2021) ($500,000 to adult surviving child who called father "best friend," provided care, frequent contact).

- *Williams v. Placid Oil Co.*, 224 So. 3d 1101, 1104, 1114 (La. App. 3 Cir. 2017) ($750,000 award to adult children who had "extremely close relationship" with decedent; spoke with her "every day either in person or on the phone"; extensive shared activities).

- *Roark*, 191 So.3d at 177 (La. App. 2 Cir. 2016) ($75,000 — incarcerated father, lapse in support, but consistent contact when able).

15

- *Farmer v. Willis-Knighton Med. Ctr.*, 109 So. 3d 15 (La. App. 2 Cir. 2012) (affirming $250,000 in survival damages and awarding $60,000 each to 13 adult children for wrongful death damages, stressing their nondependent status and limited contact).

- *Smith v. La. Farm Bureau Cas. Ins. Co.*, 35 So. 3d 463 (La. App. 2 Cir. 2010) (affirming total wrongful death damages of $827,000 for all components combined, including mental anguish and loss of companionship after a fatal automobile accident).

- *Williams v. State Farm Mut. Auto. Ins. Co.*, 349 So. 2d 1275 (La. App. 1 Cir. 1977): ($50,000 wrongful death damages awarded to each parent of deceased 21-year-old son living at home).

- *Raymond v. Gov't Employees Ins. Co.*, 40 So.3d 1179, 1184 (La. App. 3d Cir. 2010): ($750,000 — then-record high for minor child losing parent).

Federal cases confirm that wrongful death awards — even for minor children — do not approach these figures, for example:

- *Moore v. Angela MV*, 353 F.3d 376, 384 (5th Cir. 2003) (remitting $750,000 nonpecuniary award to $399,000 using 133% rule).

- *Haley*, 746 F.2d at 315 (finding $350,000 per parent excessive; remitted to $200,000).

Against these benchmarks, $6,000,000 per adult child is not just high; it is unprecedented.

This case's facts most closely resemble *Roark* and *Farmer*; yet the jury awarded *80 to 100 times* those benchmarks. No quantum analysis could place these facts anywhere near the *Stauder* apex, much less 218 percent above it. The award reflects jury confusion, passion, or prejudice and not a reasoned calculation of loss based on established factual predicates.

Under *Boland Marine*'s comparative framework, the $6-million-per-child award is untenable. Where the high-water mark case (*Stauder*) involved cohabitation, daily integration, documented psychiatric devastation, and an intensified family bond and yielded $2.75 million, an award of $6 million for adult, nondependent children with childhood estrangement, recent

16

reconnection, no evidence of integration or extraordinary grief, and a parent facing near-certain prosecution for murder defies all jurisprudential guideposts. The Court should reduce the wrongful death award to an amount that reflects the actual evidentiary record.

A remitted award in the range of $60,000 to $75,000 per child (consistent with *Roark* and *Farmer* for similar circumstances) times a multiplier not to exceed 150% (consistent with the Fifth Circuit's maximum recovery rule) would represent the outer boundary of what this record supports. Alternatively, a new trial on damages should be ordered.

### 7.    The Award Is Impermissibly Speculative

Louisiana law prohibits damages awards based on mere speculation. *See Jordan v. Travelers Ins. Co.*, 245 So. 2d 151, 155 (La. 1971); *Wainwright v. Fontenot*, 774 So. 2d 70, 74 (La. 2000). The jury's $18 million award for future non-economic damages necessarily rested on a chain of speculative assumptions: that Moore would have been acquitted of murder charges; that he would have been released from custody; that he would have reformed his conduct; that he would have maintained sobriety; and that he would have established close, ongoing relationships with adult children. This chain of speculation upon speculation cannot support the verdict.

## IV.    The $23.25 Million Punitive Damages Award Is Constitutionally Excessive.

The Due Process Clause of the Fourteenth Amendment imposes substantive limits on punitive damages awards, prohibiting the imposition of "grossly excessive" or "arbitrary" punishments. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996). The $23.25 million punitive damages award violates these constitutional constraints under each of the three *Gore* guideposts and must be vacated or substantially remitted.

### A.    The "Reprehensibility" Guidepost: Hanson's Exoneration Forecloses Punitive Liability.

"[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm*, 538 U.S. at 419.

17

Punitive damages in a § 1983 action require a showing that the defendant's conduct was "motivated by evil motive or intent" or involved "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). This standard demands a "subjective consciousness" of a risk of injury and a "criminal indifference to civil obligations." *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003).

Here, the punitive damages award fails as a matter of law because the predicate finding of corporate culpability is legally impossible. This Court previously ruled (and the Fifth Circuit affirmed) that Warden Hanson was *not deliberately indifferent* to Moore's constitutional rights. "Deliberate indifference" under the Fourteenth Amendment is a *lower* standard than the "reckless or callous indifference" required for punitive damages under *Smith v. Wade*, 461 U.S. 30, 56 (1983) (noting §1983's "evil motive or intent" and "reckless or callous indifference to the federally protected rights of others" threshold for punitive damages applies "even when the underlying standard of liability for compensatory damages is one of recklessness" — despite it being one of the "situations where the standard for compensatory liability is as high as or higher than the usual threshold for punitive damages").

The corollary is inescapable: *If Hanson was not even "deliberately indifferent," he necessarily could not have acted with the higher-level "reckless or callous indifference" required for punitive damages.* The summary judgment ruling exonerating Hanson operates as a ceiling on the culpability that can be attributed to him and, by extension, to the corporate Defendants under *Monell*. It is legally irreconcilable for the corporate Defendants to be punished $23.25 million for the "reckless" conduct of a policymaker who has already been judicially determined not to have been "deliberately indifferent." Without a threshold finding of reprehensibility regarding the policymaker's conduct, the punitive damages award is an impermissible "windfall" that serves no legitimate deterrent purpose.

