**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **ERIE MOORE, JR. ET AL.** | **CASE NO.  3:16-CV-01007** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LASALLE CORRECTIONS L L C ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM ORDER**

In its Memorandum Order on Defendants'[1] Post-Trial Motions [Doc. No. 737], the Court granted a remittitur of the wrongful death damages and reduced the punitive damages on constitutional grounds. On May 27, 2026, Plaintiffs[2] accepted the remittitur on wrongful death damages and the reduction of punitive damages [Doc. No. 740].

On May 28, 2026, Plaintiffs filed a Proposed Revised Judgment to reflect acceptance [Doc. No. 741]. Defendants filed an objection to Plaintiffs' Proposed Revised Judgment [Doc. No. 742] and Plaintiffs filed a reply [Doc. No. 750]. Defendants then filed a Sur-Reply [Doc. No. 755].

This Court must address three issues: two minor matters and one major matter. The two minor issues are whether the revised judgment should include a sentence preserving both parties' right to appeal and whether the revised judgment

---

[1] Defendants in this action are LaSalle Management Company, LLC ("LaSalle"), Richwood Correctional Center, LLC ("Richwood"), Gerald Hardwell ("Hardwell"), Jeremy Runner ("Runner"), and Reginald Williams ("Williams") (collectively, "Defendants").

[2] Plaintiffs in this action are Eerie Moore, Jr., Tamara Green, and Tiffany Robinson (collectively, "Plaintiffs").

should be modified to clarify that the award set forth in the Proposed Revised Judgment is $16,741,148.84 rather than $40.59 million. The major issue before the Court is whether the 12% comparative-fault apportionment should be applied to the remitted wrongful death award.

## I.    BACKGROUND

As the Court and all parties are well-acquainted with the facts of this case, the case can be summarized as one where Plaintiffs assert claims under both federal and state law arising from the death of their father, Erie Moore, Sr. ("Moore"), at Richwood. A jury trial was held from October 6, 2025, through October 21, 2025.[3] The jury found:

1. Individual Defendants were negligent and their negligence was a substantial factor in causing injuries to Moore. Moreover, for at least one of the Individual Defendants, his negligence was a substantial factor in causing Moore's death;
2. Individual Defendants committed a battery upon Moore, but this battery was not a substantial factor in causing Moore's death;
3. That Corporate Defendants were a single integrated enterprise, that a LaSalle employee was negligent during the course and scope of his employment with LaSalle, and that negligence was a substantial factor in causing both injuries and death to Moore;
4. That a LaSalle employee committed a battery upon Moore, was in the course and scope of employment with LaSalle, but that the battery was not a substantial factor in causing Moore's death;
5. That Individual Defendants used excessive force on Moore, which caused Moore's harm, but said excessive force was not a substantial factor in causing Moore's death;
6. That there was a custom or practice of using the four-way and chemical spray to punish detainees at Richwood;

---

[3] [Doc. No. 664].

7. That Warden Ray Hanson was a policymaker for Corporate Defendants and knew or should have known of the custom or practice of using the four-way to punish detainees, and Ray Hanson was deliberately indifferent to said custom or practice;

8. That the custom or practice of using the four-way and chemical spray to punish prisoners was the moving force leading to the use of excessive force against Moore, but that said custom or practice was not a substantial factor in the death of Moore; and

9. That Defendants acted with actual malice or reckless indifference to the rights or safety of others.

As to the state law claims, the jury allocated the following percentages of fault to the parties: Richwood 30%, LaSalle 45%, Runner 3%, Hardwell 6%, Williams 4%, Moore 2%, City of Monroe 10%[4], for a total of 100%.[5]

For damages, the jury awarded a total of $1.5 million in pre-death damages to Plaintiffs for the mental, physical, and emotional pain and suffering Moore endured.[6]

The jury awarded $6 million to each Plaintiff (for a total of $18 million) in wrongful death damages, including grief and anguish, loss of love, affection, and companionship.[7]

On October 20, 2025, the jury issued a verdict determining that Defendants had acted with actual malice or reckless indifference to the rights or safety of others, and it reconvened on October 21, 2025, to consider the issue of punitive damages.[8] On October 21, 2025, the jury awarded punitive damages against Corporate Defendants

---

[4] The parties and percentages of fault were handwritten in by the jury even though there were no state claims against the City of Monroe.