#110663311v7

**B.    The "Ratio" Guidepost: The Award Vastly Exceeds Constitutional Limits.**

The second *Gore* guidepost examines the ratio between punitive and compensatory damages. The Supreme Court has instructed that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425. More significantly, "when compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id.*

### 1.    The Proper Compensatory Base.

The appropriate compensatory base for calculating the punitive damages ratio is the $1.5 million survival action award, not the $18 million wrongful death award. The wrongful death claims are Louisiana state-law claims that do not arise under 42 U.S.C. § 1983 and do not independently support federal punitive liability. *See* Rule 50(b) Motion, Sec. IV. Using the $1.5 million survival action as the appropriate base, the $23.25 million punitive award produces a ratio of **15.5 to 1** — far exceeding the single-digit threshold identified in *State Farm*.

### 2.    Substantial Compensatory Awards Mandate Low Ratios.

Even using the combined $19.5 million compensatory base ($18 million wrongful death plus $1.5 million survival action), the ratio analysis supports remittitur. An award of $19.5 million is unquestionably "substantial," and the Supreme Court has specifically instructed that substantial compensatory awards warrant ratios "perhaps only equal to compensatory damages." *State Farm*, 538 U.S. at 425. The Fifth Circuit has consistently applied this principle. *See Lincoln v. Case*, 340 F.3d 283, 294 (5th Cir. 2003) (remitting punitive damages to 1:1 ratio where compensatory damages were substantial).

### 3.    Double-Counting of Distress.

The $18 million wrongful death award consists entirely of non-economic "future losses," an award that already incorporates a substantial punitive component reflecting the

19

jury's emotional response to the Defendants' conduct. The Supreme Court has recognized this double-counting concern: "the compensatory damages for the injury suffered . . . are likely based on a component which is duplicated in the punitive award." *State Farm*, 538 U.S. at 426. To layer a $23.25 million punitive award on top of an already-inflated $18 million non-economic compensatory award results in impermissible double-counting.

### C.    The "Civil Penalties" Guidepost: Lack of Fair Notice

The third *Gore* guidepost requires comparison of the punitive award to civil or criminal penalties for comparable misconduct. *Gore*, 517 U.S. at 575. A defendant must have "fair notice" of the potential severity of the penalty. *Id.* at 574. Criminal fines under federal law are generally capped at $250,000 for individuals and $500,000 for organizations. *See* 18 U.S.C. § 3571. A punitive award that exceeds the maximum criminal fine by a factor of 46 cannot provide "fair notice." Moreover, the $23.25 million award is an extreme outlier when compared to reported punitive awards in § 1983 *Monell* cases — even those involving *proven* deliberate indifference by active participants rather than the attenuated corporate liability at issue here.

### D.    The Punitive Damages Award Should Be Vacated or Substantially Remitted

For these reasons, the corporate Defendants respectfully submit that the $23.25 million punitive award should be *vacated in its entirety* based on the legal impossibility of punitive liability where the policymaker has been exonerated of deliberate indifference. Alternatively, the award should be substantially remitted to bring it within constitutional bounds, not exceeding $6 million (representing a 4:1 ratio).

### CONCLUSION

This Court, sitting as the "thirteenth juror," has both the authority and the obligation to prevent this miscarriage of justice. The verdict is against the great weight of the evidence, the damages are monstrous and shock the judicial conscience, and the punitive award violates constitutional due process.

20

#110663311v7

**WHEREFORE**, the LaSalle Defendants respectfully request that this Court:

(1)    Vacate the verdict and order a new trial pursuant to Rule 59; or, in the alternative,

(2)    Remit the compensatory damages award from $18 million to no more than $8.25 million total (the *Stauder* benchmark of $2.75 million per child), or alternatively to $12.375 million (the Maximum Recovery Rule ceiling of $4.125 million per child); and

(3)    Vacate the $23.25 million punitive damages award in its entirety, or alternatively remit the award to an amount not exceeding $6 million; and

(4)    Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

|  | -and- |
|---|---|
| */s/ Andrew R. Lee* | |
| Deirdre C. McGlinchey (24167) | H. Bradford Calvit (#18158) |
| dmcglinchey@joneswalker.com | bcalvit@provosty.com |
| Andrew R. Lee (21196) | John D. Ryland (#20355) |
| alee@joneswalker.com | jryland@provosty.com |
| Robert K. Denny (33092) | Eli J. Meaux (#33981) |
| rdenny@joneswalker.com | emeaux@provosty.com |
| JONES WALKER LLP | PROVOSTY, SADLER & DELAUNAY, APC |
| 201 St. Charles Ave. | 4615 Parliament Drive, Suite 200 |
| New Orleans, Louisiana 70170 | P.O. Box 13530 |
| Telephone: (504) 582-8000 | Alexandria, LA 71315-3530 |
| | P: (318) 767-3133 |

*ATTORNEYS FOR DEFENDANTS / MOVANTS GERALD HARDWELL, JEREMY RUNNER, REGINALD WILLIAMS, LASALLE MANAGEMENT CO. LLC, and RICHWOOD CORRECTIONAL CENTER, LLC*

21

#110663311v7

**CERTIFICATE OF SERVICE**

I certify that on January 20, 2026, a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ Andrew R. Lee
ANDREW R. LEE

22

#110663311v7