[5] [Doc. No. 664, p. 12].

[6] [Id. at p. 8].

[7] [Id. at pp. 8–9].

[8] [Doc. No. 661].

in the amount of $23.25 million.[9] Therefore, the total damages awarded by the jury were $42.75 million.

On May 7, 2026, this Court granted Defendants' request for remittitur of general damages for wrongful death from $6 million for each Plaintiff ($18 million in total) to $3,080,382.95 for each Plaintiff ($9,241,148.88 in total).[10] This Court also found the punitive damage award of $23.25 million was constitutionally excessive and reduced the punitive damage award to $6 million.[11] As stated above, there are three issues before the Court regarding the Proposed Revised Judgment.

The parties have briefed all relevant issues, and the matter is ripe.

## II.    REVISED JUDGMENT ISSUES

Defendants object to three specific parts of the Plaintiffs' Proposed Revised Judgment. The objections are addressed below.

### A.    Preservation of the Right to Appeal

First, Defendants object to the Proposed Revised Judgment because it does not include language preserving their right to appeal.[12] In their Reply, Plaintiffs do not oppose the inclusion of a neutral statement to that effect.[13]

This Court finds the Proposed Revised Judgment should add a sentence to paragraph one that states: "Entry of this Revised Judgment does not waive or otherwise impair any party's right to seek appellate review of any ruling in this action."

---

[9] [Doc. No. 670].
[10] [Doc. No. 737, pp. 39–46].
[11] [Id. at pp. 46–52].
[12] [Doc. No. 742, p. 5].
[13] [Doc. No. 750, p. 7].

### B.    Clarity of Damages

Defendants object to the form of the Revised Judgment's clarity of damages.[14] Defendants argue the Proposed Revised Judgment states the original award of $40.59 million while the decree states the revised award of $16,741,148.84.[15] In their Reply, Plaintiffs offer to revise the Proposed Revised Judgment to include a recitation of the remittitur in the damages section.[16]

The Court finds that clarification of the Proposed Revised Judgment is warranted. Accordingly, within forty-eight (48) hours of Plaintiffs' acceptance or rejection of the remittitur of the wrongful death damages (as later set forth), Plaintiffs shall submit a revised version of the judgment in which the damages section expressly sets forth the remittitur, Plaintiffs' acceptance thereof, and the resulting operative damages figures.

### C.    Application of Comparative Fault to Wrongful Death Damage Remittitur

The primary issue before the Court is the applicability of comparative fault to the remittitur amount for Plaintiffs' wrongful death damages. In the original award, the wrongful death damages were reduced by 2% for Moore's fault and by 10% for the City of Monroe's fault. The jury had written in the City of Monroe's percentage into their answers to the jury interrogatory addressing state negligence. However, since the City of Monroe had no state claims of negligence against it, the parties agreed to reduce the wrongful death amount by the City of Monroe's 10%.

---

[14] [Doc. No. 742, p. 4].
[15] [Id.].
[16] [Doc. No. 750, p. 7].

The parties do not dispute that the wrongful death award is subject to a 12% reduction. Rather, the dispute concerns whether the damages amount awarded by the Court after remittitur ($3,082,382.95 for each Plaintiff) already reflects that reduction. Plaintiffs contend that the Court's remitted damages figure incorporates the 12% reduction, as the Court's order did not indicate that any further reduction was required; thus, that award is "final."[17] Defendants, by contrast, contend that the remitted amount represents only the gross wrongful death damages and that the 12% reduction must still be applied to arrive at the net damages award.[18] Stated differently, Defendants argue that the Court's remitted wrongful death award of $3,082,382.95 remains subject to a further 12% reduction, while Plaintiffs maintain that the award already reflects that reduction.

Defendants correctly interpret the Court's prior order. The Court intended to determine the maximum gross amount of wrongful death damages that could properly be awarded to each Plaintiff. If the Court intended for the remitted award to already reflect the 12% reduction, it would have expressly stated so in its order. The Court's remittitur analysis addressed whether the $18 million wrongful death award was excessive, and that award was evaluated before application of the 12% reduction. Accordingly, the remitted amount represents the permissible gross damages award, to which the 12% reduction remains applicable.

The Fifth Circuit's maximum recovery rule looks at whether the "jury award" is within 150% of an award in a factually similar, published case. *Echeremy v. Jazz*

---

[17] [Id. at p. 3].
[18] [Doc. No. 742, pp. 2–4].

*Casino Co., LLC*, 988 F.3d 221, 236 (5th Cir. 2021). There have been no cases cited where comparative fault played no role in that determination. The relevant inquiry is the amount of damages awarded by the jury, not the amount remaining after any reduction for comparative fault. In applying the maximum recovery rule, courts evaluate the jury's damages award as rendered. Plaintiffs have cited no authority in which a court applying the maximum recovery rule first reduced the jury's award for comparative fault before determining the maximum permissible damages award. Plaintiffs' reliance on *Warner v. Talos ERT, LLC*, is unavailing. In that case, the Fifth Circuit did not incorporate the comparative-fault-reduced award into its maximum recovery rule analysis. *See* 133 F.4th 412, 430 nn.15–16 (5th Cir. 2025). Rather, the Court discussed the comparative fault reduction only after concluding that the jury's damages award was excessive. *Id*. Had the Fifth Circuit intended for the "amount awarded by the jury" for purposes of the maximum recovery rule to mean the award after a reduction for comparative fault, it could have expressly said so. It did not.

This Court's determination focused on the $18 million wrongful death award, not the reduced amount of $15.84 million. Again, the Court's analysis was evaluating the gross wrongful death damages before any reduction for comparative fault, rather than the net damages after application of the comparative fault reduction, when it decided to grant a remittitur.

Plaintiffs further argue that the Court should have reduced the remitted amount by 12% before submitting the remitted amount to accept or reject the amount. By failing to do so, Plaintiffs argue this would be a violation of the Seventh

Amendment since the amount remitted ($3,080,382.95 per Plaintiff) was not the amount the Plaintiffs would receive after the comparative fault reduction ($2,710,736.99).

The Court finds the failure to reduce by 12% before submitting the remitted amount is not a violation of the Seventh Amendment because that amount was the highest amount the jury could have awarded ($9,241,148.85 compared to $18 million).

Out of an abundance of caution, however, the Court will give Plaintiffs another opportunity to accept or reject the Court's remittitur on wrongful death damages. To avoid any confusion, Plaintiffs acceptance of the remittitur of wrongful death damages, not the punitive damage award, will be set aside, and Plaintiffs will be given another opportunity to accept or reject said amount.

### III.    CONCLUSION

For the reasons fully set forth in the Court's previous memorandum order [Doc. No. 737],

**IT IS ORDERED** that Plaintiffs' prior acceptance of the remittitur of wrongful death damages [Doc. No. 740] will be **SET ASIDE**, and Plaintiffs will be allowed to accept or reject the wrongful death damages award to each Plaintiff.

**IT IS FURTHER ORDERED** that within seven (7) days of the filing of this memorandum order, Plaintiffs shall file into the record an acceptance or rejection of the remittitur of wrongful death damages.

**IT IS FURTHER ORDERED** that within forty-eight (48) hours of the acceptance or rejection of the remitted amount, Plaintiffs shall file a second proposed

revised judgment which preserves the rights of appeal of both parties, and which clarifies the revised award, as outlined in this memorandum order.

**IT IS FURTHER ORDERED** that Defendants' Motion for Remittitur as to Plaintiffs' wrongful death damages [Doc. No. 705] remains **GRANTED**. Each Plaintiff is entitled to $3,080,382.95, which will be reduced by 2% for Erie Moore, Sr.'s comparative fault and by 10% for the fault of the City of Monroe, resulting in a total award of wrongful death damages to each Plaintiff of $2,710,737.99.

**IT IS FURTHER ORDERED** that should Plaintiffs decide not to accept the remittitur of wrongful death damages, Plaintiffs shall be entitled to a trial on wrongful death damages alone.

MONROE, LOUISIANA, this 17th day of June 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE